**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEBRIC BROUSSARD,** ) | |
| ) | |
| Plaintiff, ) | **Civil Action** |
| v. ) | |
| ) | **NO.** |
| **WASTE PRO USA, INC; WASTE PRO OF** ) | |
| **LOUISIANA, INC.; TOTAL WASTE** ) | |
| **SOLUTIONS, LLC; MICHAEL SCIONEAUX;** ) | |
| **SAMUEL EDWARDS; DOE DEFENDANTS 1-** ) | |
| **10** ) | |
| ) | |
| Defendants. | |

**<u>COMPLAINT</u>**

Plaintiff DEBRIC BROUSSARD (hereinafter "Plaintiff" or "Employee"), by and

through undersigned counsel, files this Complaint against Defendants WASTE PRO

USA, INC; WASTE PRO OF LOUISIANA, INC.; TOTAL WASTE SOLUTIONS, LLC

(hereinafter individually and collectively "Employer" or "Company"), MICHAEL

SCIONEAUX and SAMUEL EDWARDS, and alleges as follows:


**<u>I. NATURE OF THE ACTION</u>**

1.      This is an action for retaliation, discrimination, and related violations

arising from Defendants' unlawful conduct in response to Plaintiff's exercise of federally

protected rights. Plaintiff, an African American employee, filed the first charge of racial

discrimination with the Equal Employment Opportunity Commission ("EEOC") on or

around July 2, 2025, and subsequently prosecuted a federal civil rights action against his

employer under Case No. 2:25-cv-02132-SSV-MBN filed on or about October 14, 2025,

and which settled on or around January 7, 2026. Beginning shortly after Plaintiff filed his

first EEOC Charge on or around July 2, 2025, and continuing through at least January

2026, Defendants engaged in a sustained campaign of retaliation against Plaintiff for

filing that charge and prosecuting that action. This campaign included the unauthorized

disclosure of Plaintiff's private medical information to third-party entities, defamatory

statements to entities and potential employers in Plaintiff's industry, tortious interference

with Plaintiff's business relationships, and the creation of a hostile work environment so

intolerable that Plaintiff was constructively discharged.

2.      Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. 102-166; 42 U.S.C. § 1981; the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; and applicable Louisiana state law, including claims for defamation and intentional interference with economic advantage under Louisiana law and jurisprudence[1].

3.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial harm including lost wages, lost employment opportunities, damage to his professional reputation, severe emotional distress, and exacerbation of his Post-Traumatic Stress Disorder.

## II. JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices and other wrongful conduct alleged herein occurred within this judicial district.

6.      Plaintiff has exhausted his administrative remedies with respect to his Title VII and ADA retaliation claims. Plaintiff filed a second Charge of Discrimination with the EEOC on or around January 15, 2026. The EEOC issued a Right to Sue Letter to Plaintiff on or around January 30, 2026. This Complaint is filed within ninety (90) days of receipt of that Right to Sue Letter. All retaliatory acts described herein that postdate the Second EEOC Charge are reasonably related to and grew out of the retaliation described in that Charge, such that all claims are properly exhausted[2].

## III. THE PARTIES

*Plaintiff*

---

[1] Bogues v. La. Energy Consultants, Inc., 46,434 (La.App. 2 Cir. 8/10/11), 71 So.3d 1128; Junior Money Bags, Ltd. v. Segal, 970 F.2d 1 (5th Cir.1992); and Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594 (5th Cir.1981).
[2] *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

7.      Plaintiff Debric Broussard is of the full age of majority and is domiciled in Terrebonne Parish, Louisiana. He brings this lawsuit to enforce his rights related to the harassment he suffered while employed by Defendants.

*Defendants*

8.      Defendant Waste Pro USA, Inc. is a Florida-based company which operates throughout the State of Louisiana. Waste Pro USA, Inc.'s Principal Business Office is located at 2101 W. State Road 434, 3rd Floor, Longwood, FL 32779. Its Registered Office in Louisiana is located at 3867 Plaza Tower Drive, Baton Rouge, LA 70816 and its Principal Business Establishment in Louisiana at 920 Kenner Avenue, Kenner, LA 70062.

9.      Defendant Waste Pro of Louisiana, Inc. is a company which operates throughout the State of Louisiana. Its Domicile Address is 920 Kenner Avenue, Kenner, LA 70062 and its Principal Business Office at 2101 W. State Road 434, 3rd Floor, Longwood, FL 32779. Its Registered Office in Louisiana is located at 3867 Plaza Tower Drive, Baton Rouge, LA 70816 and its Principal Business Establishment in Louisiana at 920 Kenner Avenue, Kenner, LA 70062.

10.      Defendant Total Waste Solutions, L.L.C. is a Louisiana-based company with registered agent located at 209 Blackwater Court, Gibson, LA 70356.

11.      Defendant Michael Scioneaux is a person of the full age of majority who was, at all times relevant to this Complaint, an employee of co-Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and/or Total Waste Solutions, L.L.C.

12.      Defendant Samuel Edwards is a person of the full age of majority who was, at all times relevant to this Complaint, an employee of co-Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and/or Total Waste Solutions, L.L.C.

13.      Doe Defendants 1-10 are individuals or entities not currently known to Plaintiff who may have participated in, allowed, or otherwise perpetuated the damages and other claims alleged herein.

## IV. FACTUAL ALLEGATIONS

### A. Background and Prior Protected Activity

14.      Plaintiff is an African American male who was employed by Defendant Employer as a commercial truck driver.

15.    Defendant Scioneaux is a white male and a resident of the State of Louisiana who, at all relevant times, held supervisory authority over Plaintiff and other employees of Defendant Employer. Defendant Scioneaux is sued in his individual capacity under 42 U.S.C. § 1981 and Louisiana state law.

16.    Defendant Edwards is a resident of the State of Louisiana who, at all relevant times, held supervisory authority over Plaintiff and other employees of Defendant Employer. Defendant Edwards is sued in his individual capacity under 42 U.S.C. § 1981 and Louisiana state law.

17.    During his employment, Plaintiff was subjected to severe and pervasive racial discrimination, retaliation and harassment, including but not limited to: (a) Defendant Scioneaux and other employees using the racial epithet "n-----" in reference to Plaintiff; (b) a coworker presenting Plaintiff with a physical "White Privilege Card," (c) the systematic imposition of different workplace rules upon Black employees versus white employees, and (d) Defendants' retaliatory conduct toward Plaintiff for reporting such discriminatory conduct.

18.    Plaintiff also suffers from Post-Traumatic Stress Disorder, a qualifying disability under the ADA. Plaintiff requested a reasonable accommodation, specifically that he be permitted to ride solo in his truck cab, which is consistent with the truck's intended operation. Following this accommodation request, Plaintiff was mocked by Defendant Scioneaux and was assigned to transport trainees in his truck cab a disproportionate and inordinate number of times, directly triggering his PTSD.

19.    On or around July 2, 2025, Plaintiff filed a formal Charge of Discrimination with the EEOC based on the racial discrimination and disability-related harassment described herein (the "First EEOC Charge").

20.    After receiving a Right to Sue letter for the First EEOC Charge, on or around October 14 2025, Plaintiff filed a complaint in federal court (Case No. 2:25-cv-02132-SSV-MBN) asserting claims under Title VII, the ADA, and related state and federal laws arising from the racially discriminatory and disability-based hostile work environment.

21.    On or around January 7, 2026, Case No. 2:25-cv-02132-SSV-MBN was settled. Leading to the settlement, Defendant Scioneaux was demoted from his

Complaint                                                                                                                    4 of 19

supervisory position. Plaintiff remained employed by Defendant Employer following the settlement.

**B. Post-Complaint Retaliation, Unauthorized Disclosure of Medical Information and Defamation**

22.         Beginning in or around July 2, 2025 and continuing through at least January 2026, Defendants engaged in a systematic campaign of retaliation against Plaintiff for filing the First EEOC Charge and the federal lawsuit.

23.    In fact, Defendant Scioneaux stated to Plaintiff's co-workers that, "I'll never forgive [Plaintiff] for what he done to me," referring to Plaintiff's filing of an EEOC complaint and Scioneaux's subsequent demotion.

24.    During this period, Plaintiff sustained an unrelated workplace injury and was approved for and took leave under the Family and Medical Leave Act ("FMLA"). Plaintiff's medical condition, injuries, and treatment constituted confidential medical information protected by the ADA and applicable law.

25.    Despite Plaintiff's confidential medical status, Defendant Scioneaux unlawfully disclosed the details of Plaintiff's workplace injury and medical condition to third-party entities with whom Plaintiff does business. These entities were not persons with a legitimate "need-to-know" Plaintiff's medical information within the meaning of the ADA, 42 U.S.C. § 12112(d) and 29 CFR §1630.14.

26.    In addition to disclosing Plaintiff's private medical information, Defendant Scioneaux made false, defamatory, and disparaging statements to these and other third parties about Plaintiff's work performance, work ethic, professionalism, and character. These statements were made with actual malice or with reckless disregard for their truth or falsity.

27.    The third parties to whom Defendant Scioneaux made these disclosures and statements are entities in the same industry in which Plaintiff works and seeks employment. Defendant Scioneaux knew or should have known that these persons were potential future employers or business contacts of Plaintiff.

28.    Defendant Edwards also made false, defamatory, and disparaging statements to third parties about Plaintiff's work performance, work ethic, professionalism, and character. These statements were made with actual malice or with reckless disregard for their truth or falsity.

29. The third parties to whom Defendant Edwards made these disclosures and statements are entities in the same industry in which Plaintiff works and seeks employment. Defendant Edwards knew or should have known that these persons were potential future employers or business contacts of Plaintiff.

30. Plaintiff notified Defendant Employer of Scioneaux and Edward's unlawful conduct and formally requested that Employer issue a directive to Scioneaux and Edwards to immediately cease discussing Plaintiff's private medical information and making disparaging statements about him to third parties. Defendant Employer failed and refused to take adequate remedial action.

31. As a direct result of Defendant Scioneaux and Defendant Edwards's disclosure of confidential medical information and defamatory statements, and of Defendant Employer's failure to correct such conduct, Plaintiff has been unable to obtain employment in his field. Multiple potential employers in the area have declined to hire Plaintiff, only after hearing from Defendants Scioneaux and Edwards. Plaintiff reasonably believes, based on information and belief, that these rejections are the direct result of Defendants' campaign to damage Plaintiff's reputation.

## C. Hostile Work Environment and Constructive Discharge

32. Following the settlement of Case No. 2:25-cv-02132-SSV-MBN and continuing through the time of Plaintiff's separation from employment, the Defendants' retaliatory conduct created a work environment that was objectively and subjectively hostile, abusive, and intolerable.

33. The hostile work environment included, without limitation: (a) Defendants' ongoing retaliatory actions as described herein; (b) the unauthorized disclosure of Plaintiff's medical information in the workplace and to third-parties; (c) the inordinate assignment of trainees to Plaintiff's truck cab, triggering his PTSD, in direct contravention of his approved accommodation; (d) the failure of Defendant Employer to protect Plaintiff from Scioneaux's and Edwards's retaliatory conduct despite actual notice; (e) Defendant Scioneaux's continuing disparagement of Plaintiff to coworkers and third parties throughout the period from July 2025 through at least the time of Plaintiff's separation; and (f) Defendant Edwards's retaliatory disparagement of Plaintiff to coworkers, and to potential employers in violation of the parties' neutral reference agreement reached in settlement.

34.     Plaintiff reported Defendant Scioneaux's and Defendant Edwards's retaliatory conduct to Defendant Employer's Human Resources ("HR") department and upper management on multiple occasions beginning on or around October 17, 2025. Plaintiff submitted written complaints to HR on or about October 17, 2025 describing the specific retaliatory conduct and requesting that Defendant Employer take corrective action. Defendant Employer failed to conduct a meaningful investigation and failed to take any corrective action to stop Defendant Scioneaux's and Edwards' conduct, despite having actual knowledge of the ongoing retaliation.

35.     The hostile work environment and retaliation were so severe and pervasive that a reasonable person in Plaintiff's position would feel compelled to resign. Defendant Employer knew of the intolerable conditions and failed to remedy them despite Plaintiff's repeated complaints to HR and management. Under these circumstances, Plaintiff's working conditions had become objectively intolerable such that continued employment was not a viable option[3].

36.     Plaintiff's PTSD was directly exacerbated by the ongoing hostile environment, delaying his medical recovery while on FMLA leave.

37.     As a result of the intolerable working conditions created by Defendants' unlawful conduct, Plaintiff was left with no reasonable choice but to resign his employment. Plaintiff's resignation constitutes a constructive discharge within the meaning of applicable law.

38.     Plaintiff filed a second Charge of Discrimination with the EEOC on or around January 15, 2026, based on the retaliatory conduct described herein (the "Second EEOC Charge"). The Second EEOC Charge was separate and distinct from the First EEOC Charge and was not resolved by the settlement of Case No. 123. The EEOC issued a Right to Sue Letter on the Second EEOC Charge on January 30, 2026.

## V. CAUSES OF ACTION

### COUNT 1 — RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

(Against Defendant Employer)

---

[3] See *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (constructive discharge established where employer made conditions so intolerable that reasonable employee would feel compelled to resign); *Dediol v. Best Chevrolet, Inc*., 655 F.3d 435 (5th Cir. 2011).

39.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

40.     Title VII prohibits an employer from discriminating against an employee because that employee has opposed unlawful employment practices or made a charge under Title VII. 42 U.S.C. § 2000e-3(a).

41.     Plaintiff engaged in protected activity by filing the First EEOC Charge in July 2025, filing the federal lawsuit in October 2025, and participating in the settlement of that lawsuit in January 2026.

42.     Defendant Employer, directly and through the conduct of Defendants Scioneaux and Edwards, took materially adverse actions against Plaintiff after and because of his protected activity, including but not limited to: (a) disclosing Plaintiff's confidential medical information to third parties; (b) making defamatory statements to third-party entities that damaged Plaintiff's professional reputation and employment prospects; (c) maintaining a retaliatory hostile work environment; (d) failing and or refusing to correct workplace discrimination and retaliation despite actual notice, and (e) constructively discharging Plaintiff from his employment.

43.     There is a causal connection between Plaintiff's protected activity and the adverse actions taken against him. Defendant Scioneaux was demoted as a direct consequence of Plaintiff's protected activity, providing a clear retaliatory motive. The retaliatory conduct began shortly after the First EEOC Charge was filed and intensified throughout the pendency and resolution of that charge.

44.     As a direct and proximate result of Defendant Employer's unlawful retaliation, Plaintiff has suffered and continues to suffer damages including lost wages, lost employment opportunities, damage to professional reputation, emotional distress, and other compensatory damages.

45.     Defendant Employer's conduct was willful, malicious, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

### COUNT 2 — RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

(Against All Defendants)

46.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

47.     Section 1981, in addition to Title VII, prohibits racial discrimination in the making and enforcement of contracts, including employment contracts, and prohibits retaliation for opposing race discrimination[4].

48.     Plaintiff is a member of a racial minority engaged in protected activity by complaining about and opposing race discrimination in his workplace.

49.     Defendants, individually and jointly, retaliated against Plaintiff for his opposition to race discrimination and his exercise of rights protected under § 1981, through the conduct alleged herein.

50.     Unlike Title VII, § 1981 imposes no cap on compensatory or punitive damages, and Plaintiff seeks the full measure of damages available under the statute.

51.     Defendants Scioneaux and Edwards are individually liable under § 1981 for their personal participation in the retaliatory conduct described herein.

## COUNT 3 — RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

(Against Defendant Employer)

52.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53.     The ADA prohibits retaliation against individuals who engage in protected activity, including requesting a reasonable accommodation and opposing disability-based discrimination[5].

54.     Plaintiff engaged in protected activity under the ADA by requesting a reasonable accommodation for his PTSD disability (solo cab operation) and by including ADA claims in his First EEOC Charge and federal lawsuit.

55.     Defendant Employer retaliated against Plaintiff for this protected activity by, among other things, assigning an inordinate number of trainees to Plaintiff's cab in violation of his accommodation needs, and by failing to prevent Defendant Scioneaux's and Defendant Edwards's ongoing retaliatory conduct after notice.

## COUNT 4 — UNLAWFUL DISCLOSURE OF MEDICAL INFORMATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

(Against Defendant Employer)

56.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

---

[4] *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).
[5] 42 U.S.C. § 12203.

57.     The ADA requires that all information obtained by an employer regarding the medical condition or history of an applicant or employee be treated as a confidential medical record, and that such information be disclosed only in strictly limited circumstances to persons with a demonstrated "need-to-know.[6]"

58.     Defendants Scioneaux and Edwards, acting in a managerial capacity on behalf of Defendant Employer, disclosed Plaintiff's confidential medical information to third-party entities who had no legitimate need-to-know such information. The medical information disclosed by Defendants Scioneaux and Edwards was obtained from Plaintiff's medical documentation submitted in support of his FMLA leave request and ADA accommodation request, including FMLA medical certification forms, treating physician records, and workers' compensation documentation, all of which were maintained by Defendant Employer as confidential medical records within the meaning of 42 U.S.C. § 12112(d).

59.     This disclosure was not authorized by Plaintiff, was not necessary for any legitimate business purpose, and constitutes a direct and independent violation of § 12112(d), separate and apart from any retaliation claim.

60.     As a direct and proximate result of this unauthorized disclosure, Plaintiff suffered harm to his professional reputation, emotional distress, and other damages.

### COUNT 5 — INTERFERENCE AND RETALIATION IN VIOLATION OF THE FMLA, 29 U.S.C. §§ 2615(a) and 2615(b)

(Against All Defendants)

61.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

62.     Plaintiff was an eligible employee under the FMLA at all relevant times. He had been employed by Defendant Employer for at least twelve (12) months and had worked at least 1,250 hours during the preceding twelve-month period. Defendant Employer was a covered employer under the FMLA. Defendants Scioneaux and Edwards, as individuals with supervisory authority over Plaintiff and the ability to make decisions affecting the terms and conditions of Plaintiff's employment, are an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I), and are individually liable for the violations alleged herein[7].

---

[6] 42 U.S.C. § 12112(d).
[7] See *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006).

63.     Plaintiff exercised his right to FMLA leave following his workplace injury. This exercise of FMLA rights constitutes protected activity under 29 U.S.C. § 2615.

64.     Defendant Employer, through Defendants Scioneaux and Edwards, retaliated against Plaintiff for taking FMLA leave by disclosing his medical information to third parties and making disparaging statements about him during and after his FMLA leave, in violation of 29 U.S.C. § 2615. Defendants Scioneaux and Edwards are individually liable for this retaliation in their capacity as an "employer" under the FMLA.

65.     Defendant Employer's conduct also interfered with Plaintiff's FMLA rights by creating conditions that exacerbated Plaintiff's PTSD, delayed his recovery, and made a return to work effectively impossible, in violation of 29 U.S.C. § 2615(a)(1).

66.     As a result of Defendants' FMLA violations, Plaintiff is entitled to recover lost wages, lost benefits, other compensation denied or lost, interest, liquidated damages, and attorney's fees and costs pursuant to 29 U.S.C. § 2617.

## COUNT 6 — DEFAMATION

### (Against All Defendants Under Louisiana Law)

67.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68.     Defendant Scioneaux made false and defamatory statements of fact about Plaintiff to third-party entities and potential employers in the industry. These statements concerned Plaintiff's professional conduct, work performance, work ethic, character, and fitness for employment. By way of example, and on information and belief, Defendant Scioneaux made statements to the effect that Plaintiff was "unsafe to hire," that Plaintiff had "faked" or exaggerated his workplace injury, that Plaintiff could not be trusted to operate equipment, and/or that Plaintiff was an unreliable and difficult employee. All of statements were made for the purpose of damaging Plaintiff's reputation and employment prospects in retaliation for his protected activities.

69.     These statements were false. Defendant Scioneaux either knew the statements were false at the time he made them or made them with reckless disregard for their truth or falsity.

70.        These statements were made to third parties without privilege or justification.

71.        Defendant Edwards made false and defamatory statements of fact about Plaintiff to third-party entities and potential employers in the industry. These statements concerned Plaintiff's professional conduct, work performance, work ethic, character, and fitness for employment. By way of example, and on information and belief, Defendant Edwards made statements to the effect that Plaintiff could not be trusted, caused trouble in the workplace, and/or that Plaintiff was an unreliable and difficult employee. All of statements were made for the purpose of damaging Plaintiff's reputation and employment prospects in retaliation for his protected activities.

72.        These statements were false. Defendant Edwards either knew the statements were false at the time he made them or made them with reckless disregard for their truth or falsity.

73.        These statements were made to third parties without privilege or justification.

74.        As a direct result of these defamatory statements, Plaintiff has suffered damage to his professional reputation, lost employment opportunities, and economic harm. Plaintiff is unable to obtain employment in his industry as a direct consequence of Defendant Scioneaux's statements.

75.        Defendant Employer is vicariously liable for the defamatory statements of Defendants Scioneaux and Edwards, who made them in the course and scope of their employment and/or position as a managerial agent of the Employer

76.        Defendants Scioneaux and Edwards are individually liable for defamation under Louisiana Civil Code Article 2315.

## COUNT 7 — INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

(Against All Defendants Under Louisiana Law)

77.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

78.    Following Plaintiff's constructive discharge, Plaintiff actively sought employment with other waste-hauling and trucking companies in the area, for which he was highly qualified based on his training, experience, and commercial driving history.

79.    Defendants knew Plaintiff was actively and/or likely to seek employment with these companies and knew that Plaintiff had a reasonable probability of obtaining such employment absent Defendants' interference.

80.    Defendant Scioneaux and Defendant Edwards intentionally and maliciously communicated with third-party vendors, business contacts, and prospective employers in the local waste-hauling and trucking industry and made false and disparaging statements about Plaintiff.

81.    These statements included, upon information and belief, statements that Plaintiff was "trouble," for filing EEOC complaints, that he was dishonest, unsafe, unreliable, faked or exaggerated his injury, could not be trusted, and/or was not suitable for employment.

82.    Defendants made these statements for the purpose of preventing Plaintiff from obtaining future employment and in retaliation for Plaintiff's EEOC complaints and lawsuit.

83.    As a direct and proximate result of Defendants' conduct, one or more prospective employers declined to hire Plaintiff, despite Plaintiff's qualifications and likelihood of employment.

84.    Defendants' conduct constituted intentional and malicious interference with Plaintiff's prospective economic advantage under Louisiana law, entitling Plaintiff to recover damages.

## COUNT 8 — NEGLIGENT RETENTION AND NEGLIGENT SUPERVISION

### (Against Defendant Employer)

85.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

86.    Leading to the settlement of Case No. 2:25-cv-02132-SSV-MBN, Defendant Employer demoted Defendant Scioneaux and expressly prohibited him from entering the truck yard, interacting with drivers, or exercising supervisory authority over Plaintiff and other drivers.

87.    Despite these restrictions, Defendant Scioneaux repeatedly entered the truck yard, interacted with drivers, harassed Plaintiff, and continued making disparaging statements about Plaintiff.

Complaint                                                                                    13 of 19

88. Defendant Scioneaux also repeatedly violated company safety rules and policies, including without limitation:

- operating company vehicles without a valid CDL;

- altering company records and changing his identity in the system to avoid detection;

- operating vehicles without required high-visibility safety equipment;

- driving without a seatbelt; and

- operating a vehicle while using a cellular telephone.

89. Defendant Employer knew or should have known of Defendant Scioneaux's conduct because:

- the violations were documented by GPS, safety video, and company records;

- other employees repeatedly reported the conduct; and

- Defendant Scioneaux 's post-demotion presence in the yard directly violated the restrictions imposed by Defendant Employer itself.

90. Defendant Employer nevertheless failed to discipline, remove, or terminate Defendant Scioneaux, despite knowledge that he posed a continuing risk to Plaintiff and others.

91. Defendant Employer's failure to supervise and remove Defendant Scioneaux permitted him to continue retaliating against Plaintiff, disclosing Plaintiff's confidential medical information, making defamatory statements, and creating intolerable working conditions.

92. As a direct and proximate result of Defendant Employer's negligent retention and negligent supervision of Defendant Scioneaux, Plaintiff suffered emotional distress, damage to reputation, lost employment opportunities, and constructive discharge.

## COUNT 9 — FAILURE TO PROVIDE REASONABLE ACCOMMODATION, 42 U.S.C. § 12112(b)(5)(A)

(Against Defendant Employer)

93. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

94. Plaintiff is a qualified individual with a disability within the meaning of the ADA. 42 U.S.C. § 12111(8). Plaintiff's PTSD substantially limits one or more major

life activities including, but not limited to, concentration, sleeping, and working in close proximity to others.

95.     Plaintiff requested a reasonable accommodation, namely that he be permitted to operate his truck solo, consistent with the truck's intended single-operator design. This accommodation was medically necessary to manage his PTSD and did not impose an undue hardship on Defendant Employer.

96.     Rather than engaging in a good-faith interactive process and granting Plaintiff's reasonable accommodation request, Defendant Employer, through Defendant Scioneaux, mocked the request and thereafter assigned trainees to Plaintiff's cab an inordinate number of times, directly and foreseeably triggering Plaintiff's PTSD. This conduct constitutes a failure to provide a reasonable accommodation in violation of 42 U.S.C. § 12112(b)(5)(A)[8].

### COUNT 10 — HOSTILE WORK ENVIRONMENT BASED ON DISABILITY, 42 U.S.C. § 12112(a)

(Against Defendant Employer)

97.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

98.     The Fifth Circuit recognizes a claim for hostile work environment under the ADA[9]. To prevail, a plaintiff must show: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take corrective action[10].

99.     Plaintiff, as a person with PTSD, is a member of a protected class under the ADA. He was subjected to unwelcome and severe harassment on account of his disability, including: (a) being mocked by Defendant Scioneaux upon making his accommodation request; (b) being assigned trainees to his cab in deliberate disregard of his known disability-related needs; and (c) the ongoing failure of Defendant Employer to remediate disability-based harassment despite actual knowledge.

100.    This harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment, directly

---

[8] See *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).
[9] See *Flowers v. Southern Regional Physician Services, Inc*., 247 F.3d 229, 235 (5th Cir. 2001).
[10] *Id*.

exacerbating Plaintiff's PTSD and contributing to his constructive discharge. Defendant Employer knew or should have known of the harassment and failed to take corrective action.

### Count 11 – Louisiana Human Rights Act (La. R.S. § 51:2231, et seq)

Against Corporate Defendants

101.    Plaintiff realleges and incorporates each and every foregoing paragraph.

102.    The Louisiana Human Rights Act (LHRA)'s disability discrimination provisions are modelled after the ADA and courts "look. . . to the ADA" when "interpreting the scope of the LHRA.[11]"

103.    The LHRA similarly prohibits racial discrimination[12].

104.    The LHRA similar prohibits conspiracies to violate any such rights[13].

105.    Therefore, Defendants are liable under the same theories as described herein under Count 1[14].

### Count 12 – Negligence and Negligent Infliction of Emotional Distress

(Against All Defendants)

106.    Plaintiff realleges and incorporates each and every foregoing paragraph.

107.    To prove negligence, a plaintiff must show that (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached[15].

108.    Defendants owed a duty of care to Plaintiff through their positions his coworkers, supervisors, and employers.

109.    Defendants breached that duty of care, causing harm to Plaintiff, when they participated in and/or failed to prevent or report acts of racial and disability discrimination.

---

[11] *Cougle v. Berkshire Life Ins. Co. of Am.*, 429 F. Supp. 3d 208, 216 (E.D. La. 2019), citing *Smith v. Board of Comm. of La. Stadium and Exposition Dist.* , 385 F. Supp. 3d 491, 506-08 (E.D. La. 2019).
[12] La. R.S. 51:2231.
[13] La. R.S. 51:2256.
[14] La. R.S. 51:2256.
[15] *Stroik v. Ponseti*, 699 So.2d 1072, 1078 (La. 1997), citing *Faucheaux v. Terrebonne Consolidated Government*, 615 So.2d 289, 292 (La.1993); *Mart v. Hill*, 505 So.2d 1120 (La.1987).

110.    Corporate Defendants and any Defendants acting as supervisors also breached that duty of care in the insufficient hiring, training, and supervision of employees which allowed the harassment to occur.

## Count 13 – Vicarious Liability

(Against Corporate and Supervisory Defendants)

111.    Plaintiff realleges and incorporates each and every foregoing paragraph.

112.    Corporate Defendants and any Defendants acting as supervisors are liable to Plaintiffs for the constitutional violations as well as the negligent and intentional acts and omissions of those under their direction and control pursuant to Louisiana Civil Code article 2320 and the doctrine of respondeat superior[16].

## Count 14 – Indemnity

Against Corporate Defendants

113.    Plaintiffs reallege and incorporate each and every foregoing paragraph.

114.    Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for while employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

115.    All Corporate Defendants and certain Defendants acting in a supervisory role are responsible for the hiring, training, and discipline of its employees.

116.    While committing the misconduct alleged herein, Employee Defendants employed by Corporate Defendants, were present on Corporate Defendants property (including vehicles), and were performing work within the scope of their employment.

117.    Corporate Defendants are therefore obligated by Louisiana statute to pay any judgment entered against its employees.

## VII. DAMAGES

118.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages including:

---

[16] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and, e.g., *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) by analogy; and *Upton v. Vicknair*, 21-cv-407, R. Doc. 157 (E.D. La. Feb. 20, 2024) (granting plaintiff's motion for summary judgment on respondeat superior liability when defendant's employee had opportunity to commit torts due to their job, even though employer condemned conduct and fired employee), citing La. Civ. Code art. 2320; *Baumeister v. Plunkett*, 673 So. 2d 994, 996  (La. 1996).

- Lost wages and benefits from constructive discharge;

- Lost future earnings and diminished earning capacity;

- Compensatory damages for emotional distress, mental anguish, and exacerbation of Post-Traumatic Stress Disorder;

- Damages to professional reputation;

- Lost employment opportunities resulting from defamation and intentional interference with business relationships and economic advantage;

- Liquidated damages under the FMLA;

- Punitive damages for willful and malicious conduct, subject to the applicable caps under the Civil Rights Act of 1991, 42 U.S.C. § 1981, for Title VII and ADA claims, and without limitation for claims brought pursuant to 42 U.S.C. § 1981;

- Attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, and 29 U.S.C. § 2617; and

- Such other and further relief as this Court deems just and proper.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Debric Broussard respectfully requests that this Court:

A. Enter judgment in Plaintiff's favor and against Defendants on all Counts;

B. Award Plaintiff back pay and all lost wages and benefits from the date of constructive discharge, including interest thereon; award reinstatement to Plaintiff's former position or, if reinstatement is not practicable, front pay in lieu thereof pursuant to 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 12117;

C. Award Plaintiff compensatory damages for emotional distress, mental anguish, pain and suffering, and exacerbation of his PTSD in an amount to be determined at trial;

D. Award Plaintiff damages for injury to his professional reputation and lost employment opportunities;

E. Award Plaintiff punitive damages for Defendants' willful, malicious, and reckless conduct;

F. Award Plaintiff liquidated damages under the FMLA;

G. Award Plaintiff his reasonable attorney's fees and costs;

H.  Issue injunctive relief prohibiting Defendants from further retaliating against Plaintiff, further disclosing Plaintiff's confidential medical information, or making further defamatory statements about Plaintiff to third parties;

I.  Order Defendant Employer to issue a formal directive to Defendant Supervisor immediately prohibiting discussion of Plaintiff's private medical information; and

J.  Grant such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ *Jonathan Rhodes*_____
Jonathan Rhodes La. Bar #32649
The Rhodes Law Firm, LLC
1937 Peniston Street
New Orleans, LA 70115
T: 504-475-0975 F: 504-475-1013
E: jonathan@therhodeslawfirm.com
*Counsel for Plaintiff*

Complaint