**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DEBRIC BROUSSARD,**<br><br>Plaintiff,<br>v.<br><br>**WASTE PRO USA, INC; WASTE PRO OF LOUISIANA, INC.; TOTAL WASTE SOLUTIONS, LLC; MICHAEL SCIONEAUX; SAMUEL EDWARDS; DOE DEFENDANTS 1-10**<br><br>Defendants. | ) | **Civil Action**<br><br>**NO. 2:26-cv-00760-CJB-DPC** |

**FIRST AMENDED COMPLAINT**

Plaintiff Debric Broussard ("Plaintiff" or "Broussard"), through undersigned counsel, brings this action against Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., Total Waste Solutions, L.L.C. (collectively, "Waste Pro" or the "Corporate Defendants"), and Michael Scioneaux ("Scioneaux") and Samuel Edwards ("Edwards") (collectively, the "Individual Defendants"), and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from Defendants' retaliation against Plaintiff because he exercised protected rights under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"), including his prior complaints and charge of racial discrimination and disability discrimination.
2. Plaintiff previously filed an EEOC charge and subsequent federal action against Waste Pro and certain employees asserting claims arising from racial and disability discrimination in the workplace. That action was filed on or about October 14, 2025, in this Court as *Broussard v. Waste Pro USA, Inc., et al.*, Civil Action No. 2:25-cv-02132-SSV-MBN (the "First Action").
3. After Plaintiff engaged in this protected activity, Defendants engaged in retaliatory conduct directed at Plaintiff.
4. Plaintiff repeatedly sought intervention from Waste Pro's Human Resources and management, however, Defendants failed to take reasonable corrective action.
5. The retaliation continued while Plaintiff was attempting to maintain his employment, ultimately causing Plaintiff to conclude that he could no longer reasonably remain employed by Waste Pro.

6. Plaintiff thereafter resigned his employment under circumstances constituting a constructive discharge.
7. Plaintiff subsequently filed a second Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 15, 2026, asserting retaliation arising from his protected activity, including the disclosure of his medical information, discussion of his prior EEOC case, efforts to isolate him, disparagement, and constructive discharge.
8. The EEOC issued Plaintiff a Notice of Right to Sue on or about January 30, 2026.
9. This action was initially filed on April 13, 2026, within ninety days of Plaintiff's receipt of the Notice of Right to Sue.
10. The claims asserted herein are distinct retaliation claims based upon retaliatory conduct that occurred after Plaintiff engaged in protected activity. Plaintiff does not seek to relitigate claims released in the Settlement of the First Action and/or Release from his Wokers' Compensation Claim.
11. To the extent Defendants contend that any portion of the conduct alleged herein was released by the prior Settlement or Release, Plaintiff specifically denies that contention and alleges that the claims asserted herein were not released because they arose from subsequent retaliatory conduct and/or were not claims that could have been included in the First Action at the time the First Action was filed.

**II. JURISDICTION AND VENUE**

12. This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under Title VII and the ADA.
13. This Court has jurisdiction pursuant to 42 U.S.C. §§ 2000e-5(f)(3) and 12117(a).
14. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367.
15. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 because the unlawful employment practices alleged herein occurred within this District.

**III. PARTIES**

*Plaintiff*

16. Plaintiff Debric Broussard is of the full age of majority and is domiciled in Terrebonne Parish, Louisiana. Plaintiff was employed by Waste Pro beginning on or

about May 16, 2023 and worked principally as a commercial truck driver based out of Waste Pro's Gibson, Louisiana facility.

*Defendants*

17. Defendant Waste Pro USA, Inc. is a Florida-based company which operates throughout the State of Louisiana. Waste Pro USA, Inc.'s Principal Business Office is located at 2101 W. State Road 434, 3rd Floor, Longwood, FL 32779. Its Registered Office in Louisiana is located at 3867 Plaza Tower Drive, Baton Rouge, LA 70816 and its Principal Business Establishment in Louisiana at 920 Kenner Avenue, Kenner, LA 70062.
18. Defendant Waste Pro of Louisiana, Inc. is a company which operates throughout the State of Louisiana. Its Domicile Address is 920 Kenner Avenue, Kenner, LA 70062 and its Principal Business Office at 2101 W. State Road 434, 3rd Floor, Longwood, FL 32779. Its Registered Office in Louisiana is located at 3867 Plaza Tower Drive, Baton Rouge, LA 70816 and its Principal Business Establishment in Louisiana at 920 Kenner Avenue, Kenner, LA 70062.
19. Defendant Total Waste Solutions, L.L.C. is a Louisiana-based company with registered agent located at 209 Blackwater Court, Gibson, LA 70356.
20. Defendant Michael Scioneaux is a person of the full age of majority who was, at all times relevant to this Complaint, an employee of co-Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and/or Total Waste Solutions, L.L.C.
21. Defendant Samuel Edwards is a person of the full age of majority who was, at all times relevant to this Complaint, an employee of co-Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and/or Total Waste Solutions, L.L.C.
22. Doe Defendants 1-10 are individuals or entities not currently known to Plaintiff who may have participated in, allowed, or otherwise perpetuated the damages and other claims alleged herein.
23. Upon information and belief, the Corporate Defendants jointly operated Plaintiff's workplace and/or were Plaintiff's joint employers.
24. At all relevant times, the Individual Defendants were acting within the course and scope of their employment and/or agency relationships with the Corporate Defendants.

**IV. PLAINTIFF'S PRIOR PROTECTED ACTIVITY**

25. During his employment, Plaintiff was subjected to racial harassment and discrimination. Among other things, Plaintiff complained to Waste Pro about racially offensive conduct, including the use of the N-word and other racially derogatory language by employees and supervisors, and disparate treatment of Black employees at the workplace.

26. Plaintiff filed a Charge with the EEOC in March 2025 and thereafter filed the First Action in this Court on October 14, 2025 titled *Broussard v. Waste Pro USA, Inc., et al.*, Civil Action No. 2:25-cv-02132-SSV-MBN (E.D. La.).

27. The filing of the EEOC Charge and the First Action constituted protected activity.

## V. RETALIATORY CONDUCT FOLLOWING PLAINTIFF'S PROTECTED ACTIVITY

28. After Plaintiff engaged in the protected activity described above, Defendants engaged in retaliatory conduct.

29. Beginning on or about May 2025, and continuing thereafter, Plaintiff experienced retaliatory treatment relating to his prior complaints of discrimination and his EEOC activity.

30. On or about July 1, 2025, while on medical leave for a work-related injury, Plaintiff contacted his supervisor, Michael Serigny, concerning his hours and vacation pay after receiving no response from Human Resources.

31. Plaintiff was informed by Serigny that the Regional Manager for the Corporate Defendants had instructed that employees should not communicate with Plaintiff.

32. Plaintiff understood this instruction as an effort to isolate him because of his complaints and protected activity.

33. On or about June 2025, Plaintiff learned that Scioneaux was discussing Plaintiff's prior EEOC proceedings with other employees.

34. Scioneaux also discussed Plaintiff's medical condition and/or work-related injury with employees and third parties who were not authorized and had no legitimate need to know Plaintiff's medical information.

35. On information and belief, Scioneaux interrogated Plaintiff’s coworkers as to whether they would participate in his case, and made statements to third parties concerning Plaintiff's character, work ethic, honesty, and/or medical condition, and/or work-related injury for the purpose of embarrassing Plaintiff, damaging his reputation,

interfering with his professional relationships, and retaliating against him for his protected activity. As a result, Plaintiff lost and/or was denied employment opportunities and suffered economic and reputational damages.

## VI. PLAINTIFF'S COMPLAINTS TO HUMAN RESOURCES

36. Plaintiff did not simply abandon his employment following the retaliatory conduct. Rather, Plaintiff desired to remain employed by Waste Pro and repeatedly attempted to obtain assistance from Waste Pro's Human Resources department and management.

37. On or about October 17, 2025, Plaintiff contacted Human Resources concerning Scioneaux's conduct and requested that Waste Pro direct Scioneaux to stop discussing Plaintiff's EEOC claims with coworkers, stop asking coworkers whether they were participating in Plaintiff's lawsuit, and to stop disclosing Plaintiff's private medical information concerning his work-related injury.

38. Despite Plaintiffs ongoing outreach, Waste Pro failed to take reasonable corrective action or provide Plaintiff with any meaningful response to his inquiries about the situation.

39. As a result, Plaintiff reasonably believed that Waste Pro was unwilling or unable to protect him from continued retaliation.

40. Plaintiff further alleges that Waste Pro treated Scioneaux more favorably than Plaintiff and other employees despite Scioneaux's repeated violations of company rules and safety requirements.

41. These violations were know to Waste Pro as they were documented through Waste Pro's GPS systems, vehicle safety systems, video surveillance, and/or reports from other employees.

42. Despite the seriousness of these violations, Waste Pro failed to terminate Scioneaux or impose discipline proportionate to the discipline that would ordinarily result from such conduct.

43. Plaintiff alleges that Waste Pro's disparate treatment of Scioneaux is relevant to its retaliatory motive and to its failure to protect Plaintiff from Scioneaux's continuing retaliatory conduct.

## VII. CONSTRUCTIVE DISCHARGE

44. Plaintiff continued attempting to preserve his employment despite the retaliation by repeatedly complaining to Waste Pro and requesting that Waste Pro intervene. However, Waste Pro failed to take meaningful action.
45. Plaintiff reasonably believed that Waste Pro was permitting and/or ratifying the retaliatory conduct, causing him to suffer substantial emotional distress, reputational harm, professional harm, and interference with his ability to work.
46. In addition, Defendants used the workers' compensation settlement process as leverage while Plaintiff was attempting to preserve his employment and obtain relief from the retaliation. Plaintiff was told that, if he did not agree to the workers' compensation settlement, Waste Pro would send him to another physician that would prolong the process and ultimately deny his claim, leaving Plaintiff without wages or benefits to support himself and his family during the process.
47. Therefore, on December 19, 2025, Plaintiff was forced into signing a Settlement, which he protested before persons present, including Xavier Pickney and Plaintiff's Workers' Compensation counsel Tara Melancon, stating at the time that he was signing the settlement and "voluntary resignation" under duress.
48. The cumulative retaliatory conduct, Waste Pro's failure to address Plaintiff's complaints, and the circumstances surrounding his resignation made continued employment objectively intolerable and resulted in Plaintiff's constructive discharge.

**VIII. ONGOING RETALIATION FOLLOWING SETTLEMENT**

49. Plaintiff reached a Settlement in the First Action on January 7, 2026. Unfortunately, the retaliatory conduct of Defendants continued after that date.
50. On or around Jan 15, 2026, Plaintiff applied for a job with Geaux Waste, another waste hauling company operating across South Louisiana. Plaintiff was interviewed and offered a job with an estimated start date of January 19, 2026.
51. However, Defendant Edwards and other Doe Defendants then communicated to Geaux Waste and others about Plaintiff's protected activities, Plaintiff's work-related injury and workers' compensation case, describing Plaintiff as "trouble" and encouraging members of Geaux Waste, Republic Services and potentially other employers not to hire Plaintiff.
52. After hearing from Defendant Edwards and other Doe Defendants, Geaux Waste informed Plaintiff that they would no longer hire him.

53. Not long after this incident, in or around February 2026, Plaintiff learned from a former Waste Pro employee, Joshua Liner, that Scioneaux was continuing his retaliatory conduct.

54. Specifically, Scioneaux continued to communicate false and defamatory statements concerning Plaintiff to third parties concerning Plaintiff's character, honesty, work ethic, medical condition, and/or professional conduct, including that Plaintiff "faked his injuries" or substantially similar statements.

55. On information and belief, Scioneaux communicated to others that Plaintiff would have to "get a job in Egypt" by the time Scioneaux was done with him.

56. Plaintiff believes that Defendants' conduct is not limited to these incidents and remains ongoing.

57. Defendants' retaliatory conduct has in fact damaged Plaintiff's reputation and Plaintiff has suffered loss of employment opportunities, professional relationships, business opportunities, emotional distress, and other damages as a direct result.

**IX. SECOND EEOC CHARGE AND ADMINISTRATIVE EXHAUSTION**

58. Plaintiff filed a second Charge of Discrimination with the EEOC on or about January 15, 2026, alleging retaliation arising from Plaintiff's prior EEOC activity and complaints of discrimination.

59. Plaintiff alleged that the continuing conduct created a hostile work environment and ultimately forced him to leave his employment.

60. Plaintiff's claims in this action arise from and are reasonably related to the retaliation described in the Second Charge.

**X. PRIOR SETTLEMENT DOES NOT RELEASE THESE CLAIMS**

61. Plaintiff anticipates that Defendants may contend that a Settlement Agreement entered on January 7, 2026 resolving the First Action bars the claims asserted herein. Plaintiff denies that contention.

62. Plaintiff's claims in this action are distinct from the claims that were asserted and resolved in *Broussard v. Waste Pro USA, Inc., et al*., Civil Action No. 2:25-cv-02132-SSV-MBN (E.D. La.) (the "Prior Action").

63. The Prior Action was filed on October 14, 2025 and principally concerned racial and disability discrimination, harassment, hostile work environment, and failure to accommodate his disability that Plaintiff had experienced during his employment.

64. Plaintiff's present claims arise principally from Defendants' subsequent retaliation against Plaintiff because he engaged in protected activity, including filing and pursuing his prior EEOC charge and Prior Action.

65. These retaliatory acts were not merely a continuation of the discrimination claims asserted in the Prior Action. They constituted new and independently actionable employment practices undertaken because Plaintiff had engaged in protected activity.

66. Plaintiff repeatedly attempted to resolve this retaliatory conduct internally rather than immediately commencing additional litigation. Plaintiff remained employed and desired to continue his employment with Waste Pro. Plaintiff therefore reported the retaliatory conduct to Human Resources and requested that Waste Pro intervene and direct Defendant Scioneaux to cease retaliating against him.

67. Plaintiff did not file the present action based upon those complaints at that time because he was attempting to obtain relief through Waste Pro's internal procedures and wished to preserve his employment relationship.

68. Waste Pro failed to take adequate corrective action in response to Plaintiff's complaints.

69. The retaliation alleged herein was also the subject of a separate administrative proceeding before the Equal Employment Opportunity Commission. Plaintiff filed his Second Charge of Discrimination on or about January 15, 2026, specifically identifying retaliation arising from his prior EEOC activity, Defendant Scioneaux's disclosure of Plaintiff's medical information and prior EEOC activity, disparaging statements concerning Plaintiff, and Waste Pro's failure to address Plaintiff's complaints.

70. At the time the parties resolved the First Action, Plaintiff had not received a right-to-sue notice concerning the retaliation claims asserted in his Second Charge and therefore had not completed the administrative exhaustion process necessary to pursue those claims in federal court.

71. Plaintiff could not reasonably be expected to litigate the present claims in the First Action before completing the separate administrative process concerning those claims. Indeed, Plaintiff's decision to pursue the matter through Waste Pro's Human Resources department and subsequently through a separate EEOC charge was

consistent with the statutory administrative scheme governing Title VII and ADA claims.

72. The January 7, 2026 Settlement Agreement released claims that Plaintiff had or might have had or that could have been brough in the First Action. See Exhibit A (to be filed under seal).

73. Plaintiff further alleges that the parties' January 15, 2026 workers' compensation Receipt and Release was specifically limited to claims arising from Plaintiff's May 27, 2025 work-related accident. See Exhibit B (to be filed under seal).

74. Plaintiff further alleges that the parties' settlement did not resolve the separate grievance that Plaintiff had presented to Waste Pro concerning Defendant Scioneaux's retaliation, disclosure of Plaintiff's medical information, disparagement of Plaintiff, and interference with Plaintiff's employment prospects.

75. Furthermore, Plaintiff contends that much of the retaliatory conduct occurred *after* the January 7, 2026 Settlement and may continue to this day.

76. Plaintiff therefore does not seek to recover twice for claims that were previously released or settled.

77. Instead, Plaintiff seeks relief for distinct retaliatory conduct that was pursued separately through the EEOC and that caused separate injuries and damages.

**COUNT I**
**RETALIATION UNDER TITLE VII**
**42 U.S.C. § 2000e-3**

(Against All Defendants)

78. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

79. Plaintiff engaged in protected activity by complaining about racial discrimination and harassment and by filing an EEOC charge and the First Action.

80. Following Plaintiff's protected activity, Defendants engaged in materially adverse retaliatory conduct, including isolating Plaintiff from coworkers, discussing his EEOC activity, questioning employees about participation in his lawsuit, disclosing his medical information, disparaging him to coworkers and third parties, making false statements concerning his honesty, work performance, and medical condition, interfering with his prospective employment, failing to address his complaints despite repeated notice, permitting employees to continue retaliating against him, and ultimately constructively discharging him.

81. The timing, nature, repetition, and circumstances of Defendants' conduct demonstrate a causal connection between Plaintiff's protected activity and the retaliatory conduct.

82. Defendants' conduct would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

83. Plaintiff suffered economic losses, lost employment opportunities, emotional distress, reputational harm, and other damages.

84. Defendants acted knowingly, intentionally, maliciously, and/or with reckless disregard for Plaintiff's federally protected rights.

**COUNT II**
**RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12203**

(Against All Defendants)

85. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

86. Plaintiff has a disability and/or was regarded by Defendants as having a disability and requested reasonable accommodation, a protected activity under the ADA.

87. Defendants thereafter engaged in retaliatory conduct, including disclosure and discussion of Plaintiff's medical information, disparagement, interference with his employment, failure to respond to his complaints, and constructive discharge.

88. Defendants' conduct was motivated, at least in part, by Plaintiff's protected activity.

89. Defendants' conduct violated 42 U.S.C. § 12203.

90. Plaintiff suffered damages as a result.

**COUNT III**
**DEFAMATION**

(Against All Defendants Under Louisiana Law)

91. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

92. Defendants communicated false and defamatory statements concerning Plaintiff to third parties concerning Plaintiff's character, honesty, work ethic, medical condition, and/or professional conduct, including that Plaintiff "faked his injuries" or substantially similar statements.

93. The statements were communicated to third parties, including numerous individuals at Waste Pro and numerous individuals and entities, including potential employers, working across Port Fourchon.

94. Defendants knew the statements were false or acted with reckless disregard for their truth or falsity and were made without privilege and/or outside the scope of any legitimate employment-related need to communicate Plaintiff's medical or employment information.

95. The statements damaged Plaintiff's reputation and Plaintiff has suffered loss of employment opportunities, professional relationships, business opportunities, emotional distress, and other damages as a direct result.

**COUNT IV**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

(Against All Defendants Under Louisiana Law)

96. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

97. Plaintiff was qualified for employment and/or professional opportunities with third parties in the geographic area.

98. Plaintiff had actual and/or reasonably anticipated employment and professional relationships with Geaux Waste and numerous other entities in the waste/hauling industry operating at or around Port Fourchon and across South Louisiana.

99. Plaintiff had actual and/or identifiable prospective economic relationships and reasonable opportunities for employment with these third parties.

100. Defendants knew of or were aware of Plaintiff's professional relationships and reputation in the local employment market, and intentionally interfered with those prospective relationships by communicating false and disparaging information concerning Plaintiff.

101. Defendants' interference was motivated by malice, retaliation, and/or an intent to damage Plaintiff because he exercised protected rights.

102. Defendants' conduct caused one or more prospective employers or business contacts, including without limitation, Geaux Waste and Republic Services to decline to hire, employ, engage, or otherwise deal with Plaintiff.

103. Plaintiff suffered lost employment opportunities and economic damages as a direct result.

**COUNT V**
**BREACH OF CONTRACT**

(Against All Defendants Under Louisiana Law)

104. Plaintiff incorporates by reference all preceding paragraphs as if fully

105. The January 7, 2026 Settlement agreement in the First Action provided for certain protections against disclosure of information.

106. By discussing the terms of the Settlement and other employment matters with third parties, including without limitation potential employers at Geaux Waste and Republic Services, Defendants violated certain provisions of the Settlement.

107. Furthermore, by providing a negative reference to potential employers, including without limitation Geaux Waste and Republic Services, Defendants violated certain provisions of the Settlement.

108. By failing to comply with these express provisions, Defendants breached the binding settlement agreement. This failure to perform constitutes a direct and material breach of contract under Louisiana Civil Code Article 1994, as Defendants failed to fulfill the obligations they voluntarily assumed.

109. As a direct and proximate result of Defendants' material breach, Plaintiff has suffered, and continues to suffer, substantial financial damages and economic loss. Plaintiff is entitled to a judgment enforcing the terms of the settlement, alongside an award for all consequential damages, judicial interest from the date of judicial demand, and all reasonable attorney fees and court costs incurred in bringing this action.

## VIII. DAMAGES

110. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages including, without limitation:

a. lost wages;

b. lost employment opportunities;

c. lost earning capacity;

d. loss of prospective economic opportunities;

e. reputational injury;

f. emotional distress;

g. mental anguish;

h. humiliation;

i. damage to professional relationships;

j. medical and related expenses to the extent recoverable;

k. other economic damages;

l. punitive damages to the extent permitted by law;

m. attorneys' fees;

n. litigation expenses; and

o. all other relief allowed by applicable law.

## XI. PRESERVATION OF CLAIMS NOT RELEASED

111. Plaintiff expressly does not seek recovery for any claim or damages finally released and satisfied by the prior settlement agreements.

112. Plaintiff seeks recovery only for claims and damages arising from conduct not released by those agreements.

113. Plaintiff reserves all rights concerning the interpretation, enforceability, scope, and application of the prior settlement agreements.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Debric Broussard respectfully requests that this Court enter judgment in his favor and against Defendants and:

A. Declare that Defendants violated Title VII and/or the ADA;

B. Award Plaintiff compensatory damages for lost wages, lost employment opportunities, emotional distress, reputational harm, and other damages proven at trial;

C. Award Plaintiff back pay and front pay as appropriate;

D. Award damages for loss of earning capacity;

E. Award punitive damages to the extent permitted by law;

F. Award damages under applicable Louisiana law;

G. Award attorneys' fees and costs pursuant to applicable federal law;

H. Award pre- and post-judgment interest as permitted by law;

I. Enter such injunctive and equitable relief as the Court determines appropriate;

J. Award all other relief to which Plaintiff may be entitled; and

K. Grant such other and further relief, both legal and equitable, as this Court deems just and proper.

## XIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ *Jonathan Rhodes*__________
Jonathan Rhodes La. Bar #32649
The Rhodes Law Firm, LLC
1937 Peniston Street
New Orleans, LA 70115
T: 504-475-0975 F: 504-475-1013
E: jonathan@therhodeslawfirm.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2026, a copy of the foregoing First Amended Complaint was filed electronically through the Court's CM/ECF system, which will send a Notice of Electronic Filing to all registered attorneys of record in this matter.

/s/ Jonathan M. Rhodes
Attorney for Plaintiff