**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DEBRIC BROUSSARD,<br><br>Plaintiff,<br><br>vs.<br><br>WASTE PRO USA, INC; WASTE PRO OF LOUISIANA, INC.; TOTAL WASTE SOLUTIONS, LLC; MICHAEL SCIONEAUX; SAMUEL EDWARDS; DOE DEFENDANTS 1- 10,<br><br>Defendants. | Civil Action No. 2:26-cv-00760<br><br>Judge Carl J. Barbier<br><br>Magistrate Judge Donna Phillips Currault |

**MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS</u>**

Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and Total Waste Solutions, LLC (collectively, the "Corporate Defendants"); along with Michael Scioneaux and Samuel Edwards (the "Individual Defendants," and together with the Corporate Defendants, collectively, "Defendants"); through undersigned counsel, respectfully submit this memorandum in support of their Rule 12(b)(6) Motion to Dismiss.

Plaintiff is seeking to relitigate claims that he already released. On January 7, 2026, Plaintiff – represented by counsel and after consultation with counsel – executed a Confidential Settlement Agreement and General Release (the "January 7th Release," found at Exhibit C) settling his prior employment suit against Defendants, *Broussard v. Waste Pro USA, Inc., et al.*, No. 2:25-cv-02132-SSV-MBN (E.D. La, Hon. Sarah Vance presiding) (the "2025 Title VII Action," found at Exhibit A), in exchange for valuable consideration. In that Release, Plaintiff "knowingly and voluntarily release[d] and forever discharge[d]" the "Released Parties" – which include all Defendants named in this suit – from "any and all claims" that Plaintiff had or might

have had as of the date of execution "that were or could have been brought in" the 2025 Title VII Action. The January 7th Release expressly encompasses claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and "[a]ny federal or state claims for negligence, conspiracy, indemnity, vicarious liability, or any other claims."

Despite having accepted valuable consideration in exchange for this comprehensive release, Plaintiff filed the instant suit and – in his Amended Complaint (Doc. 9) – reasserts claims resting on the very same pre-January 7, 2026 conduct that the January 7th Release covers. Among other claims, the Amended Complaint alleges that Defendants created a hostile workplace, isolated Plaintiff from his coworkers, and mishandled Plaintiff's complaints to Human Resources – alleged conduct that, if it occurred (which Defendants deny), necessarily must have occurred prior to January 7, 2026. The reason is simple: on May 27, 2025, Plaintiff went on injury-related leave and thereafter never returned to work for Defendants. In addition, he voluntarily resigned in writing on December 19, 2025. Thus, it is impossible that Defendants mistreated Plaintiff in the workplace after January 7, 2026, because Plaintiff never worked for Defendants during that time.

The Amended Complaint also raises claims for lost wages and constructive discharge, which are barred for additional reasons. On December 19, 2025, as a term of Plaintiff's settlement of a worker's compensation claim and in exchange for $50,000, he agreed to voluntarily resign from his position with Defendants. Plaintiff himself swore under oath that his "resignation was voluntary and of his own free will and that he was not forced to resign." The Office of Workers' Compensation judge approved the related settlement as "fair and equitable," finding Plaintiff "had been fully advised of his rights." Plaintiff is barred from asserting lost wages and constructive discharge given that he voluntarily resigned as a term of a settlement.

Defendants seek dismissal with prejudice of all claims and damages arising from pre-January 7, 2026 conduct, including but not limited to the Amended Complaint's allegations related creation of a hostile workplace, isolation of Plaintiff from his coworkers, mishandling of Plaintiff's complaints to Human Resources, constructive discharge, and lost wages.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Employment and the 2025 Title VII Action.

Plaintiff alleges that he was employed by the Corporate Defendants beginning on or about May 16, 2023, working principally as a commercial truck driver based out of their Gibson, Louisiana facility. (Am. Compl. para. 16). On May 27, 2025, Plaintiff sustained a work-related injury and never returned to work thereafter. (Am. Compl. paras. 25-27; Ex. B).

In 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and, on October 14, 2025, filed the 2025 Title VII Action, asserting claims of racial and disability discrimination, harassment, hostile work environment, and failure to accommodate. *See Broussard v. Waste Pro USA, Inc., et al.*, No. 2:25-cv-02132-SSV-MBN (E.D. La., Hon. Sarah S. Vance) (Am. Compl. paras. 2, 26). All of the Corporate Defendants herein and Michael Scioneaux were named as defendants to the 2025 Title VII Action. (Ex. A).

### B. The December 19, 2025 Mediation Agreement and Voluntary Resignation.

After Plaintiff's May 27, 2025 injury, he instituted a worker's compensation claim – which resulted in a successful mediation on December 19, 2025. That same day, a mediation agreement was signed by Plaintiff, his workers' compensation attorney Tara Melancon, and defense counsel Denise Ledet ("Mediation Agreement," found at Exhibit B). The Mediation Agreement involved a settlement payment of $50,000 to Plaintiff, and provided that Plaintiff "agree[d] to a voluntary resignation of his employment with the employer and to not seek re-employment with employer."

(Ex. B). Plaintiff's employment with the Corporate Defendants thus terminated by his own voluntary resignation, effective December 19, 2025.

**C. The January 7, 2026 Title VII Settlement.**

On January 7, 2026, Plaintiff and Defendants settled the 2025 Title VII Action by executing the January 7th Release. Under that agreement, Defendants paid Plaintiff valuable consideration in exchange for a release of all employment-related claims. (Ex. C). Specifically, Plaintiff agreed as follows:

> In exchange for, and in consideration of the payments, benefits, and other commitments described above, BROUSSARD knowingly and voluntarily releases and forever discharges, to the full extent permitted by law, WASTE PRO,[1] its subsidiaries, parent corporations, affiliates, divisions, predecessors, successors and assigns, joint employers, joint ventures, and the current and former employees, officers, directors, owners, insurers, and agents thereof (all of the above singularly and collectively referred to in this provision as the "Released Parties"), of and from any and all claims, known and unknown, accrued and unaccrued, asserted and unasserted, BROUSSARD has or may have against the Released Parties as of the date of execution of this Agreement that were or could have been brought in Case No. 2:25-cv-02132-SSV-MBN, arising out of, but not limited to, any of the following:

The January 7th Release then enumerates an extensive list of statutes and claims, including Title VII, the ADA, the Civil Rights Act of 1991, Sections 1981 through 1988 of Title 42, the Employee Retirement Income Security Act, "[a]ny Louisiana statutes pertaining to discrimination, including without limitation, disability discrimination," "[a]ny federal or state claims for negligence, conspiracy, indemnity, vicarious liability, or any other claims," and "[a]ny claim for costs, fees, or other expenses including attorneys' fees incurred in these matters." (Ex. C, p. 2, para. 5).

The January 7th Release further provides that Plaintiff affirmed he had "consulted with his counsel about the terms of this Agreement and enters into the Agreement voluntarily" (Ex. C, para.

---

[1] In light of the definition of the release's definition of "Waste Pro," as well as Plaintiff's own allegations herein, the January 7th Release applied to all Defendants herein, as set forth *supra*.

6(d)), and that he had "been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled" (Ex. C, para. 6(b)). The all-capitals acknowledgment paragraph recites that Plaintiff "FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST WASTE PRO AND ALL OF THE RELEASED PARTIES, AS OF THE DATE OF EXECUTION OF THIS AGREEMENT." (Ex. C at 5).

The January 7th Release is governed by Louisiana law. (Release para. 11).

**D. The Workers' Compensation Release and Dismissal.**

On January 15, 2026, Plaintiff signed the formal release agreement resolving his worker's compensation claim ("January 15th Release," found at Exhibit D). Significantly, the January 15th Release contains the following sworn statement by Plaintiff:

> Debric Broussard further warrants and decrees that he has resigned from his employment with [Defendants]. Debric Broussard acknowledges that his resignation was voluntary and of his own free will and that he was not forced to resign.

(Ex. D at 5). The January 15th Release was accompanied by a notarized affidavit in which Plaintiff attested that he had read and understood it and signed it "as his own free act and deed." (*Id.*).

On January 16, 2026, Workers' Compensation Judge Diane Lundeen approved the workers' compensation settlement pursuant to a joint petition, ordering that "there are one or more bona fide disputes existing between the parties, and that the proposed settlement is fair and equitable and does substantial justice to the parties" and "was entered into primarily to avoid further litigation." The Order further recites that Plaintiff "has been fully advised of his rights under the laws of Louisiana." (Ex. E, p. 3).

**E. The Second EEOC Charge and the Instant Suit.**

On January 15, 2026 – the same day Plaintiff signed the workers' compensation release – Plaintiff filed a second EEOC Charge against Defendants. (Am. Compl. para. 58). The EEOC issued a Right to Sue Letter on or about January 30, 2026. (Am. Compl. para. 8). Plaintiff filed the original Complaint in this action on April 13, 2026, and filed the operative Amended Complaint (Doc. 9) on August 24, 2026.

Among other claims, the Amended Complaint asserts allegations related to creation of a hostile workplace, isolation of Plaintiff from his coworkers, mishandling of Plaintiff's complaints to Human Resources, constructive discharge, and lost wages. (Am. Compl. paras. 4, 7, 30, 32, 36-48, 59, 63, 80, 110). Notably, the Amended Complaint itself references and relies upon the January 7th Release (Am. Compl. paras. 10-11, 49, 61, 72, 76), the workers' compensation mediation agreement (Am. Compl. paras. 46, 47), and the January 15th Release (Am. Compl. para. 73).

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court accepts well-pleaded factual allegations as true, it need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

In evaluating a Rule 12(b)(6) motion, the Court may consider not only the complaint itself but also (1) documents attached to the complaint;[2] (2) "documents attached to the motion to dismiss that are central to the claim and referenced by the complaint";[3] and (3) matters of which the court may take judicial notice.[4] Consideration of such documents does not convert the motion into one for summary judgment.[5]

An affirmative defense – such as the complaint being barred by settlement – may be resolved on a Rule 12(b)(6) motion where the defense is established on the face of the complaint. *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994); *Stamps v. Univ. of Tex. Sys.*, No. 24-50405, 2025 WL 720938, at *2–4 (5th Cir. Mar. 6, 2025) (affirming Rule 12(b)(6) dismissal where settlement agreement's release was "valid and enforceable" and encompassed plaintiff's claims)*; Lemieux v. American Optical Corp.*, No. 16-16508, 2017 WL 1164370 (E.D. La. Mar. 28, 2017) (Lemelle, J.) (granting Rule 12(b)(6) motion and dismissing claims with prejudice because release "effectively released" defendant from liability); *affirmed*, 712 F. App'x 409, 411–14 (5th Cir. 2018).

Because the January 7th Release is governed by Louisiana law, the Court applies Louisiana's rules of contract interpretation. Under Louisiana Civil Code articles 3071, a compromise "is a contract whereby the parties, through concessions made by one or more of them,

---

[2] *Lone Star Fund V (U.S)., L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (court may consider documents central to the complaint that are referenced therein).

[3] *Lone Star*, 594 F.3d at 383.

[4] *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994).

[5] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (In resolving a Rule 12(b)(6) motion, "courts *must* consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (emphasis added).

settle a dispute or an uncertainty concerning an obligation or other legal relationship." Further, a valid compromise "precludes the parties from bringing a subsequent action based upon the matter that was compromised." Louisiana Civil Code art. 3080.

## ARGUMENT

### A. The January 7th Release bars all claims Plaintiff possessed against Defendants as of January 7, 2026.

The operative language of the January 7th Release is sweeping and unambiguous. Plaintiff "knowingly and voluntarily release[d] and forever discharge[d]" the Released Parties "of and from any and all claims, known and unknown, accrued and unaccrued, asserted and unasserted, BROUSSARD has or may have against the Released Parties as of the date of execution of this Agreement that were or could have been brought in [the 2025 Title VII Action]." (Release para. 5). The January 7th Release covers claims "arising out of, but not limited to" an extensive enumerated list that includes Title VII, the ADA, and "[a]ny federal or state claims for negligence, conspiracy, indemnity, vicarious liability, or any other claims." (*Id).*

On the question of what claims "could have been brought in [the 2025 Title VII Action]" – the federal rules allow a litigant to join "as many claims as it has against an opposing party."[6] Thus, every claim asserted in the Amended Complaint that is predicated on conduct by Defendants occurring before January 7, 2026 could have been brought in the 2025 Title VII Action – meaning that all such claims fall squarely within the scope of the January 7th Release and must be dismissed.

Under Louisiana law, the January 7th Release is the law between the parties and must be enforced according to its terms. La. Civ. Code art. 3071; *see* La. Civ. Code art. 3080. There is no dispute that Plaintiff executed the January 7th Release knowingly and voluntarily – the January

[6] Rule 18 of the Federal Rules of Civil Procedure.

7th Release recites that Plaintiff "consulted with his counsel about the terms of this Agreement and enters into the Agreement voluntarily" (Ex. C, para. 6(d)), and the all-capitals acknowledgment paragraph confirms Plaintiff signed "FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION." (Ex. C at 5).

Crucially, Plaintiff does not allege fraud, duress, or any vitiating defect in the formation of the January 7th Release.

**B. Each category of pre-January 7, 2026 conduct alleged in the Amended Complaint is released and must be dismissed.**

A review of the Amended Complaint demonstrates that it is rife with claims related to pre-January 7, 2026 misconduct that have already been settled and must be dismissed.

***1. Retaliatory Treatment Beginning May 2025 (Am. Compl. para. 29).***

Paragraph 29 alleges that "[b]eginning on or about May 2025, and continuing thereafter," Plaintiff experienced "retaliatory treatment relating to his prior complaints of discrimination and his EEOC activity." This conduct predates the January 7, 2026 Release and constitutes a claim that "[was] or could have been brought" in the 2025 Title VII Action. It is released.

***2. Isolation Allegations (Am. Compl. paras. 30-32).***

Paragraphs 30 through 32 allege that on or about July 1, 2025, while on medical leave, Plaintiff contacted his supervisor concerning his hours and vacation pay, was told the Regional Manager had instructed employees not to communicate with Plaintiff, and understood this as an effort to "isolate him." These allegations describe conduct occurring in July 2025 – six months before the January 7th Release – and plainly "could have been brought" in the 2025 Title VII Action. They are released.

***3. Scioneaux's Discussions of EEOC Proceedings and Medical Information (Am. Compl. paras. 33-35).***

Paragraph 33 alleges that "[o]n or about June 2025," Plaintiff learned that Scioneaux was discussing Plaintiff's prior EEOC proceedings with other employees. Paragraph 34 alleges that Scioneaux discussed Plaintiff's "medical condition and/or work-related injury with employees and third parties." Paragraph 35 alleges that Scioneaux "interrogated" coworkers about participating in Plaintiff's case and made statements to third parties "concerning Plaintiff's character, work ethic, honesty, and/or medical condition." All of this conduct is alleged to have occurred during the pre-resignation period of 2025 – well before the January 7, 2026 Release. These claims "could have been brought" in the 2025 Title VII Action and are released.

***4. Complaints to Human Resources (Am. Compl. paras. 36-39).***

Paragraphs 36 through 39 allege that Plaintiff contacted Human Resources on or about October 17, 2025, complained about Scioneaux's conduct, and that Defendants "failed to take reasonable corrective action." These allegations describe events occurring in October 2025, months before the January 7, 2026 Release, and concern the same workplace grievance underlying the 2025 Title VII Action. These claims are released.

***5. Disparate Treatment of Scioneaux (Am. Compl. paras. 40-43).***

Paragraphs 40 through 43 allege that Waste Pro treated Scioneaux more favorably than Plaintiff and failed to discipline Scioneaux despite documented violations. These allegations relate to ongoing workplace conditions during Plaintiff's employment, which ended by voluntary resignation on December 19, 2025. The disparate-treatment allegations predate the January 7th Release and "could have been brought" in the 2025 Title VII Action. They are released.

***6. Constructive Discharge (Am. Compl. paras. 44-48).***

Paragraphs 44 through 48 allege that Plaintiff was "forced into signing a Settlement" on December 19, 2025, that he "protested" and signed the "voluntary resignation" under duress, and

that the cumulative retaliatory conduct "resulted in Plaintiff's constructive discharge." These allegations describe events culminating on December 19, 2025 – more than two weeks before the January 7, 2026 Release. The constructive discharge claim "could have been brought" in the 2025 Title VII Action and is released.

Likewise, Plaintiff seeks lost wages as an item of damages given his alleged constructive discharge. Like the constructive discharge claim, any claim for lost wages accrued on December 19, 2025, the last date of Plaintiff's employment – more than two weeks before the January 7, 2026 Release. The lost wages claim "could have been brought" in the 2025 Title VII Action and is released. Further, in the January 7th Release, Plaintiff explicitly affirmed that he had been paid all wages that he was owed – which estops Plaintiff from seeking lost wages herein. (Ex. C, para. 6(b)).

### C. Plaintiff's claim of duress does not rescue his constructive discharge and lost wage claims.

In a desperate attempt to save his constructive discharge and lost wage claims, Plaintiff frivolously claims that he signed the December 19, 2025 Mediation Agreement (in which he voluntary resigned) under duress. That argument fails as a matter of law and can be disposed of at this Rule 12(b)(6) juncture.

First, even if Plaintiff signed the December 19, 2025 Mediation Agreement under duress as he alleges – which Defendants deny – he released any right to recover damages related to such duress when he signed the January 7th Release, as set forth above. Again, Plaintiff does not allege fraud, duress, or any vitiating defect in the formation of the January 7th Release.

The duress argument fails for additional reasons. The December 19, 2025 Mediation Agreement provides that Plaintiff "agrees to a voluntary resignation of his employment with the

employer." (Ex. B at 1). Plaintiff signed this agreement in the presence of his own attorney, Tara Melancon, who also signed the agreement.

Further, the January 15th Release contains the sworn recital: "Debric Broussard further warrants and decrees that he has resigned from his employment with Waste Pro USA. Debric Broussard acknowledges that his resignation was voluntary and of his own free will and that he was not forced to resign." (Ex. D at 5). This statement was made under a notarized affidavit.

The Office of Worker's Compensation ("OWC") Joint Petition/Order, approved on January 16, 2026, found the settlement "fair and equitable" and that Plaintiff "has been fully advised of his rights under the laws of Louisiana." (Ex. E, p. 3).

Under Louisiana law, the OWC's approval of Plaintiff's worker's compensation settlement forecloses Plaintiff's claim of duress. *See* La. R.S. 23:1272 (after OWC approval, a settlement "shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party."). Plaintiff has not alleged fraud or misrepresentation here – thus, he cannot vitiate the worker's compensation settlement, by which he agreed to voluntarily resign as of December 19, 2025.

Further, to maintain a claim of constructive discharge, a plaintiff must allege working conditions "so intolerable that a *reasonable person* in the employee's position would have felt compelled to resign."*Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) (emphasis added). Plaintiff's own allegation that he signed a negotiated workers' compensation settlement – mediated with counsel present – in which he agreed to resign undermines the objective intolerability standard. A negotiated resignation at a mediation, as a matter of law, is not a constructive discharge.

For all of these reasons, none of Plaintiff's claims are saved by his allegation that the December 19, 2025 Mediation Agreement was signed under duress – a conclusion that this Court may reach as a matter of law at this Rule 12(b)(6) juncture.

**D. Plaintiff's anticipated administrative-exhaustion carve-out argument fails as a matter of law.**

Plaintiff's Amended Complaint anticipates Defendants' release defense and attempts to preempt it by arguing that his current claims "were not released" because they "could not have been brought" in the 2025 Title VII Action, since he had not exhausted administrative remedies as to his current allegations at the time the 2025 Title VII Action settled. (Am. Compl. paras. 10-11, 61-77). This argument also fails for multiple reasons.

First, the January 7th Release covers claims that "were or could have been brought" in the 2025 Title VII Action. The Fifth Circuit has made it clear that district courts may properly exercise jurisdiction over retaliation claims "growing out of," but not raised in a prior EEOC charge. *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) (district court properly exercised jurisdiction; "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge"). All of Plaintiff's claims herein relate to alleged retaliation "growing out of" his first EEOC charge. (Am. Compl., paras. 1, 3, 5, 7, 10). Thus, Plaintiff's pre-January 7 retaliation claims "could have been brought" in the 2025 Title VII Action, and the January 7th Release bars them.

Second, even if the Fifth Circuit's opinion in *Gupta* did not control here (it does), the Court should still reject Plaintiff's attempted carve-out argument. Permitting a plaintiff to carve claims out of a general release through his own failure to exhaust administrative remedies would reward a lack of diligence and is fundamentally incompatible with the strong federal policy favoring the enforcement of settlement agreements and releases. *See Williams v. Phillips Petroleum Co.*, 23

F.3d 930, 934 (5th Cir. 1994) (recognizing the strong federal policy favoring enforcement of settlements). The purpose of a general release is finality. If a plaintiff could undermine that finality simply by declining to exhaust remedies before settling, no employer could rely on a broadly worded release – an outcome that would frustrate the strong policy in favor of the resolution of disputes through compromise and settlement. *Id.* For these policy reasons, Plaintiff's carve-out argument should be rejected as a matter of law.

Finally, Plaintiff is estopped from taking a position inconsistent with the terms he agreed to in the January 7th Release, in which Plaintiff expressly agreed that the parties "wish to resolve and settle their differences without resort to further litigation." (Ex. C at 1). In that release, Plaintiff also affirmed that he was not aware of any injuries "that have not previously been disclosed to WASTE PRO." (Ex. C, para. 6(c)). Plaintiff gave no notice, at the time of the January 7th Release or in the release itself, of any intent to carve out claims for which he had not yet exhausted administrative remedies. Having accepted valuable consideration for a comprehensive release, Plaintiff cannot now excise from that release the very claims it was designed to resolve.

**E. The January 7th Release applied to all Defendants herein.**

Further, the January 7th Release applied to all Defendants herein. The release defines the "Released Parties" as "WASTE PRO, its subsidiaries, parent corporations, affiliates, divisions, predecessors, successors and assigns, joint employers, joint ventures, and the current and former employees, officers, directors, owners, insurers, and agents thereof." (Ex. C, para. 5). The release further defines "Waste Pro" as "Waste Pro of Louisiana, Inc. and any of its related or affiliated entities, parent companies, employees, former employees, owners, and/or shareholders." (Ex. C, p. 1). Such broad language encompasses all Defendants herein – which the Court may accept as true for purposes of this motion given the allegations of the Amended Complaint.

The Amended Complaint alleges that all three Corporate Defendants constitute one entity known as "Waste Pro," and that this entity "Waste Pro" was Plaintiff's employer (Am. Compl., pp. 1 (opening paragraph); 2-3 (para. 16)). Further, the Amended Complaint alleges that the Individual Defendants were employees "of co-Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and/or Total Waste Solutions, L.L.C." (Am. Compl., p. 3 (paras. 20-21)).

Thus, based on Plaintiff's allegations, the Court may accept as true that Waste Pro USA, Inc. and Total Waste Solutions, LLC were "subsidiaries, parent corporations, [or] affiliates" of Waste Pro of Louisiana, Inc. The Court may likewise accept as true that that the Individual Defendants were employees "of co-Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and/or Total Waste Solutions, L.L.C." Thus, for purposes of this motion, all Defendants herein should be considered Released Parties under the January 7th Release. Plaintiff's pre-January 7th claims against all Defendants are barred.

**F. Rule 12(b)(6) is the proper vehicle to enforce the parties' prior settlements.**

Finally, this Court need not convert this Motion to one for summary judgment in order to consider the January 7th Release and the related workers' compensation documents. The Amended Complaint repeatedly references and relies upon the January 7th Release (Am. Compl. paras. 10-11, 49, 61, 72, 76), the workers' compensation settlement and proceedings (Am. Compl. paras. 44-48, 73), and even attaches or offers to file the January 7th Release under seal as "Exhibit A" (Am. Compl. para. 72). These documents are therefore "referred to in the plaintiff's complaint and are central to [his] claim," and may be considered on a Rule 12(b)(6) motion without converting to summary judgment. *Collins*, 224 F.3d at 498-99; *Lone Star Fund V*, 594 F.3d at 387; *Causey*, 394 F.3d at 288.

Moreover, the OWC Order – entered by Workers' Compensation Judge Diane Lundeen on January 16, 2026 – is a matter of public record of which this Court may take judicial notice. *See Norris*, 500 F.3d at 461 n.9.

The release defense is therefore apparent on the face of the pleadings and incorporated documents, and may properly be resolved at the Rule 12(b)(6) stage. *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994); *Stamps v. Univ. of Tex. Sys.*, No. 24-50405, 2025 WL 720938, at *2–4 (5th Cir. Mar. 6, 2025); *Lemieux v. CSR Ltd.*, No. 16-16508, 2017 WL 1164370 (E.D. La. Mar. 28, 2017) (Lemelle, J.), *affirmed*, 712 F. App'x 409, 411–14 (5th Cir. 2018).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant this Motion and dismiss with prejudice all claims in the Amended Complaint that are predicated on conduct occurring before January 7, 2026, including but not limited to the Amended Complaint's allegations related to creation of a hostile workplace, isolation of Plaintiff from his coworkers, mishandling of Plaintiff's complaints to Human Resources, constructive discharge, and lost wages.

**[signatures contained on the following page]**

Respectfully submitted,

LISKOW & LEWIS, APLC

By: /s/ Michael C. Mims
Thomas J. McGoey, II (Bar #18330)
tjmcgoey@liskow.com
Michael C. Mims (#33991)
mmims@liskow.com
Ellen D. George (#39891)
egeorge@liskow.com
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 581-7979

**Counsel for Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and Total Waste Solutions, LLC**

LAW OFFICES OF MICHAEL L. MULLIN

By: /s/ Michael L. Mullin
Michael L. Mullin (#9819)
mike@mullinlaw.net
Betty F. Mullin (#9818)
betty@mullinlaw.net
9533 Robin Ln
River Ridge, LA 70123
Phone: (504) 813-6625
Fax: (504) 324-0303

**Counsel for Defendants Michael Scioneaux and Samuel Edwards**

# CERTIFICATION

I hereby certify that on this 8th day of September 2026, a copy of the foregoing pleading was served on all parties of record via the Court's ECF system and/or electronically via their email address designated for service.

/s/ Michael C. Mims