UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEBRIC BROUSSARD<br><br>Plaintiffs,<br><br>v.<br><br>WASTE PRO USA, INC; WASTE PRO OF LOUISIANA, INC.; TOTAL WASTE SOLUTIONS, LLC; MICHAEL SCIONEAUX; JOHN CLEMON; DOE DEFENDANTS 1-10;<br><br>Defendants. | ) | Case No. |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff Debric Broussard who brings this suit as a result of the harassment perpetuated by his employer, Waste Pro, and certain employees thereof.

## INTRODUCTION

1. Debric Broussard is a truck driver for Waste Pro who has been subjected to repeated and constant racial and disability discrimination.

2. The racial discrimination is primarily perpetuated by a supervisor who participated in calling him a "n*gger" and made disparaging comments about racial minorities, but continues to be protected by Waste Pro.

3. On one occasion when Mr. Broussard was complaining that only the Black employees were required to clock in and out of work, a coworker handed him a physical "White Privilege Card" and told him "Since you're jealous that the white man don't have to clock in" and further that "You got white privilege now, if you don't want it, give it back."



EXHIBIT A

4. Mr. Broussard also suffers from Post-Traumatic Stress Disorder and requested an accommodation that he be able to ride solo in his truck cab, which is how his truck is intended to be operated.

5. After making the request, Mr. Broussard was mocked by his supervisor and coworkers and has been assigned to transport trainees in his truck cab an inordinate number of times, triggering his PTSD.

6. For this reasons, Mr. Broussard brings this case under Title VII of the Civil Rights Act, the Americans with Disabilities Act, and other state and federal causes of action listed herein.

## PARTIES

*Plaintiffs*

7. Plaintiff Debric Broussard is of the full age of majority and is domiciled in Terrebonne Parish, Louisiana. He brings this lawsuit to enforce his rights related to the harassment he suffered while employed by Defendants.

*Defendants*

8. Defendant Waste Pro USA, Inc. is a Florida-based company which operates throughout the State of Louisiana. Waste Pro USA, Inc.'s Principal Business Office is located at 2101 W. State Road 434, 3rd Floor, Longwood, FL 32779. Its Registered Office in Louisiana is located at 3867 Plaza Tower Drive, Baton Rouge, LA 70816 and its Principal Business Establishment in Louisiana at 920 Kenner Avenue, Kenner, LA 70062.

9. Defendant Waste Pro of Louisiana, Inc. is a company which operates throughout the State of Louisiana. Its Domicile Address is 920 Kenner Avenue, Kenner, LA 70062 and its Principal Business Office at 2101 W. State Road 434, 3rd Floor, Longwood, FL 32779.

10. Defendant Total Waste Solutions, L.L.C. is a Louisiana-based company located at 209 Blackwater Court, Gibson, LA 70356.

11. Defendant Michael Scioneaux is a person of the full age of majority who was, at all times relevant to this Complaint, an employee of co-Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and/or Total Waste Solutions, L.L.C.

12. Defendant John Clemon is a person of the full age of majority who was, at all times relevant to this Complaint, an employee of co-Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and/or Total Waste Solutions, L.L.C.

13. Doe Defendants 1-10 are individuals or entities not currently known to Plaintiff who may have participated in, allowed, or otherwise perpetuated the damages and other claims alleged herein.

## VENUE AND JURISDICTION

14. Venue is proper pursuant to 28 U.S.C. § 1391 as the events and omissions giving rise to the claims herein occurred in the Eastern District of Louisiana and the majority of Defendants are domiciled in the Eastern District of Louisiana. All corporate Defendants are subject to this Court's jurisdiction as each has sufficient contacts within the Eastern District of Louisiana.

15. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's claims arising from state law in accordance with 28 U.S.C. § 1367. This Court also has diversity jurisdiction over the claims herein as at least one Defendant is domiciled in a separate state.

## FACTUAL ALLEGATIONS

16. Plaintiff Debric Broussard has been an employee of Waste Pro d/b/a Total Waste Solutions, LLC ("Waste Pro")[1] since May 16, 2023, mostly as a truck driver based out of the Golden Meadow office.

17. Defendants have subjected Mr. Broussard to repeated and pervasive discrimination both because he is Black and because of his diagnosed disability, Post-Traumatic Stress Disorder.

18. Mr. Broussard's primary harasser was, at all times relevant to this Complaint, his direct supervisor, Defendant Michael Scioneaux.

19. Defendant Scioneaux subjected Mr. Broussard to daily harassment based on his race.

20. Defendant Scioneaux would make derogatory remarks about Black people and other minorities and repeated targeted Mr. Broussard, specifically, with racially charged comments such as "I got that boy good and trained."

21. Defendant Scioneaux explicitly stated that he "hates Black people" and would make derogatory comments about famous Black individuals around Mr. Broussard and other Waste Pro employees.

22. On at least one occasion, Defendant Scioneaux called Mr. Broussard a "n*gger" and/or encouraged others in the use of the word to describe Mr. Broussard.

23. On March 10, 2025, Mr. Broussard received a pocket dial from a coworker. When he answered, he overheard several coworkers, including Mr. Scioneaux, talking about him and

[1] Upon information and belief, Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, LLC, and Total Waste Solutions, LLC each operate in conjunction as Plaintiff's employer. All references to "Waste Pro" herein refer to all three entities.

repeatedly using the n-word, with such statements as: "Yeah, f*uck that n*gger," "I was waiting for you to knock that n*gger out," and "Don't listen to that n*gger."

24. Some individuals involved in that incident were terminated, but Defendant Scioneaux remains employed by Waste Pro.

25. Although Waste Pro told Mr. Broussard that Defendant Scioneaux would be demoted, Defendant Scioneaux continues to operate in a supervisory role and signs his work correspondence with "Operations Manager."

26. Defendant Scioneaux also insulted other racial minorities, such as referring to a Cuban coworker as a "wet back" and telling him to float back to Cuba on an ice chest.

27. Waste Pro also instituted and/or ratified racial discrimination through its policies and procedures as instituted at the Golden Meadow office.

28. Specifically, Waste Pro's Black employees are required to clock in and out of work while the white employees are exempt from the practice.

29. When Mr. Broussard pushed back against this policy and attempted to be treated like his Caucasian co-workers, Defendant Scioneaux reported him.

30. Waste Pro's Black employees are subjected to heightened scrutiny and potential punishment as a result of the clock system from which white employees are exempt.

31. Waste Pro's Black employees routinely are required to work more hours than the white employees, but receive the same compensation as the white employees.

32. Mr. Broussard was disturbed about this system and complained about it to Defendant John Clemon, a white coworker.

33. In response, Defendant Clemon handed Mr. Broussard a "White Privilege Card" (below) and told him "Since you're jealous that the white man don't have to clock in" and further that "You got white privilege now, if you don't want it, give it back."

34. This is the front and back of the card:




35. When Mr. Broussard made a formal complaint about the harassment, specifically regarding being forced to work with Defendant Scioneaux, he was given an ultimatum: continue reporting to work for his harasser or be terminated.

36. Waste Pro tried to pressure Mr. Broussard into accepting a less desirable positions in another department rather than address the harassment concerns.

37. According to a coworker, a manager told Defendant Scioneaux and others that Mr. Broussard would never be promoted because of "what he did" to Defendant Scioneaux, i.e. reporting the harassment.

38. Defendant Scioneaux continues to harass Mr. Broussard as of the date of this Complaint.

39. At least one other coworker who complained about racial discrimination is being similarly punished and harassed.

40. Defendants also discriminated against Mr. Broussard as a result of his disability.

41. Mr. Broussard has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") due to trauma from his childhood.

42. Mr. Broussard provided documentation of his PTSD to his employer and requested an accommodation to not have other employees ride with him in the truck cab as that experience can induce panic attacks.

43. A major attraction of Mr. Broussard's position is that the truck he drives is intended for one person, so he could safely and efficiently perform the work without triggering his PTSD.

44. At some point, Mr. Broussard was asked to have another individual ride along in his truck cab.

45. Mr. Broussard requested an accommodation that he be allowed to ride solo, as he had done without incident, and provided documentation to his employer.

46. Mr. Broussard's supervisor reacted to the request by laughing at him and making a joke about how he should seek counseling.

47. Mr. Broussard's supervisor than informed his coworkers of the diagnosis and the coworkers began harassing him and referring to him as "crazy man."

48. Since the request for accommodation, Waste Pro has required Mr. Broussard to train all new drivers, which requires that they ride along in the cab in violation of his request for an accommodation.

49. Mr. Broussard has been forced to train approximately five or six new drivers in just a period of months following the request.

50. This experience has caused Mr. Broussard severe mental anguish.

51. Mr. Broussard is currently on medical leave due to an injury sustain on the job.

52. Mr. Broussard has never received a negative performance review or complaint during his Waste Pro employment.

## CLAIMS FOR RELIEF

### *Count 1* – Title VII of the Civil Rights Act of 1964

*Against All Defendants*

53. Plaintiff realleges and incorporates each and every foregoing paragraph.

54. Title VII of the Civil Rights Act bars racial discrimination in the workplace.[2]

55. It is unlawful for an employer "to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[3]

56. Here, Defendants violated Title VII in several ways, including through the perpetuation of a hostile work environment, specific acts of discrimination (including the use of the word "n*gger"), requiring Plaintiff to work with his harasser, pressuring Plaintiff to accept an

---

[2] Civil Rights Act of 1964, § 701 *et seq.*, as amended, 42 U.S.C.A. § 2000e *et seq.*

[3] 42 U.S. Code § 2000e–2; *see also Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488 (M.D.La. 2003).

undesirable transfer after reporting harassment, applying policies and procedures differently to employees based on their race, and other instances of discrimination described in this Complaint.

57. Defendants acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

58. Defendants are liable for the acts and/or omissions of their agents and employees. Defendants, either directly, or by and through their agents, directly and proximately caused Plaintiff's severe injuries, damages, and losses.

59. As a result of Defendants' misconduct, Plaintiff has suffered damages, including but not limited to substantial non-monetary damages.

***Count 2* – Americans with Disabilities Act and Rehabilitation Act**

*Against Corporate Defendants*

60. Plaintiff realleges and incorporates each and every foregoing paragraph.

61. The Americans with Disabilities Act provides, in part, that provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[4]

62. A disability under the ADAA is "an impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having a disability."[5]

63. When engaging with an employee's disability, an employer is obligated to engage in an interactive process with the employee that identifies the precise limitations resulting from the

[4] Title II, 42 U.S.C. § 12132.

[5] 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g).

disability and potential reasonable accommodations that could overcome those limitations.[6] This interactive process is mandatory.[7]

64. Section 504 of the Rehabilitation Act of 1973 similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[8]

65. Such claims can take the form of either a "conscious discrimination" or a "failure to accommodate" theory.[9]

66. Here, Plaintiff suffers from Post-Traumatic Stress Disorder which is triggered when another person rides in his truck cab.

67. Plaintiff sought out his particular job and position specifically because it is intended to be performed alone without anyone else riding in his cab.

68. When asked to train another individual by bringing them in his truck cab, he requested an accommodation and provided documentation of his PTSD.

69. Defendants did not engage in any interactive process of seeking an accommodation.

70. Defendants not only ignored the request for an accommodation, they verbally harassed him for his diagnosis, disclosed his diagnosis to coworkers, and intentionally assigned tasks which violated his request.

71. The adverse actions taken against Plaintiff were discriminatory, and were motivated by his disability status and animus.

---

[6] 29 C.F.R. § 1630.2(o)(3).
[7] *Stokes v. Nielsen*, 751 Fed. Appx. 451, 455 (5th Cir. Oct. 8, 2018).
[8] 29 U.S.C. § 794.
[9] *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1033 (5th Cir. 2022).

72. Defendants are liable for the acts and/or omissions of their agents and employees. Defendants, either directly, or by and through their agents, directly and proximately caused Plaintiff's severe injuries, damages, and losses.

73. Defendants also violated the ADA through their inadequate hiring, training, and supervision policies and procedures.

74. As a result of Defendants' misconduct, Plaintiff has suffered damages, including but not limited to substantial non-monetary damages.

**_Count 3_ – Louisiana Human Rights Act (La. R.S. § 51:2231, _et seq_)**

*Against Corporate Defendants*

75. Plaintiff realleges and incorporates each and every foregoing paragraph.

76. The Louisiana Human Rights Act (LHRA)'s disability discrimination provisions are modelled after the ADA and courts "look[] to the ADA" when "interpreting the scope of the LHRA."[10]

77. The LHRA similarly prohibits racial discrimination.[11]

78. The LHRA similar prohibits conspiracies to violate any such rights.[12]

79. Therefore, Defendants are liable under the same theories as described herein under Count 1.

**_Count 4_ – Federal and State Law Conspiracy**

*Against Employee Defendants*

80. Plaintiffs reallege and incorporate each and every foregoing paragraph.

---

[10] *Cougle v. Berkshire Life Ins. Co. of Am.*, 429 F. Supp. 3d 208, 216 (E.D. La. 2019).
[11] La. R.S. 51:2231.
[12] La. R.S. 51:2256.

81. A § 1983 conspiracy involves "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[13]

82. Under Louisiana law, "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."[14]

83. Here, Defendants acted together to perpetuate discrimination against Plaintiff when they failed to take any meaningful action to remedy the situation following Plaintiff's complaints. Instead, Defendants ratified the acts of racial and disability discrimination through the dismissing his concerns and retaliating against him on the basis of his race and disability.

### *Count 5* – Negligence and Negligent Infliction of Emotional Distress

*Against All Defendants*

84. Plaintiff realleges and incorporates each and every foregoing paragraph.

85. To prove negligence, a plaintiff must show that (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached.[15]

86. Defendants owed a duty of care to Plaintiff through their positions his coworkers, supervisors, and employers.

---

[13] *Pfannstiel v. Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).
[14] La. Civ. Code art. 2324.
[15] *Stroik v. Ponseti*, 699 So.2d 1072, 1078 (La. 1997).

87. Defendants breached that duty of care, causing harm to Plaintiff, when they participated in and/or failed to prevent or report acts of racial and disability discrimination.

88. Corporate Defendants and any Defendants acting as supervisors also breached that duty of care in the insufficient hiring, training, and supervision of employees which allowed the harassment to occur.

### *Count 6* – Vicarious Liability

*Against Corporate and Supervisory Defendants*

89. Plaintiff realleges and incorporates each and every foregoing paragraph.

90. Corporate Defendants and any Defendants acting as supervisors are liable to Plaintiffs for the constitutional violations as well as the negligent and intentional acts and omissions of those under their direction and control pursuant to Louisiana Civil Code article 2320 and the doctrine of *respondeat superior*.[16]

### *Count 7* – Indemnity

*Against Corporate Defendants*

91. Plaintiffs reallege and incorporate each and every foregoing paragraph.

92. Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for while employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

93. All Corporate Defendants and certain Defedants acting in a supervisory role are responsible for the hiring, training, and discipline of its employees.

[16] See, e.g., *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023); *Upton v. Vicknair*, 21-cv-407, R. Doc. 157 (E.D. La. Feb. 20, 2024) (granting plaintiff's motion for summary judgment on respondeat superior liability when defendant's employee had opportunity to commit torts due to their job, even though employer condemned conduct and fired employee).

94. While committing the misconduct alleged herein, Employee Defendants employed by Corporate Defendants, were present on Corporate Defendants property (including vehicles), and were performing work within the scope of their employment.

95. Corporate Defendants are therefore obligated by Louisiana statute to pay any judgment entered against its employees.

**RELIEF REQUESTED**

96. Wherefore Plaintiff requests judgment to be entered against Defendants and that the Court grant the following:

a. Declaratory relief;

b. Judgment against Defendants for Plaintiff's asserted causes of action;

c. Award of compensatory damages;

d. Award of special and punitive damages;

e. Award of costs and attorneys fees;

f. Order such other and further relief at law or in equity to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *David Lanser*

William Most (La. Bar No. 36914)
David Lanser, (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Telephone: (504) 509-5023
Telephone: (504) 533-4521
Fax: (504) 414-6400
williammost@gmail.com
david.lanser@gmail.com