Michael C. Mims
mmims@liskow.com
D: 504.556.4143

July 28, 2026

**VIA PDF EMAIL**
Jonathan Rhodes
The Rhodes Law Firm, LLC
jonathan@therhodeslawfirm.com

Re: *Debric Broussard v. Waste Pro USA, Inc., et al.*, No. 26-00760, United States District Court for the Eastern District of Louisiana

Dear Jonathan:

On behalf of my clients Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and Total Waste Solutions, LLC (collectively, "Defendants"), I respectfully submit this letter pursuant to Rule 11 of the Federal Rules of Civil Procedure to provide formal notice that the Complaint makes factual contentions rebutted by the clear record and asserts claims that are not warranted by law. By this letter, we ask that you either dismiss the Complaint in its entirety, or if you believe it is possible to amend the Complaint in a manner that cures the defects outlined below, that you file an amended complaint that comports with the demands of this letter. If you fail to take such action by Tuesday, August 18, 2026, we will file a motion seeking sanctions against your client Debric Broussard ("Plaintiff") and your law firm. In compliance with Rule 11(c)(2), a copy of that motion is attached hereto.

**<u>Background</u>**

On May 27, 2025, Plaintiff allegedly sustained a work-related injury. Plaintiff never returned to work after the May 27, 2025 injury.[1] Soon after the injury, Plaintiff filed a worker's compensation claim ("Compensation Action").

On October 14, 2025 – after Plaintiff had filed a charge with the EEOC and received a right to sue letter – he filed suit against Defendants in the Eastern District of Louisiana, alleging workplace misconduct under Title VII of the Civil Rights Act of 1964. *See* Docket No. 2:25-cv-02132 (Honorable Sarah Vance presiding) ("2025 Title VII Action").

---

[1] In verbal conversations, you confirmed that Plaintiff never worked for any of the Defendants after May 27, 2025.



EXHIBIT A

On December 19, 2025, Plaintiff participated in a successful mediation of the Compensation Action, resulting in a mediation agreement executed on that same date ("Mediation Agreement"). The Mediation Agreement was signed by Plaintiff, his attorney Tara Melancon, and counsel for Defendants, Denise Ledet. Among other things, the Mediation Agreement called for a settlement payment to Plaintiff, and provided that Plaintiff "agrees to a voluntary resignation of his employment with the employer and to not seek reemployment with employer."

On January 7, 2026, Plaintiff and Defendant settled the 2025 Title VII Action by executing a release agreement ("January 7th Release"). Among other things, the January 7th Release called for a settlement payment to Plaintiff, and provided a broad release whereby Plaintiff released all asserted or unasserted work-related claims that Plaintiff possessed as to Defendants.[2] Specifically, Plaintiff released:

> any and all claims, known and unknown, accrued and unaccrued, asserted and unasserted, [Plaintiff] has or may have against the Released Parties as of the date of execution of this Agreement that were or could have been brought in [the 2025 Title VII Action], arising out of, but not limited to, any of the following:
>
> - Title VII of the Civil Rights Act of 1964, as amended;
> - The Civil Rights Act of 1991;
> - Sections 1981 through 1988 of Title 42 of the United States Code, as amended;
> - The Employee Retirement Income Security Act of 1974, as amended;
> - The Immigration Reform and Control Act, as amended;
> - The Equal Pay Act, as amended;
> - The Family and Medical Leave Act, as amended;
> - Older Workers Benefit Protection Act
> - The Americans with Disabilities Act, as amended;

[2] The parties to the January 7th Release were Plaintiff and "Waste Pro," defined as Waste Pro of Louisiana, Inc. and any of its related or affiliated entities, parent companies, employees, former employees, owners, and/or shareholders. Further, the "Released Parties" were defined to be Waste Pro and "its subsidiaries, parent corporations, affiliates, divisions, predecessors, successors and assigns, joint employers, joint ventures, and the current and former employees, officers, directors, owners, insurers, and agents thereof." The release applied to all Defendants herein, and you have not contended otherwise in our discussions on the scope of the January 7th Release.

- The Workers Adjustment and Retraining Notification Act, as amended;
- The Occupational Safety and Health Act, as amended;
- The Sarbanes-Oxley Act of 2002;
- Any Louisiana statutes pertaining to discrimination, including without limitation, disability discrimination.
- Any federal or state claims for negligence, conspiracy, indemnity, vicarious liability, or any other claims.
- Any claim for costs, fees, or other expenses including attorneys' fees incurred in these matters.

The January 7th Release also required Plaintiff to voluntarily dismiss the 2025 Title VII Action with prejudice. Plaintiff never did so, but on February 9, 2026, the Court dismissed the suit without prejudice in light of Plaintiff's failure to provide proof that he had served Defendants.

On January 15, 2026, Plaintiff signed a release agreement in connection with the Compensation Action ("January 15th Release").

That same day – and just 8 days after signing the January 7th Release related to the 2025 Title VII Action – Plaintiff filed a Charge of Discrimination with the EEOC, raising additional Title VII allegations against Defendants (despite the fact that Plaintiff never returned to work after his May 2025 injury and formally resigned in December 2025). The EEOC issued a Right to Sue Letter to Plaintiff on or around January 30, 2026.

On April 13, 2026, Plaintiff filed the Complaint in the Eastern District of Louisiana, again alleging workplace misconduct by Defendants under Title VII of the Civil Rights Act of 1964. *See* Docket No. 2:26-cv-00760 (Honorable Carl J. Barbier presiding).

In the ensuing weeks and months, I reached out to you on several occasions to discuss Defendants' position that all or a portion of the Complaint was contradicted by the factual record and/or barred by the January 7th Release. By email dated June 22, 2026, I provided you with copies of the Mediation Agreement, January 7th Release, and January 15th Release.

In addition to our several e-mail exchanges, we spoke on the phone at length on June 15, June 29, and July 13. On our most recent call, you agreed that you would not require Defendants to file responsive pleadings while we continued to discuss how to resolve Defendants' contention that all or some of the Complaint's

allegations lacked merit. In turn, I agreed to send you a letter summarizing Defendants' position and our proposal for moving forward.

**Meritless Allegations in the Complaint**

The Complaint should be withdrawn in whole or in part because it is premised on assertions of fact that are rebutted by the clear record and it raises claims that are barred by the broad language of the January 7th Release.

The Complaint alleges that Defendants constructively discharged Plaintiff through their creation of a hostile workplace.[3] That is plainly false, as the Mediation Agreement establishes that, on December 19, 2025, Plaintiff agreed to voluntarily resign as part of an amicable resolution of the Compensation Claim.

In multiple places, the Complaint makes factual assertions that lack any merit as they would only be possible if Plaintiff were working for Defendants after May 2025, which he was not – specifically the following allegations:

- "Plaintiff remained employed by Defendant Employer following the [January 7, 2026] settlement."[4]
- "Following the [January 7, 2026] settlement…Defendants' retaliatory conduct created a work environment that was objectively and subjectively hostile, abusive, and intolerable."[5]

Throughout the Complaint, Plaintiff alleges misconduct that, either by Plaintiff's own admission or by its nature, could only have occurred prior to January 7, 2026. As stated above, all work-related claims arising prior to January 7, 2026 have been released – thus, the following allegations and claims are barred by the January 7th Release:

- Alleging that Defendants failed to accommodate Plaintiff's need to ride solo in his truck.[6]
- Alleging that Defendants engaged in retaliation tactics prior to January 7, 2026.[7]

---

[3] Complaint, paras. 1, 35, 37, 78, 92, 100, 118, and Prayer for Relief.

[4] Complaint, para. 21.

[5] Complaint, para. 32.

[6] Complaint, paras. 18, 33, 54, 55, 95, 96, 99.

[7] Complaint, paras. 1, 22, 33, 87.

- Alleging that Defendants failed to terminate an employee who created a dangerous workplace for Plaintiff.[8]
- Alleging that Defendants failed to remedy October 2025 workplace conditions.[9]
- Alleging that Defendants' misconduct delayed Plaintiff's medical recovery while on FMLA leave.[10]
- Demanding lost wage damages, even though Plaintiff was not owed wages after voluntarily resigning in December 2025.[11]

Further, the Complaint asserts various factual allegations without specifying whether they occurred before or after January 7, 2026. To the extent the conduct occurred prior to that date, these claims are barred by the January 7th Release.[12]

On our July 13, 2026 phone call, you raised two justifications for the Complaint's defects outlined above, both of which lack any merit.

First, you contended that Plaintiff signed the Mediation Agreement under duress. That argument fails given that Plaintiff was represented by counsel at the mediation, who also signed the Mediation Agreement. To the extent Plaintiff believes he received bad legal advice in connection with his signing the Mediation Agreement, that does not constitute duress and does not relieve him of the obligations contained in the Mediation Agreement.

Second, you contended that various claims in the Complaint are not barred by the January 7th Release, even though they occurred prior to January 7, 2026. You explained that the January 7th Release discharged only those claims that "were or could have been brought in [the 2025 Title VII Action]." You claimed that the Complaint's allegations could not have been asserted in the 2025 Title VII Action, because they were not raised in the 2025 EEOC papers, and thus Plaintiff never obtained authorization to raise those allegations in the 2025 Title VII Action.

We do not concede that Plaintiff could not have raised the Complaint's allegations in the 2025 Title VII Action. In any event, this argument fails as it would allow

---

[8] Complaint, para. 90.

[9] Complaint, para. 34.

[10] Complaint, paras. 36, 65.

[11] Complaint, paras. 3, 44, 66, 118, and Prayer for Relief.

[12] Complaint, paras. 25, 26, 28, 30.

Plaintiff to carve out claims from a release through his own failure to exhaust administrative remedies – i.e., to reward him for his own lack of diligence. Such a result is not compatible with federal law. Further, this argument is barred by basic estoppel principles, given that Plaintiff agreed in the January 7th Release that "the parties wish to resolve and settle their differences without resort to further litigation," and Plaintiff never gave Defendants notice of his intention to carve out allegations not raised in the 2025 EEOC proceedings. This argument is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law,"[13] and it does not relieve Plaintiff of the obligations contained in the January 7th Release.

**Demand**

Because the Complaint is premised in whole or in part by allegations lacking any merit whatsoever, as outlined above, we hereby ask that you dismiss the Complaint in its entirety.

If you believe it is possible to amend the Complaint in a manner that cures the defects outlined above, any such amendment must, at a minimum, do the following:

- Remove those factual assertions and claims that are plainly contradicted by the record, specifically those identified above and found in the Complaint at paras. 1, 21, 32, 35, 37, 78, 92, 100, 118, and Prayer for Relief.
- Remove those factual assertions and claims that are barred by the January 7th Release as they relate to conduct that plainly occurred prior to January 7, 2026, specifically those identified above and found in the Complaint at paras. 1, 18, 22, 33, 34, 36, 54, 55, 65, 87, 90, 95, 96, 99.
- Remove all allegations of lost wages, as found in the Complaint at paras. 3, 44, 66, 118, and Prayer for Relief.
- To the extent you allege claims premised on misconduct occurring after January 7, 2026, revise your allegations to specify what misconduct occurred after January 7, 2026 and specify that you are only seeking damages related to misconduct that occurred after January 7, 2026.

If you fail to cure the defects in the Complaint in the manner set forth above by Tuesday, August 18, 2026, we will file a motion seeking sanctions against Plaintiff and your law firm.

Nothing contained in this letter waives any rights to which Defendants are entitled by law.

---

[13] Rule 11(b)(2).

If you wish to discuss this letter, please give me a call.

Sincerely,

Michael C. Mims

**Counsel for Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and Total Waste Solutions, LLC**

**DRAFT DATED JULY 28, 2026**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DEBRIC BROUSSARD,<br><br>Plaintiff,<br><br>vs.<br><br>WASTE PRO USA, INC; WASTE PRO OF LOUISIANA, INC.; TOTAL WASTE SOLUTIONS, LLC; MICHAEL SCIONEAUX; SAMUEL EDWARDS; DOE DEFENDANTS 1- 10,<br><br>Defendants. | Civil Action No. 2:26-cv-00760<br><br>Judge Carl J. Barbier<br><br>Magistrate Judge Donna Phillips Currault |

**MOTION FOR SANCTIONS PURSUANT TO RULE 11**

Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and Total Waste Solutions, LLC (collectively, "Defendants") respectfully submit this motion pursuant to Rule 11 of the Federal Rules of Civil Procedure and pray for an order imposing sanctions against Plaintiff Debric Broussard and his counsel. Specifically, Defendants request that the Court dismiss the Complaint with prejudice, or alternatively that it strike the offending portions identified herein, and award Defendants attorneys' fees and costs, and any other relief that the Court deems appropriate, for the reasons set forth below.

This motion is necessary because Plaintiff has already settled and released all or a portion of his claims – yet he refuses to dismiss the Complaint. This suit is barred in whole or in part because it is premised on factual allegations of work-related misconduct that occurred prior to January 7, 2026. On that date, Plaintiff signed a release broadly releasing Defendants from all claims related to work-related misconduct, in connection with the settlement of a prior related matter, Docket No. 2:25-cv-02132 (E.D. La., Hon. Sarah Vance presiding) ("2025 Title VII Action"). Plaintiff and his counsel are aware of the settlement of the 2025 Title VII Action and the

**EXHIBIT A**

DRAFT DATED JULY 28, 2026

broad release executed in connection therewith – nevertheless, they refuse to dismiss or sufficiently amend the Complaint.

In compliance with Rule 11(c)(2), on July 28, 2026, Defendants served a copy of this Motion, along with a letter setting forth Defendants' proposed remedy for curing this dispute and demanding a cure by August 18, 2026. To date, Plaintiff has not dismissed or sufficiently amended the Complaint.

## BACKGROUND

On May 27, 2025, Plaintiff allegedly sustained a work-related injury. Plaintiff never returned to work after the May 27, 2025 injury.[1] Soon after the injury, Plaintiff filed a worker's compensation claim ("Compensation Action").

On October 14, 2025 – after Plaintiff had filed a charge with the EEOC and received a right to sue letter – he filed the 2025 Title VII Action, alleging various claims related to alleged work-related misconduct by Defendants.

On December 19, 2025, Plaintiff participated in a successful mediation of the Compensation Action, resulting in a mediation agreement executed on that same date ("Mediation Agreement"). The Mediation Agreement was signed by Plaintiff, his attorney Tara Melancon, and counsel for Defendants, Denise Ledet. Among other things, the Mediation Agreement called for a settlement payment to Plaintiff, and provided that Plaintiff "agrees to a voluntary resignation of his employment with the employer and to not seek reemployment with employer."

On January 7, 2026, Plaintiff and Defendant settled the 2025 Title VII Action by executing a release agreement ("January 7th Release"). Among other things, the January 7th Release called

[1] In verbal conversations, Plaintiff's counsel confirmed that Plaintiff never worked for any of the Defendants after May 27, 2025.

DRAFT DATED JULY 28, 2026

for a settlement payment to Plaintiff, and provided a broad release whereby Plaintiff released all asserted or unasserted work-related claims that Plaintiff possessed as to Defendants.[2] Specifically, Plaintiff released:

> any and all claims, known and unknown, accrued and unaccrued, asserted and unasserted, [Plaintiff] has or may have against the Released Parties as of the date of execution of this Agreement that were or could have been brought in [the 2025 Title VII Action], arising out of, but not limited to, any of the following:
>
> - Title VII of the Civil Rights Act of 1964, as amended;
> - The Civil Rights Act of 1991;
> - Sections 1981 through 1988 of Title 42 of the United States Code, as amended;
> - The Employee Retirement Income Security Act of 1974, as amended;
> - The Immigration Reform and Control Act, as amended;
> - The Equal Pay Act, as amended;
> - The Family and Medical Leave Act, as amended;
> - Older Workers Benefit Protection Act
> - The Americans with Disabilities Act, as amended;
> - The Workers Adjustment and Retraining Notification Act, as amended;
> - The Occupational Safety and Health Act, as amended;
> - The Sarbanes-Oxley Act of 2002;
> - Any Louisiana statutes pertaining to discrimination, including without limitation, disability discrimination.
> - Any federal or state claims for negligence, conspiracy, indemnity, vicarious liability, or any other claims.
> - Any claim for costs, fees, or other expenses including attorneys' fees incurred in these matters.

The January 7th Release also required Plaintiff to voluntarily dismiss the 2025 Title VII Action with prejudice. Plaintiff never did so, but on February 9, 2026, the Court dismissed the suit without prejudice in light of Plaintiff's failure to provide proof that he had served Defendants.

---

[2] The parties to the January 7th Release were Plaintiff and "Waste Pro," defined as Waste Pro of Louisiana, Inc. and any of its related or affiliated entities, parent companies, employees, former employees, owners, and/or shareholders. Further, the "Released Parties" were defined to be Waste Pro and "its subsidiaries, parent corporations, affiliates, divisions, predecessors, successors and assigns, joint employers, joint ventures, and the current and former employees, officers, directors, owners, insurers, and agents thereof." The release applied to all Defendants herein, and Plaintiff's counsel has not contended otherwise in the parties' discussions on the scope of the January 7th Release.

**DRAFT DATED JULY 28, 2026**

On January 15, 2026, Plaintiff signed a release agreement in connection with the Compensation Action ("January 15th Release").

That same day – and just 8 days after signing the January 7th Release related to the 2025 Title VII Action – Plaintiff filed a Charge of Discrimination with the EEOC, raising additional Title VII allegations against Defendants (despite the fact that Plaintiff never returned to work after his May 2025 injury and formally resigned in December 2025). The EEOC issued a Right to Sue Letter to Plaintiff on or around January 30, 2026.

On April 13, 2026, Plaintiff filed the present Complaint, again alleging workplace misconduct by Defendants under Title VII of the Civil Rights Act of 1964.

In the ensuing weeks and months, undersigned counsel reached out to Plaintiff's counsel on several occasions to discuss Defendants' position that the Complaint was barred in whole or in part as its allegations were contradicted by the factual record and/or barred by the January 7th Release. By email dated June 22, 2026, undersigned counsel provided Plaintiff's counsel with copies of the Mediation Agreement, January 7th Release, and January 15th Release.

In addition to the attorneys' several e-mail exchanges, they spoke on the phone at length on June 15, June 29, and July 13. On their most recent call, undersigned counsel agreed to send Plaintiff's counsel a letter summarizing Defendants' position and their proposal for moving forward.

On July 28, 2026, Defendants served a copy of this Motion, along with a letter setting forth Defendants' proposed remedy for curing this dispute. Plaintiff still has not sufficiently cured the defects in the Complaint.

DRAFT DATED JULY 28, 2026

## ARGUMENT

### A. Applicable Rule 11 Standard

Rule 11[3] forbids parties and their counsel from filing with the court pleadings that: (a) contain unfounded factual allegations, (b) assert unfounded legal claims, or (c) seek to achieve an improper purpose, such as delay, harassment, or the imposition of undue costs on opposing parties.[4] Violations of Rule 11 wherein a plaintiff files a complaint that is not warranted by existing law are punishable by an award of sanctions against the parties responsible for the violation, including attorneys' fees and costs. Fed. Rule Civ. Proc. 11(c); *See Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001). Compliance with Rule 11 is measured by an objective standard of reasonableness under the circumstances. To determine whether Plaintiff's counsel made a reasonable legal inquiry, relevant factors to consider are: (1) the time available to the attorney; (2) the plausibility of the legal view contained; and (3) the complexity of the legal and factual issues raised. *See Smith v. Our Lady of the Lake Hospital, Inc.*, *960* F.2d at 439, 444 (5th Cir. 1992); *Childs*, 29 F.3d at 1026; *Thomas*, 836 F.2d at 875. An attorney's good faith, or subjective belief, is not enough to protect him from Rule 11 sanctions. *Childs*, 29 F.3d at 1024; *Thomas*, 836 F.2d at 873.

---

[3] Rule 11(b) provides that:

> By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances,…* (2) the *claims,* defenses, *and other legal contentions therein are warranted by existing law* or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; (3) *the allegations and other factual contentions have evidentiary support* or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. (emphasis added)

[4] *Childs v. State Farm Mutual Automobile Ins. Co*., 29 F.3d 1018, 1024 (5th Cir. 1994); *American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 529 (5th Cir. 1992); *Thomas v. Capital Security Services, Inc*., 836 F.2d 866, 874 (5th Cir. 1988) (en banc) (emphasis added).

**DRAFT DATED JULY 28, 2026**

The Complaint violates Rule 11 because it is premised on assertions of fact that are rebutted by the clear record and it raises claims that are barred by the broad language of the January 7th Release.

The Complaint alleges that Defendants constructively discharged Plaintiff through their creation of a hostile workplace.[5] That is plainly false, as the Mediation Agreement establishes that, on December 19, 2025, Plaintiff agreed to voluntarily resign as part of an amicable resolution of the Compensation Claim.

In multiple places, the Complaint makes factual assertions that lack any merit as they would only be possible if Plaintiff were working for Defendants after May 2025, which he was not – specifically the following allegations:

- "Plaintiff remained employed by Defendant Employer following the [January 7, 2026] settlement."[6]
- "Following the [January 7, 2026] settlement...Defendants' retaliatory conduct created a work environment that was objectively and subjectively hostile, abusive, and intolerable."[7]

Throughout the Complaint, Plaintiff alleges misconduct that, either by Plaintiff's own admission or by its nature, could only have occurred prior to January 7, 2026. As stated above, all work-related claims arising prior to January 7, 2026 have been released – thus, the following allegations and claims are barred by the January 7th Release:

- Alleging that Defendants failed to accommodate Plaintiff's need to ride solo in his truck.[8]

---

[5] Complaint, paras. 1, 35, 37, 78, 92, 100, 118, and Prayer for Relief.

[6] Complaint, para. 21.

[7] Complaint, para. 32.

[8] Complaint, paras. 18, 33, 54, 55, 95, 96, 99.

DRAFT DATED JULY 28, 2026

- Alleging that Defendants engaged in retaliation tactics prior to January 7, 2026.[9]
- Alleging that Defendants failed to terminate an employee who created a dangerous workplace for Plaintiff.[10]
- Alleging that Defendants failed to remedy October 2025 workplace conditions.[11]
- Alleging that Defendants' misconduct delayed Plaintiff's medical recovery while on FMLA leave.[12]
- Demanding lost wage damages, even though Plaintiff was not owed wages after voluntarily resigning in December 2025.[13]

Further, the Complaint asserts various factual allegations without specifying whether they occurred before or after January 7, 2026. To the extent the conduct occurred prior to that date, these claims are barred by the January 7th Release.[14]

On the attorneys' July 13, 2026 phone call, Plaintiff's counsel raised two justifications for the Complaint's defects outlined above, both of which lack any merit.

First, Plaintiff's counsel contended that Plaintiff signed the Mediation Agreement under duress. That argument fails given that Plaintiff was represented by counsel at the mediation, who also signed the Mediation Agreement. To the extent Plaintiff believes he received bad legal advice in connection with his signing the Mediation Agreement, that does not constitute duress and does not relieve him of the obligations contained in the Mediation Agreement.

Second, Plaintiff's counsel contended that various claims in the Complaint are not barred by the January 7th Release, even though they occurred prior to January 7, 2026. Plaintiff's counsel

---

[9] Complaint, paras. 1, 22, 33, 87.

[10] Complaint, para. 90.

[11] Complaint, para. 34.

[12] Complaint, paras. 36, 65.

[13] Complaint, paras. 3, 44, 66, 118, and Prayer for Relief.

[14] Complaint, paras. 25, 26, 28, 30.

DRAFT DATED JULY 28, 2026

explained that the January 7th Release discharged only those claims that "were or could have been brought in [the 2025 Title VII Action]." Plaintiff's counsel claimed that the current Complaint's allegations could not have been asserted in the 2025 Title VII Action, because they were not raised in the 2025 EEOC papers, and thus Plaintiff never exhausted his administrative remedies such to allow him to raise those allegations in the 2025 Title VII Action.

Defendants do not concede that Plaintiff could not have raised the Complaint's allegations in the 2025 Title VII Action. In any event, this argument fails as it would allow Plaintiff to carve out claims from a release through his own failure to exhaust administrative remedies – i.e., to reward him for his own lack of diligence. Such a result is not compatible with federal law. Further, this argument is barred by basic estoppel principles, given that Plaintiff agreed in the January 7th Release that "the parties wish to resolve and settle their differences without resort to further litigation," and Plaintiff never gave Defendants notice of his intention to carve out allegations not raised in the 2025 EEOC proceedings. This argument is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law,"[15] and it does not relieve Plaintiff of the obligations contained in the January 7th Release.

Applying the Fifth Circuit's factors here, Rule 11 sanctions are warranted. First, Plaintiff had ample time to dismiss the Complaint or remedy the defects contained therein, as underscored by Defendants' several attempts to engage with Plaintiff on these issues. Second, Plaintiff's position lacks all plausibility – Plaintiff cannot escape the fact that the parties knowingly entered into a broad release discharging the claims asserted in the Complaint. Third, there is little complexity to the legal and factual issues underlying this Rule 11 dispute – it is not complicated to grasp that Plaintiff released all his work-related claims against Defendants.

---

[15] Rule 11(b)(2).

**DRAFT DATED JULY 28, 2026**

WHEREFORE, Defendants request that the Court dismiss the Complaint with prejudice, or alternatively that it strike the offending portions identified herein, and award Defendants attorneys' fees and costs, and any other relief that the Court deems appropriate, for the reasons set forth below.

Respectfully submitted,

LISKOW & LEWIS, APLC

Thomas J. McGoey, II (Bar #18330)
tjmcgoey@liskow.com
Michael C. Mims (#33991)
mmims@liskow.com
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 581-7979

**Counsel for Defendants Waste Pro USA, Inc., Waste Pro of Louisiana, Inc., and Total Waste Solutions, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing pleading upon all counsel of record by electronic mail on ______________________, 2026.

OF COUNSEL