**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DEBRIC BROUSSARD,** | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action** |
| v. | ) | |
| | ) | **NO. 2:26-cv-00760-CJB-DPC** |
| **WASTE PRO USA, INC; WASTE PRO OF LOUISIANA, INC.; TOTAL WASTE SOLUTIONS, LLC; MICHAEL SCIONEAUX; SAMUEL EDWARDS; DOE DEFENDANTS 1-10** | ) | |
| | ) | |
| Defendants. | | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

Plaintiff Debric Broussard respectfully submits this Memorandum in Opposition to Defendants' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11. Defendants' Motion asks the Court to transform disputed factual issues, disputed legal issues concerning the scope and effect of a settlement agreement, and allegations supported by Plaintiff's personal knowledge and contemporaneous evidence into a finding that Plaintiff's counsel violated Rule 11. The Motion should be denied.

Rule 11 does not require counsel to prove a case before filing it. It requires reasonable inquiry and an objectively reasonable basis in fact and law at the time the pleading is filed. Fed. R. Civ. P. 11(b). The Fifth Circuit has repeatedly emphasized that Rule 11 is measured as of the time the pleading is signed and that the inquiry is whether counsel's investigation and legal position were reasonable under the circumstances. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873-75 (5th Cir. 1988) (en banc); *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024-26 (5th Cir. 1994).

Here, counsel had substantial grounds for the allegations challenged by Defendants. Before filing the Amended Complaint, counsel had reviewed, among other things, Plaintiff's EEOC charges and right-to-sue notices, the prior federal action, the January 7, 2026 settlement agreement, Plaintiff's communications with Waste Pro and its personnel, communications concerning his employment and medical leave, and evidence concerning retaliation and prospective employment. Plaintiff has also identified witnesses, audio recordings, medical records, and communications with prospective employers that provide evidentiary support for the factual allegations.

Most importantly, Defendants' Motion depends upon several propositions that are not established facts at all: that Plaintiff's employment necessarily ended on May 27, 2025; that the December 19 separation was unquestionably voluntary despite Plaintiff's contemporaneous assertion of duress; that the January 7 release encompasses every claim asserted in this action; and that post-January 7 conduct affecting Plaintiff's prospective employment is somehow released by an agreement that expressly applies to claims existing "as of the date of execution." Those are merits issues., not Rule 11 violations.

## I. RULE 11 DOES NOT PERMIT SANCTIONS MERELY BECAUSE DEFENDANTS DISPUTE PLAINTIFF'S FACTS OR LEGAL THEORIES

Rule 11 requires that, after reasonable inquiry, factual contentions have evidentiary support or, if specifically identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3). Legal contentions must be warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law. Fed. R. Civ. P. 11(b)(2). The Fifth Circuit evaluates compliance under an objective standard of reasonableness under the circumstances. *Thomas v. Cap. Sec. Serv. Inc.*, 836 F.2d at 873. The relevant

inquiry is a "snapshot" of what counsel reasonably knew when the pleading was filed. Id. at 874; *Smith v. Our Lady of the Lake Hosp., Inc*., 960 F.2d 439, 444-45 (5th Cir. 1992).

In Smith, the Fifth Circuit reversed Rule 11 sanctions even though it expressed substantial doubt about the merits of the plaintiff's claims, explaining that counsel need not guarantee the correctness of the legal theory asserted and that Rule 11 "must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case." 960 F.2d at 444-45.

Likewise, Rule 11 is not a substitute for summary judgment. The question is not whether Plaintiff has already proven every allegation or whether Defendants have identified evidence they believe ultimately will defeat the claims. The question is whether counsel had a reasonable factual and legal basis to plead them, which he did.

## II. PLAINTIFF DID NOT ALLEGE THAT HE PHYSICALLY WORKED AFTER MAY 27, 2025; HE ALLEGED THAT HIS EMPLOYMENT CONTINUED WHILE HE WAS ON MEDICAL LEAVE

Defendants' principal factual premise is that Plaintiff "never returned to work" after May 27, 2025. Plaintiff does not dispute that he did not physically perform his job as a commercial truck driver after his May 27 injury. However, that is not the same thing as saying that his employment relationship ended on May 27.

Plaintiff was injured while performing his job and thereafter remained on workers' compensation-related medical leave and temporary disability. He remained on Waste Pro's employment rolls, received benefits including disability and holiday-related benefits, communicated with Waste Pro concerning his employment and medical status, and expected to return to work after he recovered. Plaintiff had not voluntarily abandoned his employment.

Indeed, Plaintiff's account is that he repeatedly attempted to maintain his employment relationship and return to work. He has medical records and communications with his physicians, workers' compensation counsel, and Waste Pro personnel concerning his continuing medical leave and anticipated return.

Plaintiff also possesses audio recordings in which employees discussed the prospect of his return, including a statement that Plaintiff was getting ready to return followed by the response, "yeah, good luck with that, they're not gonna let [plaintiff] back." These facts provide an objectively reasonable basis for pleading that Plaintiff remained employed while on medical leave.

To the extent any allegation in the Amended Complaint can be read to suggest that Plaintiff physically worked after May 27, Plaintiff does not rely upon that characterization and will amend it to eliminate any ambiguity. But an imprecise description of employment status is not evidence that counsel lacked a reasonable factual inquiry. The distinction is important because the alleged retaliation did not require Plaintiff to be physically driving a Waste Pro truck.

The alleged retaliatory conduct included communications concerning Plaintiff's EEOC proceedings, inquiries to coworkers concerning whether they would participate in the proceedings, dissemination of information concerning his medical condition and workers' compensation claim, disparagement of his honesty and injuries, instructions to employees not to communicate with him, and conduct affecting his ability to obtain subsequent employment. Those allegations were not dependent upon Plaintiff physically being present at the Waste Pro workplace.

## III. THE ALLEGATIONS OF CONTINUING RETALIATION WERE SUPPORTED BY SPECIFIC FACTS AND CONTEMPORANEOUS EVIDENCE

Plaintiff did not invent the retaliation allegations after settlement. Rather, the retaliation allegations were documented contemporaneously. Plaintiff's Second EEOC Charge, filed January 15, 2026, specifically alleged that Waste Pro personnel continued discussing Plaintiff's prior EEOC case, his medical condition, and his workers' compensation injury with others; that Plaintiff complained to Human Resources on October 17, 2025; that he followed up with Human Resources on December 10, 2025; that employees had been instructed to avoid him; and that Scioneaux had made disparaging statements concerning Plaintiff's injuries. The Charge specifically characterized the conduct as retaliation for Plaintiff's prior protected activity and alleged constructive discharge. This is powerful evidence that the present retaliation theory was not manufactured for purposes of this lawsuit. Plaintiff had already asserted substantially the same retaliation grievance before the EEOC in effort to exhaust administrative remedies while maintaining employment with Waste Pro.

Plaintiff also had communications with Waste Pro personnel concerning the alleged conduct, witnesses who could testify regarding the statements and instructions, and evidence concerning the disclosure of Plaintiff's medical and employment information. Plaintiff further identified former employees who could testify concerning Scioneaux's continuing conduct.

Rule 11 does not require counsel to depose every witness, obtain every employment record, or secure an admission from Defendants before pleading a claim. Where the facts are within the possession of the opposing party or third parties, Rule 11 expressly contemplates that discovery may be necessary to develop the evidentiary record.

## IV. THE JANUARY 7, 2026 RELEASE DOES NOT MAKE THE ENTIRE ACTION SANCTIONABLE

Defendants' release argument is the centerpiece of their Motion, but it presents a contract-interpretation and federal employment-law issue, not a basis for Rule 11 sanctions.

The January 7 Agreement does not simply state that Plaintiff released "all work-related claims." Instead, the operative provision releases claims Plaintiff "has or may have against the Released Parties as of the date of execution of this Agreement that were or could have been brought in Case No. 2:25-cv-02132-SSV-MBN."

As such, the release applies to claims Plaintiff had "as of the date of execution." It therefore cannot reasonably be construed, for Rule 11 purposes, as an indisputable waiver of claims based upon events that had not yet occurred.

Fifth Circuit law itself recognizes the significance of the execution date when determining the scope of an employment discrimination release. In *Rogers v. General Electric Co.*, 781 F.2d 452, 454 (5th Cir. 1986), the Court held that an employee may release Title VII claims arising from discriminatory acts or practices that predate execution of the release, but that a release cannot prospectively waive future Title VII rights. See also *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 321-22 (5th Cir. 2003).

Thus, Defendants' own authorities concerning releases do not establish that a January 7 release necessarily bars every employment-related event occurring after January 7. At minimum, counsel had a reasonable basis to distinguish claims arising from events occurring before execution from claims based upon events occurring after execution. That distinction is especially important here because Plaintiff alleges specific post-January 7 conduct involving a prospective employer.

## V. THE GEAUX WASTE EVENTS PROVIDE A CONCRETE BASIS FOR POST-RELEASE CLAIMS

Plaintiff's allegations concerning Geaux Waste, another regional waste hauling company, are not speculative. On or about January 7, 2026, Plaintiff contacted Geaux Waste concerning employment. He applied approximately January 8. He was interviewed, received an offer of employment, and was expected to begin work on January 12.

According to Plaintiff, after the offer was extended, Geaux Waste communicated to Plaintiff that it would no longer employ him after receiving information concerning Plaintiff from Waste Pro personnel. Plaintiff was subsequently informed that Defendants had characterized him as "trouble" and had communicated information concerning his protected activity and workers' compensation/injury history. Plaintiff later received additional information from former Waste Pro employees concerning continuing statements made by Scioneaux about Plaintiff, including statements that Plaintiff had "faked" his injuries.

Plaintiff has identified witnesses and communications concerning these events. He also applied for other employment opportunities in February and March 2026 and received information that prospective employers had been contacted by Waste Pro concerning him.

The January 7 settlement could not have released a retaliation or interference claim based upon a communication to Geaux Waste and other prospective employers that occurred after January 7 and caused an employment opportunity to be withdrawn after the release. Such a claim did not exist "as of the date of execution" if the operative communication and resulting injury occurred afterward. This alone defeats Defendants' contention that the Amended Complaint is sanctionable as a whole.

## VI. THE SECOND EEOC CHARGE PROVIDES ADDITIONAL OBJECTIVE SUPPORT FOR COUNSEL'S TREATMENT OF THE RETALIATION CLAIMS AS DISTINCT

The administrative history further demonstrates the reasonableness of Plaintiff's position. Plaintiff filed his First EEOC Charge concerning alleged discrimination. He thereafter filed the First Action. The retaliation alleged in this action developed in the aftermath of that protected activity and was separately presented to the EEOC in Plaintiff's Second Charge on January 15, 2026. The Second Charge specifically identified retaliation, disclosure of medical information, discussions of Plaintiff's EEOC proceedings, disparagement concerning his injuries, and constructive discharge.
The EEOC issued a Right to Sue notice on that Second Charge on approximately January 30, 2026.

Plaintiff then filed this action on April 13, 2026. Counsel therefore had before him, before filing this case, an administrative record expressly identifying the retaliation theory that is the subject of this litigation.

The Fifth Circuit has recognized that the scope of a Title VII action is not limited mechanically to the precise words or boxes checked in an EEOC charge. Rather, the court considers the scope of the EEOC investigation that could reasonably be expected to grow out of the charge. *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021).

Counsel thus had an objectively reasonable basis for treating the retaliation claims as an independently exhausted dispute. Defendants may ultimately prevail on the scope of the release, the relationship between the two administrative proceedings, or particular claims. But reasonable lawyers could disagree about those issues. That is precisely why they are not appropriate subjects for Rule 11 sanctions.

## VII. PLAINTIFF'S ALLEGATION THAT THE DECEMBER 19 RESIGNATION WAS COERCED HAD A SPECIFIC FACTUAL BASIS

Defendants also argue that the allegation of constructive discharge was "plainly false" because the December 19 workers' compensation mediation documents characterize Plaintiff's resignation as voluntary. That argument ignores the factual circumstances known to counsel when the complaint was filed.

Plaintiff was on medical leave following significant injuries. His medical treatment was ongoing. According to Plaintiff, his treating neurologist had recommended additional cognitive and other testing, but the workers' compensation insurer refused to authorize the requested treatment.

Plaintiff further reports that he was told that if he did not accept the settlement, Waste Pro or its insurer would send him to another physician or independent medical examiner, that the physician would potentially disagree with his treating doctors, and that his workers' compensation benefits could be terminated. Plaintiff understood that an independent medical examination and resulting litigation could leave him without income for a prolonged period.

Plaintiff states that he questioned the situation during the December 19 mediation. His wife asked whether the ultimatum was lawful. Plaintiff asked his workers' compensation attorney, Tara Melancon, about it. Plaintiff states that counsel discussed the tactics employers and insurers use in such circumstances. Plaintiff then told those present that he was signing under duress. The people present included Plaintiff, his wife, Xavier Pickney, attorney Tara Melancon, defense counsel Denise Ledet, and the mediator. Plaintiff states that when he expressed that he was signing under duress, his attorney responded that "that changes everything." These are specific factual allegations supported by identified witnesses and contemporaneous circumstances. They provide a

factual basis for pleading that Plaintiff's resignation was not as voluntary as the document's boilerplate characterization suggests.

Defendants may ultimately establish that the resignation was voluntary and that Plaintiff cannot prove legal duress. But that is not the Rule 11 inquiry. The existence of a signed agreement saying "voluntary" does not make it sanctionable for counsel to plead a factual defense that the circumstances surrounding execution rendered the purported resignation involuntary.

Indeed, the Fifth Circuit recognizes that an employee challenging an employment release may assert defenses including fraud, duress, material mistake, or other grounds affecting the validity of the release. *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994). Defendants' reliance upon the fact that Plaintiff was represented by counsel does not transform the factual allegation into a Rule 11 violation. Representation may be relevant to the ultimate merits of a release defense; it does not establish that counsel lacked a factual basis to plead the defense.

## VIII. THE WORKERS' COMPENSATION RELEASE DOES NOT SUPPORT RULE 11 SANCTIONS

The January 15 workers' compensation Receipt and Release provides additional context. That document expressly states that nothing in it should be construed to release Waste Pro USA or compromise Plaintiff's rights in the First Action, Civil Action No. 2:25-cv-02132-SSV-MBN. Thus, even though Defendants characterize the January 15 document as confirming a voluntary resignation, the document itself contains express language preserving federal litigation rights.

At minimum, the existence of two separate settlement documents addressing different disputes, together with the January 7 employment release's specific language concerning claims existing as of execution and claims that were or could have been

brought in the First Action, provided counsel with a substantial basis to analyze the agreements separately. Again, Defendants may ultimately prevail on their construction of the agreements. But the existence of a competing, textually grounded interpretation is fatal to the assertion that counsel's position was frivolous.

## IX. DEFENDANTS IMPROPERLY SEEK TO RESOLVE FACTUAL DISPUTES THROUGH RULE 11

The Motion repeatedly asks the Court to accept Defendants' version of disputed events as established fact. For example, Defendants contend that Plaintiff's resignation was voluntary. Plaintiff disputes that characterization. Defendants contend that Plaintiff's employment effectively ended on May 27. Plaintiff contends that he remained employed while on medical leave and temporary disability and expected to return. Defendants contend that all alleged retaliatory conduct occurred before January 7, while Plaintiff identifies post-January 7 employment interference. Defendants contend that the Second EEOC Charge was an attempt to circumvent the settlement. Plaintiff's evidence shows that he had separately complained to HR, separately complained to the EEOC about retaliation, and obtained a separate right-to-sue notice. Those disputes cannot be resolved through Rule 11.

The Fifth Circuit's Rule 11 jurisprudence recognizes that the rule is intended to address unreasonable litigation conduct, not punish a litigant because discovery may ultimately fail to establish every allegation. Smith, 960 F.2d at 444-45. This case presents precisely the kind of situation in which discovery is appropriate. Waste Pro possesses employment records, personnel records, HR communications, leave records, internal communications, disciplinary records, and information concerning communications with employees and prospective employers. Third parties possess additional information

concerning Plaintiff's prospective employment and the alleged statements made about him.

Rule 11 expressly contemplates factual allegations that are likely to have evidentiary support after a reasonable opportunity for investigation or discovery when specifically identified. Fed. R. Civ. P. 11(b)(3).

Plaintiff has identified the factual sources supporting the challenged allegations.

## X. THE ALLEGED PLEADING IMPERFECTIONS DO NOT WARRANT SANCTIONS

Defendants also identify various pleading errors and ambiguities. Plaintiff does not dispute that the Amended Complaint contains some drafting imperfections, including paragraph-numbering and cross-reference errors. Those errors are plainly clerical and do not establish that the underlying factual allegations lack evidentiary support. Likewise, if the Court determines that certain allegations should be clarified to make clear that Plaintiff did not physically work after May 27, Plaintiff is prepared to amend them.

The appropriate response to an inartful allegation is clarification, not Rule 11 sanctions. The same is true of claims that may ultimately prove insufficient as pleaded. Counsel for Plaintiff avers that after significant correspondence with opposing counsel, he greatly narrowed the complaint when filing the First Amended Petition, in good faith and with intention for accurate representation of the claims. Counsel for Plaintiff also avers that he is willing to further narrow or amend claims as discovery clarifies the factual record. Such good faith clarifications are ordinary litigation procedure, not sanctionable conduct.

## XI. THE FMLA AND ADA MEDICAL-INFORMATION ALLEGATIONS DO NOT WARRANT SANCTIONS

Defendants also challenge Plaintiff's FMLA and medical-information allegations.

Plaintiff's FMLA theory is based upon his medical leave and his understanding that he was entitled to protected leave. The precise designation and administration of Plaintiff's leave is substantially reflected in Waste Pro's own employment and HR records. Plaintiff understands that Defendants characterized his absence as workers' compensation leave. Whether Plaintiff was also entitled to or actually designated for FMLA leave requires review of Defendants' records and the facts surrounding his leave. That factual uncertainty is not a basis for sanctions.

Plaintiff likewise alleged that information concerning his medical condition was disseminated to coworkers and third parties. The fact that Waste Pro obtained medical information through its workers' compensation process does not establish that every subsequent disclosure was lawful or irrelevant to Plaintiff's retaliation claims. At minimum, the alleged disclosures were relevant factual evidence supporting Plaintiff's retaliation and damages theories.

If discovery establishes that a particular statutory medical-confidentiality theory is unavailable, Plaintiff can amend accordingly. That possibility does not establish that counsel violated Rule 11 by investigating and pleading the claim.

## XII. THE ALLEGATIONS CONCERNING SCIONEAUX'S TREATMENT WERE PLED AS EVIDENCE OF RETALIATORY MOTIVE AND FAILURE TO PROTECT PLAINTIFF

Plaintiff's allegations concerning Scioneaux's treatment and alleged workplace-rule or safety violations were not intended to create a separate free-standing claim based upon every alleged workplace violation. Those allegations provide context for Plaintiff's contention that Waste Pro knew of Scioneaux's conduct and nevertheless failed to intervene after Plaintiff complained. Plaintiff contends that Waste Pro had access to GPS information, vehicle-safety systems, video, reports, and other evidence concerning

employee conduct and that Waste Pro nevertheless treated Scioneaux differently from Plaintiff. These allegations are relevant to knowledge, notice, selective enforcement, motive, and Waste Pro's response to Plaintiff's complaints. Whether the evidence ultimately supports those allegations is a matter for discovery. Their presence in the complaint does not demonstrate a Rule 11 violation.

## XIII. DEFENDANTS HAVE NOT ESTABLISHED AN IMPROPER PURPOSE

Defendants also seek sanctions based upon the filing of the action itself. There is no evidentiary basis for concluding that the action was filed for an improper purpose. Plaintiff first pursued administrative remedies. He complained internally to Human Resources. He filed a Second EEOC Charge concerning retaliation. He obtained a Right to Sue notice. He then filed the present action.

Counsel investigated the factual and legal issues surrounding the prior settlement, the subsequent retaliation allegations, the EEOC proceedings, Plaintiff's employment status, and his prospective employment. The chronology is inconsistent with the suggestion that the lawsuit was filed merely to harass Defendants or needlessly increase litigation costs. The existence of a prior settlement does not make subsequent litigation improper where Plaintiff contends that subsequent conduct created new claims and where the settlement itself contains a temporal limitation.

## XIV. DEFENDANTS' REQUEST FOR ATTORNEYS' FEES IS PARTICULARLY INAPPROPRIATE

Defendants seek attorneys' fees and costs as sanctions. Rule 11 authorizes sanctions only where a violation has actually occurred, and any monetary sanction must be tied to the conduct that violated the Rule. *Thomas*, 836 F.2d at 881-82.

Here, Defendants have not identified a frivolous claim that counsel knowingly asserted without factual or legal support. Instead, they identify disputes concerning the interpretation of agreements, the timing of alleged retaliation, Plaintiff's employment status while on medical leave, the voluntariness of the December 19 resignation, exhaustion, and prospective employment interference. Those are ordinary litigation disputes. Awarding Defendants their attorneys' fees for litigating those disputes would effectively convert Rule 11 into a fee-shifting mechanism for defending against claims that Defendants believe lack merit. That is not the function of Rule 11.

## XV. CONCLUSION

The question before the Court is not whether Plaintiff will ultimately prevail on every claim, whether every factual allegation will survive discovery, or whether Defendants' interpretation of the January 7 settlement agreement will ultimately prevail. The question is whether Plaintiff's counsel had an objectively reasonable factual and legal basis for filing the Amended Complaint. The answer is yes.

Before filing, counsel had the First Action, the Second EEOC Charge, the Second Right to Sue notice, the January 7 settlement agreement, Plaintiff's HR complaints, communications concerning his medical leave and employment status, evidence concerning alleged retaliatory statements and disclosures, information concerning prospective employment, and witnesses and other evidence supporting Plaintiff's account. The challenged allegations also present substantial legal questions concerning the temporal scope of an employment release and whether claims based upon post-execution conduct can be released by an agreement addressing claims existing "as of the date of execution."

Fifth Circuit law confirms that employment releases generally reach antecedent claims but do not prospectively waive future Title VII rights. *Rogers,* 781 F.2d at 454; *Faris*, 332 F.3d at 321-22. Plaintiff's allegations concerning post-January 7 interference with prospective employment are therefore independently sufficient to demonstrate that Defendants cannot characterize the entire action as a sanctionable attempt to relitigate released claims.

The December 19 resignation presents a separate factual dispute. Plaintiff's assertion that he signed under duress is supported by his contemporaneous account, identified witnesses, and the circumstances surrounding the workers' compensation mediation. Whether that defense ultimately succeeds is not properly resolved under Rule 11.

Finally, Plaintiff's employment status after May 27 is not accurately described by saying that his employment ended on that date. Plaintiff did not physically work after his injury because he was on medical leave and temporary disability. He nevertheless remained employed, expected to return, received benefits, communicated with Waste Pro, and contends that Waste Pro personnel retaliated against him during that period and thereafter.

At most, Defendants have identified factual and legal issues that they believe will ultimately defeat some or all of Plaintiff's claims. That is not enough for sanctions. Because Defendants have failed to establish a violation of Rule 11(b), their Motion should be DENIED in its entirety. Plaintiff further requests that the Court permit any clarification or amendment the Court deems appropriate rather than impose sanctions.

Respectfully submitted,

/s/ *Jonathan Rhodes*__________
Jonathan Rhodes La. Bar #32649

The Rhodes Law Firm, LLC
1937 Peniston Street
New Orleans, LA 70115
T: 504-475-0975 F: 504-475-1013
E: jonathan@therhodeslawfirm.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September, 2026, a copy of the foregoing First Amended Complaint was filed electronically through the Court's CM/ECF system, which will send a Notice of Electronic Filing to all registered attorneys of record in this matter.

/s/ Jonathan M. Rhodes
Attorney for Plaintiff