**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DEBRIC BROUSSARD,**<br><br>Plaintiff,<br>v.<br><br>**WASTE PRO USA, INC; WASTE PRO OF LOUISIANA, INC.; TOTAL WASTE SOLUTIONS, LLC; MICHAEL SCIONEAUX; SAMUEL EDWARDS; DOE DEFENDANTS 1-10**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action**<br><br>**NO. 2:26-cv-00760-CJB-DPC** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS**

Plaintiff Debric Broussard respectfully submits this Memorandum in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss. Defendants' Motion rests principally on an overbroad reading of the January 7, 2026 Confidential Settlement Agreement and General Release and an effort to resolve disputed factual questions concerning Plaintiff's employment status, the circumstances surrounding his December 19, 2025 resignation, the scope and timing of the retaliation alleged in Plaintiff's Second EEOC Charge, and Defendants' post-January 7 conduct.

The Motion should be denied, or, at minimum, the Court should decline to dismiss claims based upon conduct occurring after January 7, 2026 and permit Plaintiff to amend any allegations the Court determines require clarification.

The January 7 Release is not a blanket release of every employment-related claim Plaintiff might ever assert. By its express terms, Plaintiff released claims he "has or may have . . . as of the date of execution" that "were or could have been brought" in the prior

action. That language matters. Under Louisiana law, a compromise settles only those differences the parties clearly intended to settle, and a compromise does not affect rights subsequently acquired unless those rights are expressly included. La. Civ. Code arts. 3076, 3078.

The Amended Complaint alleges conduct occurring after January 7, 2026, including interference with Plaintiff's prospective employment. Those allegations concern acts that had not yet occurred as of the date of the Release.

The Amended Complaint also alleges that Plaintiff filed a separate EEOC Charge on January 15, 2026 specifically alleging retaliation and subsequently received a separate Right to Sue notice. The separate administrative history is relevant to exhaustion and to the nature of the claims Plaintiff presently asserts.

Finally, Defendants' arguments concerning Plaintiff's December 19 resignation depend upon disputed facts that cannot properly be resolved against Plaintiff at the pleading stage. Plaintiff alleges that he was on medical leave and temporary disability, wanted to preserve his employment and return when medically cleared, and was placed under extraordinary economic pressure during the workers' compensation mediation.

Whether the December 19 separation was truly voluntary, whether alleged retaliatory conduct contributed to Plaintiff's decision, and what legal consequences follow from the workers' compensation settlement cannot be resolved simply by accepting Defendants' characterization of those events.

For these reasons, Defendants' Motion should be denied.

## I. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint, not the ultimate merits of the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The

Court must accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint survives if it contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,'" but requires more than a sheer possibility that a defendant acted unlawfully. *Id.*

At the Rule 12(b)(6) stage, the Court generally confines its review to the complaint and documents properly considered with it. See *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Documents attached to or incorporated into the complaint may be considered, as may documents that are central to the claims and referenced by the complaint. *Collins*, 224 F.3d at 498-99; *Causey*, 394 F.3d at 288.

An affirmative defense may support dismissal under Rule 12(b)(6) when the defense is established on the face of the complaint or by documents properly considered with it. See *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). Where resolution of the defense depends upon disputed facts, intent, or evidence outside the pleadings, as here, dismissal is premature.

## II. THE JANUARY 7 RELEASE DOES NOT BAR CLAIMS BASED UPON POST-JANUARY 7 CONDUCT

### A. The express language of the Release contains a temporal limitation.

Defendants characterize the January 7 Release as a comprehensive release of "all employment-related claims." Defendants' Memorandum at 8-9. That characterization omits the operative limitation in the agreement. The Release provides that Plaintiff released claims he:

> "has or may have against the Released Parties as of the date of execution of this Agreement that were or could have been brought in Case No. 2:25-cv-02132-SSV-MBN."

Defendants' own quotation of the agreement confirms this limitation. Doc. 11-1 at 4; see also id. at 8-9. Thus, the Release contains two material limitations:

1. the claim must have been one Plaintiff “has or may have . . . as of the date of execution”; and
2. the claim must have been one that “were or could have been brought” in the prior action.

Those limitations cannot simply be disregarded because the Release also contains broad language concerning “any and all claims.”

Louisiana law requires that a compromise be interpreted according to what the parties clearly intended to settle. Louisiana Civil Code article 3076 provides that “[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.” Louisiana Civil Code article 3078 further provides: “A compromise does not affect rights subsequently acquired by a party, unless those rights are expressly included in the agreement.” La. Civ. Code arts. 3076, 3078.

Article 3080 provides that a compromise precludes a subsequent action based upon the “matter that was compromised.” La. Civ. Code art. 3080. The statutory scheme therefore requires the Court to determine the scope of the matter actually compromised rather than assume that every later dispute concerning the same parties or employment relationship was released.

The Louisiana Supreme Court has held that a compromise instrument must be interpreted according to the parties' intent and that its scope cannot be extended beyond the matters the parties intended to settle. See *Brown v. Drillers, Inc.*, 93-1019, pp. 9-10 (La. 1/14/94), 630 So. 2d 741, 748-49; see also *Ortego v. State, Dep't of Transp. & Dev.*,

96-1322, p. 7 (La. 2/25/97), 689 So. 2d 1358, 1363-64.

The Louisiana Supreme Court has more recently reiterated that compromises are interpreted according to the parties' intent and that the burden of establishing the scope of a compromise rests upon the party asserting its preclusive effect. See *Joseph v. Huntington Ingalls Inc.*, 2018-02061, pp. 9-10 (La. 1/29/20), 282 So. 3d 515, 522-23 (discussing *Brown* and La. Civ. Code art. 3076).

The Fifth Circuit likewise recognizes that Louisiana's rules concerning compromises permit inquiry into the scope of the claims actually released and, where appropriate, consideration of evidence concerning the parties' intent. See *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 480-81 (5th Cir. 2002). Accordingly, the Court should enforce the January 7 Release according to its actual terms, not according to Defendants' broader characterization of it.

**B. Claims arising from events after January 7, 2026 are not claims Plaintiff had as of January 7.**

The Amended Complaint alleges specific conduct occurring after execution of the January 7 Release. Most significantly, Plaintiff alleges that he pursued employment with Geaux Waste after the January 7 settlement. Plaintiff contacted Geaux Waste on or about January 7, applied approximately January 8, was interviewed, received an offer of employment, and was expected to begin work on January 12.

Plaintiff further alleges that, after the offer was extended, Defendants communicated information concerning Plaintiff to Geaux Waste and/or others, including information concerning Plaintiff's protected activity, medical/workers' compensation history, and character, and that Geaux Waste thereafter withdrew the employment opportunity. Plaintiff further alleges that he was told that Defendants had characterized

him as “trouble.” Those allegations describe acts occurring after January 7 and an alleged employment injury occurring after January 7.

The Fifth Circuit has recognized that a valid employment release may release claims arising from discriminatory acts that predate execution of the release but cannot prospectively waive future Title VII rights absent language sufficiently demonstrating that intent. *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986); *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 321-22 (5th Cir. 2003).

The Court in *Rogers* explained that an employee may release Title VII claims arising from discriminatory acts that occurred before execution of a release, but an otherwise valid release that purports to waive prospective Title VII rights is contrary to public policy. *Id*. *Faris* subsequently relied upon *Rogers* in applying that distinction to a post-termination release. *Id.*

Here, the alleged communications to Geaux Waste and the resulting loss of a prospective employment opportunity occurred after the January 7 Release. The claim based upon those acts therefore could not have been an existing claim based upon an already-completed communication as of January 7. At a minimum, the Court should not dismiss claims based upon such post-January 7 conduct unless the Release unambiguously encompasses those later-acquired rights.

## III. THE SECOND EEOC CHARGE IS RELEVANT TO EXHAUSTION, BUT THE RELEASE QUESTION IS CONTROLLED BY THE RELEASE'S TERMS

Defendants characterize Plaintiff's current action as an attempt to evade the January 7 Release by recasting claims from the first action as retaliation. The Amended Complaint alleges a materially different administrative history. Plaintiff filed a separate EEOC Charge on January 15, 2026 specifically alleging retaliation arising from Plaintiff's

prior protected activity, including the dissemination of information concerning his prior EEOC proceedings and medical condition, inquiries to coworkers concerning participation in his case, retaliatory treatment following his protected activity, disparaging statements concerning his injuries, and constructive discharge. The EEOC subsequently issued a separate Right to Sue notice. Plaintiff then filed this action.

The fact that Plaintiff filed a separate charge does not itself determine whether a particular claim was contractually released on January 7. It does, however, demonstrate that Plaintiff separately presented retaliation allegations to the EEOC and obtained administrative authorization to pursue the claims asserted in this action.

The Fifth Circuit evaluates exhaustion by considering the scope of the administrative charge and the scope of the EEOC investigation that can reasonably be expected to grow out of it. *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006). The inquiry is fact-intensive and looks to the substance of the charge rather than merely its label. *Id.* at 789; see also *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021).

Those authorities address administrative exhaustion. They do not determine the contractual scope of a settlement release. Accordingly, Defendants' exhaustion arguments and their release arguments present separate questions.

In *Pacheo,* the court held that there are numerous instances where by new claims do *not* arise out of an existing charge. The Court stated that: "[I]n *Fine v. GAF Chemical Corp.*, this court held that a plaintiff's administrative remedies were *not* exhausted with respect to an incident of sexual discrimination because the incident sued upon was separate from the one raised in her administrative charge. 995 F.2d 576, 577-78 (5th Cir. 1993). And, in *Young v. City of Houston*, this court held that a sex discrimination claim had not been exhausted by the plaintiff's charge of race and age discrimination. 906 F.2d

177 (5th Cir. 1990). *Id.* (emphasis in original).

The first question is whether Plaintiff exhausted the claims asserted here. The Amended Complaint alleges that he did. The second question is whether those claims were released on January 7. That question turns upon the actual language of the Release and Louisiana law governing compromises.

The existence of a separate EEOC charge therefore does not itself invalidate the Release, but neither does Defendants' characterization of the charge as relating to Plaintiff's earlier employment automatically establish that the resulting claims were released.

The issues in Plaintiff's case are similar to those raised in *Fine* and *Young* above, whereby the court did not find subsequent claims to have arose from the prior. As Plaintiff has pled, the issues presented in the present case did not arise out of the first complaint, and are therefore not covered by the release.

## IV. DEFENDANTS' READING OF "COULD HAVE BEEN BROUGHT" IS OVERBROAD

Defendants contend that because Federal Rule of Civil Procedure 18 permits joinder of claims, every retaliation claim arising before January 7 necessarily "could have been brought" in the first action. Doc. 11-1 at 8-9. That proposition does not follow.

Rule 18 concerns joinder of claims in a federal action. It does not determine the substantive scope of a privately negotiated settlement agreement. More importantly, the Release itself limits the phrase "could have been brought" by the preceding language requiring that the claim be one Plaintiff "has or may have . . . as of the date of execution." The question is therefore not simply whether Plaintiff theoretically could have attempted to add another allegation to the prior lawsuit. The question is whether the particular claim existed as of January 7 and whether the parties intended that claim to be included within

the settlement.

That distinction is important where the alleged retaliatory conduct continued to develop, Plaintiff was separately complaining to Human Resources, and Plaintiff subsequently filed a separate EEOC charge specifically concerning retaliation. The Release should not be expanded by implication beyond its express language. See La. Civ. Code arts. 3076, 3078; *Brown*, 630 So. 2d at 748-49.

## V. THE SCOPE OF THE RELEASE SHOULD NOT BE RESOLVED AGAINST PLAINTIFF WHERE MATERIAL FACTUAL ISSUES EXIST

Defendants rely upon Louisiana law concerning enforcement of compromises, but Louisiana law recognizes that the scope of a compromise turns upon the differences the parties intended to settle. In *Brown*, the Louisiana Supreme Court held that the scope of a release depended upon the parties' intent and the circumstances surrounding the agreement. 630 So. 2d at 748-49.

The Fifth Circuit has likewise explained that the burden of proving the scope of a release falls upon the party asserting the release as an affirmative defense and that Louisiana law permits consideration of extrinsic evidence concerning the parties' intent in appropriate cases. *Copeland*, 278 F.3d at 480-81.

*Copeland* ultimately involved summary judgment on the release issue, however, the relevant point here is narrower: where the scope of the compromise depends upon facts and intent not established by the pleadings and the documents properly before the Court, Rule 12(b)(6) is not an appropriate vehicle for resolving those disputed matters against Plaintiff.

Here, Plaintiff alleges a continuing course of retaliation, a separate administrative charge, and specific post-settlement conduct. Defendants' Motion asks the Court to accept

their characterization of when particular statements were made, when particular employment opportunities were lost, what Defendants communicated to third parties, and whether particular claims arose before or after the settlement. Those matters cannot be resolved simply by accepting Defendants' version of disputed facts.

At the Rule 12(b)(6) stage, Plaintiff's well-pleaded allegations must be accepted as true and reasonable inferences must be drawn in his favor. *Iqbal*, 556 U.S. at 678.

## VI. PLAINTIFF'S EMPLOYMENT STATUS DURING MEDICAL LEAVE CANNOT BE RESOLVED FROM DEFENDANTS' CHARACTERIZATION ALONE

Defendants repeatedly state that Plaintiff "never returned to work" after May 27 and therefore contend that all workplace conduct necessarily predates January 7. Doc. 11-1 at 2-3. Plaintiff does not allege that he physically performed his job as a commercial truck driver after May 27.

Rather, Plaintiff alleges that he remained employed while on documented medical leave and temporary disability, remained on the employer's roster, received employment-related benefits, communicated with Waste Pro concerning his employment and medical condition, and expected to return when medically cleared. Those allegations are not inconsistent with the proposition that Plaintiff did not physically work after May 27.

The distinction is legally significant because Title VII's anti-retaliation provision is not limited to conduct occurring while an employee is physically performing work. The Supreme Court has recognized that the anti-retaliation provision protects former employees from retaliation as well. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).

The Amended Complaint alleges conduct directed at Plaintiff while he was on medical leave, including instructions that employees not communicate with him, discussions of his EEOC proceedings, disclosure of medical information, disparaging

statements about his injuries, and interference with prospective employment. Those allegations do not depend upon Plaintiff physically operating a Waste Pro truck.

Moreover, the actual employment status of a person on medical leave is ordinarily established through employment records, payroll records, leave records, benefit records, HR communications, and related evidence. Defendants' characterization of that status is not, by itself, a basis for resolving the factual issue against Plaintiff on a motion to dismiss.

## VII. THE CONSTRUCTIVE-DISCHARGE ALLEGATIONS SHOULD NOT BE DISMISSED SOLELY ON DEFENDANTS' CHARACTERIZATION OF THE DECEMBER 19 RESIGNATION

Defendants contend that Plaintiff's constructive-discharge allegations fail because Plaintiff signed a workers' compensation settlement agreeing to "voluntary" resignation and later signed a workers' compensation release containing similar language. Doc. 11-1 at 10-12. Plaintiff's Amended Complaint, however, alleges that he did not regard his resignation as genuinely voluntary.

Plaintiff alleges that he was on medical leave and temporary disability after sustaining significant injuries. He alleges that his treating physicians sought additional medical testing and treatment, that treatment was being denied, and that during the mediation he was confronted with the prospect of being sent to another physician or independent medical examiner and potentially losing his benefits and income for a prolonged period if he did not accept the settlement.

Plaintiff alleges that he expressed these concerns during the mediation and told those present that he was signing under duress. Those allegations must be accepted as true for purposes of Rule 12(b)(6), subject to any documents properly considered as part of the pleadings.

Defendants rely upon the January 15 Release and the OWC approval to establish that the resignation was legally voluntary. But those documents do not necessarily establish that every separate federal or state employment claim arising from the circumstances surrounding the resignation was adjudicated or released.

Defendants' reliance upon La. R.S. 23:1272 is similarly misplaced to the extent they treat OWC approval as adjudicating claims beyond the workers' compensation proceeding. Section 23:1272(B) governs the approval and subsequent setting aside or modification of an OWC-approved workers' compensation settlement. It provides that, when its statutory requirements are satisfied, the OWC order shall not thereafter be set aside or modified except for fraud or misrepresentation made by a party. La. R.S. 23:1272(B).

Plaintiff is not asking this Court to modify his workers' compensation award or reopen the workers' compensation proceeding. His present claims arise under federal and state employment law and concern alleged retaliation and other conduct by Defendants. The workers' compensation settlement may be relevant evidence concerning the circumstances of Plaintiff's separation, but OWC approval did not itself adjudicate whether Defendants engaged in retaliation in violation of federal employment law. Nor does the OWC order constitute a factual finding that Defendants did not engage in retaliation.

To the extent Defendants seek to use the workers' compensation documents to establish disputed facts concerning Plaintiff's intent, the circumstances of the resignation, or the meaning and effect of the parties' agreement, those issues should not be resolved against Plaintiff on a Rule 12(b)(6) motion unless the documents themselves conclusively establish the defense.

## VIII. THE JANUARY 15 WORKERS' COMPENSATION RELEASE DOES NOT EXPAND THE JANUARY 7 EMPLOYMENT RELEASE

The January 15 workers' compensation release cannot logically release conduct that had not yet occurred unless it expressly and validly does so. More importantly, the January 15 document expressly preserved Plaintiff's rights concerning the prior federal action. The document states that nothing in the workers' compensation release should be construed to release or compromise Plaintiff's rights in Civil Action No. 2:25-cv-02132-SSV-MBN. Thus, Defendants' reliance upon the January 15 document cannot expand the January 7 employment release beyond its own terms. The January 15 document may provide evidence concerning the workers' compensation settlement and the circumstances of Plaintiff's resignation. It does not establish that Plaintiff released claims based upon conduct occurring after January 7.

## IX. THE AMENDED COMPLAINT ALLEGES CLAIMS BASED UPON POST-SETTLEMENT PROSPECTIVE EMPLOYMENT INTERFERENCE

Even if the Court determines that some pre-January 7 allegations are released, that conclusion does not necessarily dispose of the entire action. The Amended Complaint alleges that after the January 7 settlement Plaintiff pursued employment with Geaux Waste, was interviewed, received an offer, and was expected to begin employment. Plaintiff alleges that Defendants thereafter communicated information about him to Geaux Waste and/or others, including information concerning his protected activity and medical/workers' compensation history, and that the prospective employer withdrew the employment opportunity. Plaintiff further alleges that similar statements were made to other prospective employers and that he suffered additional lost employment opportunities. Those allegations concern conduct and alleged injury occurring after the January 7 settlement.

Louisiana Civil Code article 3078 provides that a compromise does not affect rights subsequently acquired by a party unless those rights are expressly included. La. Civ. Code art. 3078. The January 7 Release expressly limits the released claims to those Plaintiff "has or may have" as of execution that "were or could have been brought" in the prior action. That language differs materially from a release that expressly identifies and releases future claims.

For example, in *Lemieux v. American Optical Corp.*, the release expressly addressed future wrongful-death claims and specifically stated that the plaintiffs released claims that they "may have in the future." 712 F. App'x 409, 411-12 (5th Cir. 2018). The Fifth Circuit enforced that release according to its express terms.

*Lemieux* therefore demonstrates the importance of the language chosen by the parties. Where parties intend to release specifically identified future claims, they may do so through sufficiently explicit language. Here, by contrast, the operative language identified claims Plaintiff had or may have "as of the date of execution."

Accordingly, the Court should at minimum deny dismissal of claims based upon alleged acts occurring after January 7 unless Defendants establish that the Release expressly encompasses those later-acquired rights.

## X. POST-SETTLEMENT DEFAMATION AND PROSPECTIVE-EMPLOYMENT ALLEGATIONS ARE NOT AUTOMATICALLY BARRED BECAUSE THEY RELATE TO PLAINTIFF'S PRIOR EMPLOYMENT

Defendants' broad theory would effectively transform the January 7 Release into a permanent immunity for any future statement Waste Pro personnel might make concerning Plaintiff. That is not established by the Release's operative language.

A post-settlement statement that Plaintiff "faked" his injuries or that he was "trouble," if proven, would constitute an alleged act occurring after the settlement.

Whether such a statement is actionable depends upon the evidence, including the identity of the speaker, the recipient, the context, the truth or falsity of the statement, privilege, fault, causation, and the elements of the particular claim asserted. Likewise, whether a post-settlement communication caused Geaux Waste or another prospective employer not to hire Plaintiff is an evidentiary question. The fact that a later statement allegedly concerns Plaintiff's prior employment or prior protected activity does not convert a later communication into a communication that occurred before January 7.

## XI. DEFENDANTS' ESTOPPEL ARGUMENT DOES NOT WARRANT DISMISSAL

Defendants contend that Plaintiff is estopped because the January 7 Release states that the parties wished to resolve their differences without further litigation and because Plaintiff did not expressly reserve unexhausted retaliation claims. Doc. 11-1 at 14. That argument assumes the proposition in dispute: that the January 7 Release was intended to encompass the later claims.

Moreover, Plaintiff is not attempting to disavow the January 7 agreement. He acknowledges the agreement and pleads it expressly. He contends that the agreement has a defined scope and that claims based upon subsequent conduct fall outside that scope. There is nothing inherently inconsistent about honoring a settlement while litigating a claim arising from conduct that occurred after the settlement.

## XII. THE RELEASE'S DEFINITION OF “RELEASED PARTIES” DOES NOT ELIMINATE ITS TEMPORAL LIMITATION

Defendants contend that the January 7 Release applies to all named Defendants because the agreement defines Released Parties broadly. Doc. 11-1 at 14-15. Plaintiff does not dispute that the Release contains broad language concerning current and former employees, officers, agents, and affiliated entities. But the breadth of the identity of the

Released Parties does not eliminate the separate limitation on the claims released.

The Release defines both who is released and what claims are released. A person may fall within the definition of a Released Party without being released from liability for conduct that occurred after the release. Accordingly, even assuming the Individual Defendants fall within the definition of Released Parties, the Release does not necessarily bar claims based upon their alleged post-January 7 conduct.

## XIII. STAMPS DOES NOT REQUIRE DISMISSAL OF POST-JANUARY 7 CLAIMS

Defendants cite *Stamps v. University of Texas System*, No. 24-50405, 2025 WL 720938 (5th Cir. Mar. 6, 2025), for the proposition that a settlement release can support dismissal under Rule 12(b)(6). Doc. 11-1 at 7, 15-16. Plaintiff does not dispute that proposition. *Stamps*, however, underscores rather than eliminates the importance of the actual language of the release and the date of the conduct being released.

In *Stamps*, the settlement agreement released claims relating to the plaintiff's employment and actions or inactions by the University existing as of the Effective Date. The Fifth Circuit emphasized that the allegedly defamatory communications at issue occurred years before the settlement's effective date. *Stamps*, 2025 WL 720938, at *3-4. The Fifth Circuit therefore enforced the release because the challenged conduct indisputably occurred before the effective date and fell within the express language of the agreement.

The present case is materially different insofar as Plaintiff alleges communications to Geaux Waste and other prospective employers occurring after January 7, 2026. *Stamps* does not hold that a release covering claims existing as of an effective date automatically releases every future act merely because that future act concerns the same employment relationship or earlier protected activity. Indeed, *Stamps* is consistent with

the general principle that the scope of a release turns on the language of the agreement and the conduct to which that language applies.

## XIV. PLAINTIFF'S CLAIMS ARE NOT BARRED MERELY BECAUSE SOME UNDERLYING FACTS PRECEDE THE SETTLEMENT

Defendants repeatedly characterize the entire case as based upon "pre-January 7 conduct." Doc. 11-1 at 9-11. That is not an accurate characterization of the Amended Complaint. The complaint alleges an evolving course of conduct. Some retaliatory conduct began before January 7. Plaintiff complained internally about that conduct. He subsequently pursued a separate EEOC charge. After January 7, he pursued new employment and alleges that Defendants interfered with that employment opportunity and continued making statements about him.

The fact that later conduct relates factually to earlier protected activity does not mean that the later conduct itself occurred before the settlement. Title VII protects individuals from retaliation for engaging in protected activity. 42 U.S.C. § 2000e-3(a). The Supreme Court has also recognized that Title VII's anti-retaliation provision protects former employees from certain post-employment retaliation. *Robinson*, 519 U.S. at 346. Thus, the fact that Plaintiff's protected activity predates the settlement does not mean that every later retaliatory act is itself antecedent to the settlement.

## XV. PLAINTIFF HAS ADEQUATELY PLEADED RETALIATION

The Amended Complaint alleges that Plaintiff engaged in protected activity by filing and pursuing an EEOC charge and federal discrimination action; that Defendants knew of that activity; that Defendants thereafter engaged in retaliatory conduct, including isolating Plaintiff, discussing his EEOC proceedings with coworkers, disseminating information concerning his medical condition, making disparaging statements concerning his injuries and character, and interfering with prospective employment; and that Plaintiff

suffered damages as a result. Those allegations, accepted as true at this stage, permit a reasonable inference of retaliatory conduct.

The temporal sequence, Defendants' alleged knowledge of Plaintiff's protected activity, and the alleged statements concerning that activity support an inference of retaliatory motive sufficient to survive a pleading-stage challenge. The Court need not determine at this stage whether Plaintiff will ultimately prove each alleged retaliatory act, whether particular conduct constitutes an adverse action under the particular statute invoked, or whether Plaintiff can establish causation with admissible evidence. Those are merits questions appropriately resolved on a developed record.

## XVI. PLAINTIFF'S STATE-LAW CLAIMS ARE NOT AUTOMATICALLY RELEASED

Defendants seek dismissal of all state-law claims based upon the January 7 Release. Again, the argument depends upon an overbroad interpretation of the Release. The Release enumerates state-law claims, but only within the class of claims Plaintiff had or may have had as of execution that were or could have been brought in the first action.

It does not expressly state that Plaintiff releases every future tort committed by any Released Party.

The alleged post-January 7 statements to prospective employers and alleged interference with prospective employment constitute alleged new acts. Whether Plaintiff ultimately establishes every element of defamation, intentional interference, or any other state-law claim is a separate question from whether the January 7 Release bars the claim as a matter of law.

The Amended Complaint alleges identifiable prospective employment, including the Geaux Waste opportunity, alleged communications by Defendants, withdrawal of the employment opportunity, and resulting damages. Those allegations should not be

dismissed solely on the basis of a release that, by its operative language, is limited to claims existing as of January 7.

## XVII. THE COURT SHOULD NOT DISMISS WITH PREJUDICE WHERE ANY PLEADING DEFICIENCY CAN BE CURED BY AMENDMENT

Defendants request dismissal with prejudice of all claims predicated upon conduct occurring before January 7. Doc. 11-1 at 16. Plaintiff respectfully submits that such relief is premature.

The Amended Complaint alleges a continuing course of retaliation beginning before the January 7 settlement and continuing afterward. It alleges specific post-settlement events, including prospective employment interference. It alleges a separate EEOC charge and right-to-sue notice. It also identifies factual circumstances surrounding Plaintiff's medical leave, separation, and subsequent employment efforts. Moreover, the Amended Complaint alleges that Plaintiff had not exhausted administrative remedies required by Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5). Had the Plaintiff attempted to bring in new claims that had not been administratively exhausted, the defendant could have objected to their inclusion. The Defendant can't have it both ways, where a Plaintiff is required to seek the "right to sue" can now be penalized for so seeking.

If the Court determines that particular allegations are ambiguous concerning their dates or legal theories, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given when justice so requires. The Fifth Circuit has repeatedly recognized that district courts ordinarily should afford a plaintiff an opportunity to cure pleading deficiencies unless amendment would be futile or otherwise inappropriate. See *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.

2002). Here, any ambiguity concerning whether particular allegations refer to conduct before or after January 7 can readily be cured by amendment.

## XVIII. DEFENDANTS' MOTION IMPROPERLY ASKS THE COURT TO RESOLVE DISPUTED FACTS AGAINST PLAINTIFF

Defendants' Motion repeatedly asks the Court to resolve disputed factual issues in Defendants' favor. For example, Defendants assert:

- that Plaintiff's employment terminated on May 27 or, alternatively, that his only relevant employment ended December 19;
- that all alleged retaliation necessarily occurred before January 7;
- that the December 19 resignation was entirely voluntary;
- that Plaintiff's allegations concerning prospective employment are merely an attempt to relitigate his prior case;
- that all claims asserted in the Second EEOC Charge could have been included in the first lawsuit; and
- that no actionable conduct occurred after January 7.

Those propositions are not all established by the face of the Amended Complaint. Plaintiff alleges the opposite, supported by specific factual allegations.

At the pleading stage, the Court must accept Plaintiff's well-pleaded factual allegations as true and draw reasonable inferences in his favor. *Iqbal*, 556 U.S. at 678. This is particularly true with respect to the alleged communications with Geaux Waste and other prospective employers. Plaintiff alleges specific employment activity, an offer, an expected start date, subsequent withdrawal of the offer, and information concerning statements allegedly made by Defendants. Whether those allegations can ultimately be proven is a matter for discovery and, if necessary, summary judgment or trial.

## XIX. THE RELEASE CASES CITED BY DEFENDANTS DO NOT

**ESTABLISH THAT THIS RELEASE BARS EVERY CLAIM IN THE AMENDED COMPLAINT**

Defendants cite cases such as *Stamps v. University of Texas System*, No. 24-50405, 2025 WL 720938 (5th Cir. Mar. 6, 2025), and *Lemieux v. American Optical Corp.*, 712 F. App'x 409 (5th Cir. 2018), for the proposition that settlement releases can support dismissal of claims. Plaintiff does not dispute that proposition. But neither case establishes that every claim related in some general way to a prior employment relationship is necessarily barred. *Stamps* involved a release expressly addressing claims arising from employment and acts or omissions existing as of the effective date. The Fifth Circuit determined that the challenged conduct occurred before that date. 2025 WL 720938, at *3-4.

*Lemieux* likewise involved an unusually explicit release that expressly identified future wrongful-death claims and stated that the plaintiffs released claims they might have in the future. 712 F. App'x at 411-12. Those cases therefore demonstrate that the language and scope of the particular release matter.

The issue here is not whether releases can ever support Rule 12(b)(6) dismissal. They can. The issue is whether this particular Release, under its particular language, bars the particular claims Plaintiff has pleaded. Because the Amended Complaint alleges claims based upon post-January 7 conduct, Defendants have not established that the Release necessarily bars those claims as a matter of law.

## XX. CONCLUSION

Defendants have established that Plaintiff entered into a settlement agreement on January 7, 2026. Plaintiff does not dispute that fact. But the existence of a settlement does not end the analysis. The Release applies to claims Plaintiff "has or may have . . . as of the date of execution" that "were or could have been brought" in the prior action. Louisiana law provides that a compromise settles only those differences the parties

clearly intended to settle and does not affect rights subsequently acquired unless expressly included. La. Civ. Code arts. 3076, 3078.

The Amended Complaint alleges claims based upon conduct occurring after January 7, including specific allegations concerning Plaintiff's pursuit of employment with Geaux Waste, the withdrawal of that employment opportunity following alleged communications by Defendants, and continuing statements concerning Plaintiff to prospective employers. Those allegations concern acts that had not yet occurred as of January 7.

Plaintiff also filed a separate EEOC Charge on January 15, 2026 specifically alleging retaliation and subsequently obtained a separate Right to Sue notice. That administrative history supports the exhaustion of the retaliation claims asserted here. It does not, however, substitute for the separate contractual inquiry into the scope of the January 7 Release.

Defendants' arguments concerning Plaintiff's December 19 resignation likewise depend upon factual issues concerning the circumstances surrounding the workers' compensation mediation and the nature of Plaintiff's separation. Plaintiff alleges that he was on medical leave and temporary disability, wanted to retain his employment and return when medically cleared, and signed the resignation under circumstances he understood to be coercive. Those allegations cannot simply be disregarded at the pleading stage.

Finally, Defendants' assertion that Plaintiff's employment ended on May 27 merely because he did not physically return to work does not resolve Plaintiff's allegations concerning his employment status while on medical leave or the alleged retaliatory conduct directed toward him during that period and thereafter.

The Amended Complaint presents well-pleaded facts that the Plaintiff had not exhausted administrative remedies and thus was not permitted to join new claims to the existing EEOC charge. These are questions of fact and merit. At a minimum, the Amended Complaint presents allegations concerning post-January 7 conduct that are not conclusively barred by the January 7 Release. Accordingly, Plaintiff respectfully requests that the Court **DENY** Defendants' Rule 12(b)(6) Motion to Dismiss. In the alternative, if the Court finds that any allegation requires clarification, Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2), rather than dismissal with prejudice.

Respectfully submitted,

/s/ *Jonathan Rhodes*___________
Jonathan Rhodes La. Bar #32649
The Rhodes Law Firm, LLC
1937 Peniston Street
New Orleans, LA 70115
T: 504-475-0975 F: 504-475-1013
E: jonathan@therhodeslawfirm.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September, 2026, a copy of the foregoing First Amended Complaint was filed electronically through the Court's CM/ECF system, which will send a Notice of Electronic Filing to all registered attorneys of record in this matter.

/s/ Jonathan M. Rhodes

Attorney for Plaintiff