UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEBRIC BROUSSARD | * | CIVIL ACTION |
| VERSUS | * | NO. 26-760 |
| WASTE PRO USA, INC., ET AL. | * | SECTION "J" (2) |

**REPORT AND RECOMMENDATION**

Pending before me are the Waste Pro Defendants' Motion to Dismiss and Motion for Sanctions pursuant to Rule 11. ECF Nos. 11 & 15. The Motion to Dismiss is more properly characterized as a *Partial* Motion to Dismiss as it seeks dismissal of all claims arising before January 7, 2026 with prejudice. ECF No. 11, at 1. Plaintiff filed untimely opposition memoranda, which I allowed, and Defendants filed replies in further support of their motions. ECF Nos. 20–21, 23, & 24–25. The Motion for Sanctions is referred to me for disposition and the Motion to Dismiss is referred to me for a Report and Recommendation, in accordance with 28 U.S.C. § 636 and Local Rules 73.1 & 73.3.

Having considered the record, the submissions and argument of counsel, and the applicable law, the undersigned RECOMMENDS that the (Partial) Motion to Dismiss be GRANTED, and ORDERS that the Motion for Sanctions be DENIED for the reasons stated herein.

## I. BACKGROUND

### A. Factual Background

Defendants Total Waste Solutions, LLC, Waste Pro USA, Inc., and Waste Pro of Louisiana, Inc. (together, "Waste Pro") employed Plaintiff as a commercial truck driver. ECF No. 9 introductory ¶ & ¶ 16. That relationship spurred a series of lawsuits including *Broussard v. Waste Pro USA, Inc.,* et al., Civ. No. 25-2132 ("First Federal Lawsuit") and a Workers' Compensation

Action. *Id.* ¶¶ 2, 26, 46–47. This case is the second lawsuit filed in federal court.

In the First Federal Lawsuit, Plaintiff alleged that Waste Pro discriminated against him on the basis of his race and disability, as asserted in an earlier EEOC charge of discrimination. *Id.* ¶¶ 2, 26. Plaintiff now alleges that Defendants retaliated against him for engaging in protected activity (i.e., filing the EEOC charge and later lawsuit). *Id.* ¶¶ 3, 26–27. Specifically, Plaintiff alleges that, as early as May 2025, Defendants isolated him from other employees who were told not to communicate with him, shared personal information regarding his EEOC charge and medical condition with co-workers and third parties, and disparaged his character, work ethic, and honesty to third parties. *Id.* ¶¶ 29–35. Plaintiff alleges that he lost employment opportunities and he suffered economic and reputational damage as a consequence of Defendants' actions. *Id.* ¶ 35.

Plaintiff contends that he reached out to human resources and management in October 2025 regarding these issues, but they were either "unwilling or unable" to help him or to protect him from retaliation. *Id.* ¶¶ 4, 36–43. He asserts that this continuing retaliation made him "conclude that he could no longer reasonably remain employed by Waste Pro." *Id.* ¶ 5.

**1. The December 2025 Settlement of the Workers' Compensation Action**

Plaintiff alleges that he was "forced" to sign a settlement of his workers' compensation action, which settlement included a voluntary resignation, in December 2025 (the "Mediation Agreement"). *Id.* ¶¶ 46–47. The Mediation Agreement stated:

> On December 19, 2025, the claimant, DEBRIC BROUSSARD, and the employer, WASTE PRO USA, INC., and its insurer hereby agree to a full and final resolution of all claims under the Louisiana Worker's Compensation Act arising from the employment-related accident of May 27, 2025, on the following terms: . . .
> The claimant agrees to a voluntary resignation of his employment with the employer and to not seek re-employment with employer. Claimant reserves all rights to his pending EEOC claim. ECF No. 11-3.

Plaintiff asserts that Defendants used the settlement process as leverage while he was trying

to keep his job and avoid the retaliation. ECF No. 9 ¶ 46. In particular, he explains that he "was told that, if he did not agree to the workers' compensation settlement, Waste Pro would send him to another physician that would prolong the process and ultimately deny his claim, leaving Plaintiff without wages or benefits to support himself and his family during the process." *Id.* ¶ 46. Plaintiff alleges that he made his objections known by telling all present "that he was signing the settlement and 'voluntary resignation' under duress." *Id.* ¶ 47. Plaintiff alleges that the sum of these actions—retaliatory conduct, unanswered complaints, and circumstances of his resignation—led to his constructive discharge. *Id.* ¶ 48.

**2. The January 7, 2026 Settlement of the First Federal Lawsuit**

In addition to the Mediation Agreement on the worker's compensation claim, Plaintiff and Defendants also settled the First Federal Lawsuit, signing "The Confidential Settlement Agreement and General Release" on January 7, 2026. *Id.* ¶ 49; ECF No. 11-4 (the "Release"). That Release's recitals state that "the parties wish to resolve and settle their differences without resort to future litigation" and explain that "the parties hereto agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them." ECF No. 11-4, at 1. The Release reads:

> **Release of Claims by Debric Broussard.** In exchange for, and in consideration of the payments, benefits, and other commitments described above, [Plaintiff] knowingly and voluntarily releases and forever discharges, to the full extent permitted by law, [Defendants] of and from any and all claims, known and unknown, accrued and unaccrued, asserted and unasserted, [Plaintiff] has or may have against the [Defendants] as of the date of execution of this Agreement that were or could have been brought in [the First Federal Lawsuit], arising out of, but not limited to, any of the following: Title VII of the Civil Rights Act of 1964, as amended; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Employee Retirement Income Security Act of 1974, as amended; The Immigration Reform and Control Act, as amended; The Equal Pay

> Act, as amended; The Family and Medical Leave Act, as amended; Older Workers Benefit Protection Act[;] The Americans with Disabilities Act, as amended; The Workers Adjustment and Retraining Notification Act, as amended; The Occupational Safety and Health Act, as amended; The Sarbanes-Oxley Act of 2002; Any Louisiana statutes pertaining to discrimination, including without limitation, disability discrimination[;] Any federal or state claims for negligence, conspiracy, indemnity, vicarious liability, or any other claims[;] Any claim for costs, fees, or other expenses including attorneys' fees incurred in these matters. *Id.* at 1–2.

Plaintiff affirmed that "he is not aware of any workplace injuries or occupational diseases he has suffered that have not previously been disclosed to Waste Pro" and "he has consulted with his counsel about the terms of [the Release] and enters into the [Release] voluntarily." *Id.* at 3 ¶ 6(c) & (d). The Release ended with a bolded, all-caps declaration that Plaintiff "**FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST WASTE PRO AND ALL OF THE RELEASED PARTIES, AS OF THE DATE OF EXECUTION OF THIS AGREEMENT.**" *Id.* at 5.

**3. Actions Taken On "Or About" January 15, 2026—A Week After the Release**

On January 15, 2026, Plaintiff signed a Receipt and Release of the Workers' Compensation Action before a notary and two witnesses. ECF No. 11-5, at 1, 6, 7. That document stated that Plaintiff "further warrants and decrees that he has resigned from his employment with Waste Pro USA. [Plaintiff] acknowledges that his resignation was voluntary and of his own free will and that he was not forced to resign." *Id.* at 5. The workers' compensation judge approved the settlement

the next day. ECF No. 11-6, at 3–6.[1]

On "or about" January 15, 2026, the execution date for the Receipt and Release of the Workers' Compensation Action, Plaintiff filed a second charge of discrimination with the EEOC. ECF No. 9 ¶ 7. In this charge, Plaintiff asserted that Defendant retaliated against him by disclosing his medical information, discussing his prior EEOC case, trying to isolate him, disparaging him, and constructively discharging him. *Id.* Plaintiff alleges that he was "ultimately forced . . . to leave his employment" due to that hostile work environment. *Id.* ¶ 59.

Around that same time, Plaintiff applied for a job at Geaux Waste. *Id.* ¶ 50. Geaux Waste interviewed him and offered him the job. *Id.* ¶ 50. Plaintiff was supposed to start on January 19, 2026. *Id.* Geaux Waste later rescinded the job offer, which Plaintiff alleges resulted after Defendants told Geaux Waste that Plaintiff was "trouble" and encouraged "Geaux Waste, Republic Services and potentially other employers not to hire Plaintiff." *Id.* ¶¶ 51–52. Plaintiff alleges that the smear campaign continues, with Defendant Scioneaux continuing to disparage Plaintiff in February 2026, and bragging that Plaintiff would have to "get a job in Egypt." *Id.* ¶¶ 53 & 55.

**4. The Present Lawsuit**

After Plaintiff received his second EEOC determination letter, he filed this lawsuit against Waste Pro and two individual Waste Pro employees. *Id.* ¶¶ 8–9, 20–21. Plaintiff asserts claims for retaliation under Title VII and the ADA, defamation, intentional interference with prospective economic advantage, and breach of contract. *Id.* ¶¶ 78–109. He seeks a variety of damages including past and future wage loss and employment opportunities, reputational injury and emotional distress, medical expenses, punitive damages and attorneys' fees. *Id.* ¶ 110.

[1] As a matter of public record, the Court can consider the January 6, 2026 Order approving the settlement attached to Waste Pro's Motion to Dismiss (ECF No. 11-6, at 3–6.). *Fin. Acquisition Partners*, *LP v. Blackwell*, 440 F.3d 278, 282 (5th Cir. 2006).

Plaintiff contends that the current claims were not encompassed by the Release because they arise from subsequent retaliatory conduct and, because he had not received an EEOC right to sue notice, were not brought and could not have been brought in the First Action because as of the January 7, 2026 settlement. *Id.* ¶¶ 11, 70.

**B. Procedural Background**

Waste Pro seeks dismissal with prejudice of "all claims that are premised on conduct occurring before January 7, 2026." ECF No. 11, at 1. It argues that those claims were all released by the settlements of either the First Federal Lawsuit or Workers' Compensation Action. *Id.* In particular, Waste Pro seeks dismissal of allegations occurring before January 7, 2026 concerning: (1) retaliatory treatment; (2) attempts to isolate Plaintiff; (3) discussions of EEOC proceedings and medical information; (4) inaction of the human resources department; (5) disparate-treatment of an individual defendant; and (6) constructive discharge. ECF No. 11-1, at 9–11.

Waste Pro argues that the language of the January 7, 2026 Release is "sweeping and unambiguous," and Plaintiff's "administrative-exhaustion carve-out" argument fails as a matter of law. *Id.* at 8, 13. Citing Rule 18 of the Federal Rules of Civil Procedure, Waste Pro argues that Plaintiff could have brought "as many claims as it has against an opposing party" in the First Federal Lawsuit. *Id.* at 8. These retaliation claims, therefore, should be swept under the umbrella of the Release. *Id.* Waste Pro argues that Plaintiff's purported duress in signing the Mediation Agreement can have no effect on the subsequent Release. *Id.* at 9, 11–13.

In opposition, Plaintiff argues that Waste Pro's interpretation of the Release is "overbroad" and that its motion improperly tries to resolve disputed factual questions. ECF No. 21, at 1. Plaintiff focuses on a particular clause and reads "two material limitations" in the Release: (1) the dismissed claim must have been one Plaintiff "has or may have . . . as of the date of execution"

and (2) "the claim must have been one that 'w[as] or could have been brought' in the [First Federal Lawsuit.]" *Id.* at 4.

Waste Pro also filed a Motion for Sanctions Pursuant to Rule 11 seeking attorney's fees and costs and requesting that the Court dismiss Plaintiff's complaint with prejudice, or in the alternative, strike the offending portions of the Complaint. ECF No. 15, at 1. Waste Pro argues that Rule 11 sanctions are appropriate because the Complaint "is premised on assertions of fact that are rebutted by the clear record and it raises claims that are barred by the broad language of the January 7th Release." *Id.* at 6.

Plaintiff argues that sanctions are not warranted because the case is not as clear-cut as Waste Pro presents. ECF No. 20, at 1. Disputed factual and legal issues, Plaintiff argues, warranted the filing of this lawsuit. *Id.* Plaintiff contends that, regardless of which party ultimately prevails, his objective reasonable factual and legal basis for filing the lawsuit bar Rule 11 sanctions. *Id.* at 15.

## II. <u>LEGAL STANDARD</u>

### A. <u>Rule 12(b)(6) Standard</u>

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion is not meant to resolve disputed facts or test the merits of a lawsuit, but rather, tests whether, in plaintiff's best-case scenario, the complaint states a plausible case for relief. [2] The factual allegations must rise above a speculative level when viewing those facts in the light most favorable to the plaintiff, with the assumption that all factual allegations in the complaint are true, even if doubtful.[3] The Fifth Circuit has summarized the standard for Rule 12(b)(6):

---

[2] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

[3] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011); *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam); *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim for relief is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A claim for relief is implausible on its face when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.[4]

Rule 12(d) requires the court to treat a Rule 12(b)(6) motion as a Rule 56 motion when matters outside of the pleadings are presented and not excluded by a court. The Court may, however, consider documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice in the Rule 12 analysis without converting the motion to a Rule 56 motion.[5] In addition, the court may consider any documents attached to either the motion to dismiss or an opposition to that motion when the documents are referenced in the pleadings and are central to a plaintiff's claims.[6]

**B. <u>Rule 11 Sanctions</u>**

The purpose of Rule 11 is to deter baseless filings in the district court and to spare innocent litigants and overburdened courts from the filing of frivolous lawsuits.[7] "A signatory violates Rule 11 if he fails to conduct a reasonable inquiry into the law and facts underlying his motion, or if he makes a motion to delay, harass or increase the costs of litigation."[8] Under Rule 11(b), an attorney must certify to the best of his "knowledge, information, and belief, formed after an inquiry

---

[4] *Harold H. Huggins*, 634 F.3d at 796 (citation modified).
[5] *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (stating a court may consider Complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).
[6] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008) (considering exhibits attached to an opposition because "[n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).
[7] *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).
[8] *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999).

reasonable under the circumstances" that his filing is not being presented for an improper purpose, his claims are "warranted by existing law or by a nonfrivolous argument for extending" existing law or for establishing new law, the factual contentions have evidentiary support or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," and the denials of factual contentions are warranted by the evidence or "reasonably based on belief or a lack of information."[9] Rule 11(c) allows the Court to impose appropriate sanctions for violations of Rule 11(b). "An attorney's conduct is judged under an objective standard of reasonableness governed by the 'snapshot' rule, which focuses on . . . 'the instant the attorney affixes his signature to the document.'"[10]

"Rule 11 allows sanctions to be imposed only '*after* notice and a reasonable opportunity to respond.'"[11] A motion for sanctions, therefore, can only be filed after it has been served and twenty-one days have passed without the challenged party correcting or withdrawing the objected-to claim.[12]

## III. <u>ANALYSIS</u>

As a threshold matter, the Court may properly consider the Mediation Agreement, First Federal Lawsuit Release and the Workers' Compensation Release without converting the Rule 12 motion into a Rule 56 motion. These documents are all referenced in, and integral to, the complaint and attached to Defendants' motion to dismiss.

### A. <u>The Release</u>

Despite the parties' conflicting interpretations of the Release, they agree on several things.

---

[9] FED. R. CIV. PRO. 11(b).

[10] *Cordova v. Univ. Hosp. & Clinics, Inc.*, 92 F.4th 266, 273 (5th Cir. 2024) (quoting *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016)).

[11] *Fletcher v. Experian Info. Sols., Inc.*, No. 25-20086, 2026 WL 37428, at *3 (5th Cir. Jan. 6, 2026) (quoting FED. R. CIV. P. 11(c)(1)).

[12] FED. R. CIV. PRO. 11(c)(2).

First, neither side disputes the validity of the Release[13] nor that it covers all parties to this Action.[14] While both sides agree that the Release contains a Louisiana choice of law clause, [15] the validity and enforcement of a settlement agreement resolving federal rights must be analyzed under federal law.[16] "Federal law governing settlement agreements applies the general common law principles of contracts. To form a settlement agreement, there must be an offer, an acceptance, consideration, the inclusion of all material or essential terms, and a meeting of the minds among the parties."[17] In short, "[f]ederal common law controls the interpretation of a release of federal claims."[18]

**1. Administrative Exhaustion**

Crucial to the analysis here are the procedural prerequisites of Title VII. A plaintiff alleging retaliation under Title VII must first exhaust administrative remedies before filing suit.[19] "To determine whether a Title VII claim has been exhausted, we construe the EEOC charge in its broadest reasonable sense and ask whether the claim can reasonably be expected to grow out of

---

[13] ECF No. 21, at 15 ("Moreover, Plaintiff is not attempting to disavow the January 7 agreement. He acknowledges the agreement and pleads it expressly.").

[14] *See* ECF Nos. 11-1, at 1–2, 4 n.1, 14; 21, at 15 ("Plaintiff does not dispute that the Release contains broad language concerning current and former employees, officers, agents, and affiliated entities.").

[15] ECF No. 11-4, at 4 ¶ 11 ("This Agreement shall be governed and conformed in accordance with the laws of the State of Louisiana without regard to its conflict of laws provision.").

[16] *Boyd v. Tex. Dep't of Crim. Just.*, 780 F. App'x 145, 148 (5th Cir. 2019) (quoting *Quesado v. Napolitano*, 701 F.3d 1080, 1083 (5th Cir. 2012)) ("The validity and enforcement of a Title VII settlement agreement are matters of federal law.");*United States v. Ma*, 178 F. 4th 884, 890 (5th Cir. 2026) ("Where, as here, a party's claims are premised on federal law, federal contract law governs the validity and enforcement of a purported settlement agreement."); *Fisk Elec. Co. v. DSQI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018) (citation modified) ) ("Questions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law.");; *Del Bosque v. AT & T Advertising, L.P.*, 441 F. App'x 258, 260 (5th Cir. 2011) ("[W]e conclude that the question of the enforceability of the settlement agreement is, under our precedent, to be determined by reference to federal law . . . . The presence of a choice-of-law provision in the settlement agreement itself logically cannot control our resolution of this question, inasmuch as the issuer to be resolved is the validity of that very agreement[.]").

[17] *Cavalier v. Jill L. Craft Att'y at Law, L.L.C.*, No. 23-30778, 2024 WL 2846059, at *3 (5th Cir. June 5, 2024).; *see also Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 F. App'x 306, 308 (5th Cir. 2011) ("Federal law governs the release of federal claims in a contract.").

[18] *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *see also Ralser v. Winn- Dixie Stores, Inc.*, 35 F. Supp. 3d 799, 803–04 (E.D. La. 2014) ("Since Winn Dixie claims that Ralser is precluded from bringing this federal lawsuit because he waived all federal causes of action, the Court finds that federal common law should govern this Court's interpretation of that waiver and release agreement.").

[19] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *see also Jones v. City of Houston*, 756 F. App'x 341, 348 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)(1)).

the charge of discrimination."[20] A plaintiff who files a charge of discrimination with the EEOC cannot later assert additional theories of discrimination in a subsequent civil proceeding when those additional theories were not raised in the EEOC charge.[21] "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."[22] A claim is not reasonably expected to grow out of a plaintiff's charge of discrimination if the claim is not alleged in the charge itself.[23]

**2. Interpretation of the Release**

Plaintiff keys in on the following provision in the Release:

> In exchange for, and in consideration of the payments, benefits, and other commitments described above, [Plaintiff] knowingly and voluntarily releases and forever discharges, to the full extent permitted by law, [Defendants] of and from any and all claims, known and unknown, accrued and unaccrued, asserted and unasserted, [Plaintiff] has or may have against the [Defendants] as of the date of execution of this Agreement *that were or could have been brought in [the First Federal Lawsuit]* . . . . ECF No. 11-4, at 2 (emphasis added).

The clause is broad, but it is limited to claims that were or could have been brought in the First Federal Lawsuit on the date of execution, January 7, 2026.

The key question then is which of Plaintiff's claims could have been brought in the First Federal Lawsuit. If the claims could have previously been brought, they are waived by the Release.

[20] *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 508 (5th Cir. 2024) (quoting *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018)).
[21] *See, e.g.*, *Kebiro v. Walmart*, 193 F. App'x 365, 367 (5th Cir. 2006) (plaintiff's racial and gender discrimination claims were properly dismissed because his EEOC filings only mentioned his age and national origin); *Luna v. Lockheed Martin Corp.*, 54 F. App'x 404, 2002 WL 31687698, at *1 (5th Cir. 2002) (per curiam) (plaintiff's claim based on national origin discrimination properly dismissed where he only checked the box indicating his intention to bring a claim of retaliation in his EEOC charge); *Thomas v. Tex. Dep't of Crim. Just.*, 220 F.3d 389, 395 (5th Cir. 2000) (trial court abused its discretion in amending pretrial order to allow Plaintiff to pursue race discrimination claim where EEOC charge alleged only gender discrimination).
[22] *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).
[23] *Ellzey v. Cath. Charities Archdiocese of New Orleans*, 833 F. Supp. 2d 595, 602 (E.D. La. 2011); *Kebiro*, 193 F. App'x at 367.

If the claims could not have been brought in the First Federal Action, they are now fair game.

Plaintiff argues that the claims in this lawsuit are distinct retaliation claims, but the First Federal Action covered only "racial and disability discrimination, harassment, hostile work environment, and failure to accommodate his disability." ECF No. 9 ¶¶ 10, 63; *see also* ECF No. 11-2. The present lawsuit concerns retaliation for engaging in the protected activities of filing an EEOC charge and the First Federal Action.

Plaintiff argues that his retaliation claims were not administratively exhausted when he signed the Release so he could not have brought those claims in the First Federal Lawsuit. Plaintiff did not receive a right-to-sue letter from the EEOC for his second charge until after the First Federal Action was resolved. ECF No. 9 ¶ 70. And of course, Plaintiff could not have received a right-to-sue letter for his second EEOC charge before the First Federal Lawsuit was resolved because he did not file his second EEOC charge until the First Federal Lawsuit was resolved.

Plaintiff's filing of a second EEOC charge was unnecessary. In *Gupta v. East Texas State University*, the Fifth Circuit held "that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."[24] The Fifth Circuit explained its reasoning behind the *Gupta* exception:

> It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII. We are reluctant to erect a needless procedural barrier to the private claimant under Title VII, especially since the EEOC relies largely upon the private lawsuit to obtain the goals of Title VII. Intertwined with this practical reason for our holding is a strong policy justification. Eliminating this needless procedural

[24] 654 F.2d 411, 413–14 (5th Cir. Unit A 1981).

> barrier will deter employers from attempting to discourage employees from exercising their rights under Title VII.[25]

Plaintiff does not address or attempt to distinguish *Gupta,* which is directly on point. The *Gupta* exception allowed Plaintiff to bring his retaliation claims in the First Federal Lawsuit because same grew out of his earlier charge. Although Plaintiff characterizes whether "all claims asserted in the Second EEOC Charge could have been included in the first lawsuit" as a disputed fact, it is actually a disputed legal issue that is addressed as a matter of law. ECF No. 21, at 20.

Because: (1) the Release covered claims that were "or could have been brought" in the First Federal Lawsuit, and (2) Plaintiff could have brought his retaliation claim in the First Federal Lawsuit as *Gupta* makes clear, the Release covers the retaliation claims. Plaintiff's resort to a second EEOC charge does not change the fact that he "could have brought" his retaliation claims in the First Federal Lawsuit. As currently pled in his First Amended Complaint, all claims stemming from actions arising before January 7, 2026 should be dismissed with prejudice.

**3. Leave to Amend**

The court should freely grant leave to amend a pleading when justice so requires.[26] Unless it is clear that the plaintiff is unwilling or unable to amend in a manner that will avoid dismissal, the court errs in not providing plaintiff with at least one opportunity to cure pleading deficiencies before dismissing.[27] It is not necessary, however, to afford a plaintiff an opportunity to amend when any such amendment would be futile.[28]

Plaintiff argues that he should be given the opportunity to amend his First Amended

---

[25] *Id.* (citations omitted).

[26] FED. R. CIV. P. 15(a)(2); *see also F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) (noting that Rule 15(a) "evinces a strong bias in favor of granting . . . leave to amend a pleading").

[27] *Dierlam v. Trump*, 977 F.3d 471, 478 n.44 (5th Cir. 2020).

[28] *See, e.g.*, *Smith v. Terrebonne Par. Crim. Just. Complex*, No. 14-2207, 2014 WL 5780696, at *3 (E.D. La. Nov. 4, 2014) (holding that amendment not required because it was clear that underlying claim was frivolous and/or failed to state a claim on which relief may be granted); *see also Martzen v. McLane*, 764 F. App'x 402, 403 (5th Cir. 2019)

Complaint. ECF No. 21, at 19. But he does not explain how an amendment would save claims arising before January 7, 2026. Instead, Plaintiff focuses on the ongoing retaliation that continued after the Release. *Id.* Waste Pro argues that any amendment would be futile and that Plaintiff has already had the chance to amend his complaint. ECF No. 25, at 6–7.

As explained above, Plaintiff fails to allege a plausible claim for actions arising before January 7, 2026. And based on *Gupta*, any retaliation claim based on pre-January 7, 2026 conduct could have been asserted in the First Federal Lawsuit. As such, all retaliation claims asserted in the First Amended Complaint based on pre-January 7, 2026 events should be dismissed without leave to amend based on futility.

### B. Rule 11 Sanctions

"To comply with his duties under rule 11, an attorney need not provide an absolute guarantee of the correctness of the legal theory advanced in the paper he files."[29] Plaintiff may not have the better end of the legal argument in this case, but that does not mean that sanctions are warranted. The First Amended Complaint was not baseless. Indeed, the claims stemming from actions arising after January 7, 2026 are outside the scope of the present Motion to Dismiss. Although Plaintiff is incorrect in his assertion that he "could not have brought" his pre-January 7, 2026 retaliation claims in the First Federal Lawsuit, his good faith arguments based on existing law are sufficient to preclude a finding of a Rule 11 violation.[30]

## IV. CONCLUSION AND RECOMMENDATION

Accordingly, for the foregoing reasons,

(noting that a plaintiff need not be given an opportunity to amend if he has already alleged his best case and any further amendment would not state a valid § 1983 claim).

[29] *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992) (quoting *Perlman v. Pioneer Ltd. P'Ship*, 918 F.2d 1244, 1250 (5th Cir. 1990)).

[30] *Id.*

IT IS ORDERED that the Motion for Sanctions Pursuant to Rule 11 filed by Defendants Waste Pro USA, Inc.; Waste Pro of Louisiana, Inc.; and Total Waste Solutions, LLC (ECF No. 15) be DENIED.

IT IS RECOMMENDED that the (Partial) Motion to Dismiss filed by Defendants Waste Pro USA, Inc.; Waste Pro of Louisiana, Inc.; and Total Waste Solutions, LLC (ECF No. 11) as to all claims of retaliation based on pre-January 7, 2026, conduct be GRANTED, leaving any claim based on post-January 7, 2026 conduct for further resolution.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[31]

Dated this 8th day of October, 2026.

Donna Phillips Currault

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

[31] *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996). *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.